**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

GARY JOHN BYRNE,

                Plaintiff,

       v.                                   Civil Action No. 18-cv-01422-PLF

CLINTON FOUNDATION *et al.*,

                Defendants.

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FORMER
PRESIDENT WILLIAM JEFFERSON CLINTON'S AND FORMER SECRETARY
HILLARY RODHAM CLINTON'S MOTION TO DISMISS**

David E. Kendall (DC Bar No. 252890)
Katherine Turner (DC Bar No. 495528)
Michael Mestitz (DC Bar No. 1047260)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
dkendall@wc.com
kturner@wc.com
mmestitz@wc.com

*Counsel for Former President William
Jefferson Clinton and Former Secretary
Hillary Rodham Clinton*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

LEGAL STANDARD.............................................................................................................5

ARGUMENT .......................................................................................................................7

I.    THE COMPLAINT MUST BE DISMISSED UNDER RULE 12(B)(1) FOR LACK OF JURISDICTION ....................................................................................7

    A.    The Complaint Fails To Allege a Justiciable Case or Controversy as Required by Article III.................................................................................8

    B.    The Complaint Fails to Allege an Injury In Fact as Required by Article III. ........10

    C.    Because the Court Lacks Jurisdiction Over the Federal RICO Claims, It Cannot Exercise Supplemental Jurisdiction Over the Defamation Claim. ............13

II.    THE COMPLAINT MUST BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM ...................................................................................13

    A.    The Complaint Fails to Plead Facts Sufficient to Establish the Elements of Plaintiff's RICO Claims...............................................................................14

        1.    The Complaint Fails to Plead the Necessary Elements of "RICO Standing."..................................................................................14

        2.    The Complaint Fails to Plead a RICO Enterprise. ....................................18

        3.    The Complaint Fails to Adequately Plead the RICO Predicate Acts.........21

        4.    The Complaint Fails to Plead the "Acquisition or Maintenance" Injury Necessary to Support a Claim Under § 1962(b). ...........................23

        5.    The Complaint Fails to Plead Necessary Elements of a Claim Under § 1962(d). ...................................................................................24

    B.    The Complaint Fails to State a Claim for Defamation. ........................................25

        1.    Plaintiff's State-Law Claim Is Time-Barred.............................................26

        2.    The Complaint Fails to Allege Several Necessary Elements of Defamation..............................................................................................28

CONCLUSION...................................................................................................................33

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328 (D.C. Cir. 2015)........................................28

*Adell v. Macon Cty. Greyhound Park, Inc.*, 785 F. Supp. 2d 1226 (M.D. Ala. 2011) ................................................................................................................14

*Allen v. Wright*, 468 U.S. 737 (1984) ....................................................................10

*Almanza v. United Airlines, Inc.*, 851 F.3d 1060 (11th Cir. 2017) ................................21

*\*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006)........................................16, 17

*\*Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015) ...........................................11, 12, 13

*\*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................... *passim*

*Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*, 383 F. Supp. 2d 32 (D.D.C. 2005) ................................................................................................................33

*Bates v. Nw. Human Servs., Inc.*, 466 F. Supp. 2d 69 (D.D.C. 2006) ..........................22

*Beck v. Prupis*, 529 U.S. 494 (2000)........................................................................16

*Belaski v. United States*, No. 17-1035 (ABJ), 2017 WL 2694099 (D.D.C. June 21, 2017) ..................................................................................................................9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................6, 21

*\*Boyle v. United States*, 556 U.S. 938 (2009) .............................................18, 20, 21

*\*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) ....................................16, 18, 33

*Bryant v. Mattel, Inc.*, No. CV 04–9049, 2010 WL 3705668 (C.D. Cal. Aug. 2, 2010) ................................................................................................................16

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988)........................................25

*Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444 (S.D.N.Y. 2007) ...........................7

*\*Cheeks v. Fort Myer Constr. Corp.*, 216 F. Supp. 3d 146 (D.D.C. 2016), *aff'd per curiam*, 728 Fed. App'x 12 (D.C. Cir. 2018) ................................................22, 23

*Authorities upon which we chiefly rely are marked with asterisks.

*Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220 (D.C Cir. 1991) ................................................................................................................24

*Delta Air Lines, Inc. v. Exp.-Imp. Bank of U.S.*, 85 F. Supp. 3d 250 (D.D.C. 2015) ...................10

*Disner v. United States*, 888 F. Supp. 2d 83 (D.D.C. 2012), *aff'd per curiam*, No. 12-5328, 2013 WL 1164502 (D.C. Cir. Feb. 20, 2013)............................................................6

*Doe I v. Israel*, 400 F. Supp. 2d 86 (D.D.C. 2005) .......................................................................25

*Fairbanks v. Roller*, Case No. 1:17-cv-01052 (TNM), --- F. Supp. 3d ---, 2018 WL 2727897 (D.D.C. June 6, 2018).................................................................................31, 32

*Fiala v. B&B Enters.*, 738 F.3d 847 (7th Cir. 2013)......................................................................14

*Figueroa Ruiz v. Alegria*, 896 F.2d 645 (1st Cir. 1990) .................................................................7

*Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658 (D.C. Cir. 1996)....................................................10

*Freedom Watch, Inc. v. Sessions*, 281 F. Supp. 3d 159 (D.D.C. 2017), *aff'd per curiam*, 729 F. App'x 7 (D.C. Cir. 2018) ..............................................................................11

*G. Keys PC/Logis NP v. Pope*, 630 F. Supp. 2d 13 (D.D.C. 2009) .................................................5

*Gaudreau v. Am. Promotional Events, Inc.*, 511 F. Supp. 2d 152 (D.D.C. 2007).......................26

*Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91 (1979) ......................................................12

*Greenpeace, Inc. v. Dow Chem. Co.*, 808 F. Supp. 2d 262 (D.D.C. 2011) ..................................24

*Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941 (8th Cir. 1999) ..............................16

*Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1 (2010) .............................................15, 17

*Hoffman v. Hill & Knowlton, Inc.*, 777 F. Supp. 1003 (D.D.C. 1991) .........................................29

*Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258 (1992)....................................................14, 15, 17

*Hourani v. Mirtchev*, 796 F.3d 1 (D.C. Cir. 2015) ......................................................................15

*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010).............................................21

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235 (3rd Cir. 2012) ..................................................................................................................8

*Authorities upon which we chiefly rely are marked with asterisks.

*Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728 (D.C. Cir. 2007) ........................................11

**Jin v. Ministry of State Sec.*, 254 F. Supp. 2d 61 (D.D.C. 2003) ............................................26, 27

*Johnson v. Comput. Tech. Servs., Inc.*, 670 F. Supp. 1036 (D.D.C. 1987)....................................22

*Joseph v. Xerox Corp.*, 594 F. Supp. 330 (D.D.C. 1984) .............................................................31

*Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649 (S.D.N.Y. 1996), *aff'd*,
   113 F.3d 1229 (2d Cir. 1997).......................................................................................7

*Kerik v. Tacopina*, 64 F. Supp. 3d 542 (S.D.N.Y. 2014)................................................................16

*Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994) ............................................5

*Kowal v. MCI Commc'ns. Corp.*, 16 F.3d 1271 (D.C. Cir. 1994) ...................................................6

**Lail v. U.S. Gov't*, 771 F. Supp. 2d 49 (D.D.C. 2011)............................................................12, 15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014) ..........................14

**Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .............................................................8, 10

*Miranda v. Ponce Fed. Bank*, 948 F.2d 41 (1st Cir. 1991)........................................................7

**Montgomery v. Risen*, 197 F. Supp. 3d 219 (D.D.C. 2016), *aff'd*, 875 F.3d 709
   (D.C. Cir. 2017) ................................................................................................29

*Mountain States Legal Found. v. Bush*, 306 F.3d 1132 (D.C. Cir. 2002)......................................6

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964)..........................................................................31

*Ogden v. Ass'n of the U.S. Army*, 177 F. Supp. 498 (D.D.C. 1959) ..............................................27

*Parisi v. Sinclair*, 774 F. Supp. 2d 310 (D.D.C. 2011)................................................................32

*Prosser v. Sessions*, No. 17-cv-01662 (TNM), --- F. Supp. ---, 2018 WL 2417854
   (D.D.C. May 29, 2018) ........................................................................................8

*Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89 (D.D.C. 2015)...........................................16

**RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043
   (D.C. Cir. 2012) ...................................................................................6, 17, 24

**Saksenasingh v. Sec'y of Educ.*, 126 F.3d 347 (D.C. Cir. 1997) .......................................7, 13, 25

*Authorities upon which we chiefly rely are marked with asterisks.

*Salinas v. United States*, 522 U.S. 52 (1997)...................................................................24

*Sandza v. Barclays Bank PLC*, 151 F. Supp. 3d 94 (D.D.C. 2015)..........................................7, 23

*Santana v. Cook Cty. Bd. of Review*, 679 F.3d 614 (7th Cir. 2012) ...........................................16

*Schoen v. Wash. Post*, 246 F.2d 670 (D.C. Cir. 1957)...................................................33

*Sculimbrene v. Reno*, 158 F. Supp. 2d 8 (D.D.C. 2001) ................................................31

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ......................................14, 15, 16

*Shekoyan v. Sibley Int'l*, 409 F.3d 424 (D.C. Cir. 2005) ...............................................25

*Sierra Club v. EPA*, 755 F.3d 968 (D.C. Cir. 2014) ................................................10, 12

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976)...............................................12

*Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128 (D.D.C. 2009) ..........................................32

*Smith v. Clinton*, 886 F.3d 122 (D.C. Cir. 2018) ...........................................................33

*Speelman v. United States*, 461 F. Supp. 2d 71 (D.D.C. 2006) .............................................6

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ..............................................................11

*Stankevich v. Kaplan*, 156 F. Supp. 3d 86 (D.D.C. 2016), *aff'd per curiam*, 707
    F. App'x 717 (D.C. Cir. 2017), *petition for cert. filed*, 86 U.S.L.W. 3608 (U.S.
    Apr. 20, 2018) (No. 17-1546) ...................................................................................19

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998).................................................8

*Summers v. Earth Is. Inst.*, 555 U.S. 488 (2009) .............................................................8

*Taitz v. Obama*, 707 F. Supp. 2d 1 (D.D.C. 2010) ..........................................................16

*Tavoulareas v. Piro*, 817 F.2d 762 (D.C. Cir. 1987) ......................................................31

*Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7 (D.D.C. 2014).......................23

*United States v. Turkette*, 452 U.S. 576 (1981) .......................................................18, 19

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State,
    Inc.*, 454 U.S. 464 (1982)........................................................................................10

\*Authorities upon which we chiefly rely are marked with asterisks.

*W. Assocs. Ltd. P'ship ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*,
   235 F.3d 629 (D.C. Cir. 2001) ........................................................................ *passim*

*Warth v. Seldin*, 422 U.S. 490 (1975) ...............................................................7, 8

*Wu v. Stomber*, 750 F.3d 944 (D.C. Cir. 2014)...............................................26, 28

## STATE CASES

*Brown v. Tucker*, 954 S.W.2d 262 (Ark. 1997) ....................................................32

*Doe No. 1 v. Burke*, 91 A.3d 1031 (D.C. 2014)....................................................28

*Faulkner v. Ark. Children's Hosp.*, 69 S.W.3d 393 (Ark. 2002).........................32

*Foley v. Lowell Sun Publ'g Co.*, 533 N.E.2d 196 (Mass. 1989).........................29

*Howard Univ. v. Best*, 484 A.2d 958, 988 (D.C. 1984) .......................................29

*Klayman v. Segal*, 783 A.2d 607 (D.C. 2001) .....................................................29

*Little Rock Newspapers, Inc. v. Fitzhugh*, 954 S.W.2d 914 (Ark. 1997)............28

*Robertson v. Daniel*, 2013 Ark. App. 160 (2013).................................................32

*Rosen v. Am. Is. Pub. Affairs Comm., Inc.*, 41 A.3d 1250 (D.C. 2012)................28

## CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES

U.S. Const. art. III, § 2 ...................................................................................... *passim*

*Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68

   18 U.S.C. § 1961(1) .....................................................................................14, 16

   18 U.S.C. § 1961(4) .....................................................................................14, 18

   18 U.S.C. § 1962(a) .....................................................................................11, 24

   18 U.S.C. § 1962(b) ..........................................................................4, 11, 23, 24

   18 U.S.C. § 1962(c) ............................................................................4, 12, 24

*Authorities upon which we chiefly rely are marked with asterisks.

18 U.S.C. § 1962(d) ...............................................................................4, 12, 24, 25

18 U.S.C. § 1964(c) ...................................................................................14, 15, 16

Ark. Code Ann. § 16-63-207 (West), *repealed by* Ark. Acts of 2013, Act 1148 .........................25

D.C. Code Ann. § 12-301(4) (West).................................................................................27

Fed. R. Civ. P. 8.......................................................................................................23, 25

Fed. R. Civ. P. 9(b) ...................................................................................................7, 23

Fed. R. Civ. P. 9(g) ........................................................................................................33

*Fed. R. Civ. P. 12(b)(1).......................................................................................... *passim*

*Fed. R. Civ. P. 12(b)(6)........................................................................................... *passim*

Ark. R. Civ. P. 12(b)(6) ...............................................................................................32

Ark. R. Civ. P. 8..........................................................................................................25, 32

*Authorities upon which we chiefly rely are marked with asterisks.

## **INTRODUCTION**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants William Jefferson Clinton and Hillary Rodham Clinton (the "Clinton Defendants") move to dismiss Plaintiff's Corrected Complaint (ECF No. 3), for lack of subject-matter jurisdiction and failure to state a claim.  The Complaint is a mélange of disjoined conspiracy theories and threadbare allegations that, for all of its 210 pages, does not present any justiciable legal controversy or viable cause of action.  Accordingly, dismissal is required.

First, Plaintiff's claims must be dismissed because they do not present a justiciable case or controversy under Article III of the Constitution.  The gravamen of the Complaint is a set of generalized political grievances, of the very type that courts have recognized to be insufficient to confer standing on an individual plaintiff.  Moreover, Plaintiff's conclusory claims of injury—which fail to identify any harm to Plaintiff by reason of any conduct by the Clinton Defendants—are insufficient to establish injury in fact, as is necessary to invoke the jurisdiction of this Court.  Thus, the Complaint must be dismissed because it fails to allege facts sufficient to meet Article III's requirements of injury and causation.

Second, as an independent basis for dismissal, Plaintiff has failed to state any claims upon which relief can be granted.  In the 829 paragraphs of the Complaint, what is absent is any well-pleaded factual allegations to support several essential elements of Plaintiff's claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68, including, among others, (1) a cognizable injury to business or property "by reason of" any well-pleaded predicate acts, (2) the requisite proximate cause between Defendants' acts and any such injury, and (3) a sufficient RICO "enterprise."  Plaintiff's state-law claim for defamation fares no better: that claim is time-barred on the face of the Complaint, and is otherwise substantively defective.

1

Plaintiff's hurdles in meeting the requirements of Article III are insuperable, but even if they could be cleared, the Complaint should be dismissed for failure to state a claim.

For these reasons, the Clinton Defendants respectfully request that the Court dismiss the Complaint against them.

## BACKGROUND

Plaintiff Gary Byrne is an author, commentator, and former officer of the U.S. Secret Service. Compl. ¶ 6, 783. In June 2016, five months before the 2016 Presidential election, Plaintiff published *Crisis of Character: A White House Secret Service Officer Discloses His Firsthand Experience with Hillary, Bill, and How They Operate*, which became a "*New York Times* Number 1 nonfiction bestseller." Compl. at 18, ¶ 6. The book purportedly describes Plaintiff's "numerous and highly disturbing first-hand reflections of" President Clinton and Secretary Clinton, dating from Plaintiff's service in the White House in the mid-1990s. *Id.* at 32. Plaintiff alleges that his book has made him the target of a corrupt enterprise, the scope and wrongdoing of which he describes as "beyond belief." *Id.* at 38.

In a Complaint spanning more than 200 pages and 800 paragraphs, Plaintiff contends that this "enterprise" is comprised of fifteen named Defendants (including the Clinton Defendants) and an unspecified number of unnamed defendants who allegedly engaged in various activities in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68. The Complaint is a roving tale of partisan conspiracy theories: without identifying any facts to support the allegations of conduct in violation of RICO or the purported roles of any particular Defendant, the Complaint accuses Defendants collectively of inducing the U.S. government to surveil the Trump campaign, *see, e.g.*, Compl. ¶ 62; leaking information to the press, *see, e.g.*, *id.* ¶ 74; conspiring to "destroy the presidency of Donald J. Trump," *id.* ¶ 117;

using "Nazi-like propaganda," *id.* ¶ 118; participating in an alleged conspiracy referred to as the "Uranium One" conspiracy, *see, e.g.*, *id.* ¶¶ 154–236; colluding with Russia, *see, e.g.*, *id.* ¶ 284; misappropriating classified information, *see, e.g.*, *id.* ¶¶ 302–10; colluding with the Department of Justice and the FBI, *see, e.g.*, *id.* ¶¶ 334–36; colluding with Special Counsel Robert Mueller, *see, e.g.*, *id.* ¶ 356; "utilizing Russian misinformation" during the 2016 Presidential campaign, *see, e.g.*, *id.* ¶ 375; conspiring to "destroy any and all 'conservative causes' across the United States," *id.* ¶ 406; committing "putative statutory treason," *id.* ¶ 485; bribing President Obama and members of his administration, *see, e.g.*, *id.* ¶ 512; committing or conspiring to commit murder, *see, e.g.*, *id.* ¶ 528; conspiring with British intelligence services, *id.* ¶ 565; committing "thousands of counts of wire fraud," *id.* ¶ 581; "us[ing] surrogates . . . to openly prevaricate on traditional and new media platforms," including Twitter, *id.* ¶ 586; acting as a "virtual obstruction of justice machine," *id.* ¶ 613; committing espionage, *see, e.g.*, *id.* ¶ 691; bribing women to claim they engaged in sexual relations with then-candidate Trump, *id.* ¶ 707; bribing a survivor of the Parkland school shooting to "slander[] private U.S. citizens . . . affiliated with the . . . National Rifle Association," *id.* ¶ 715; participating in a multi-billion-dollar tax fraud, *id.* ¶ 743; engaging in "espionage, bribery, and sedition," *id.* ¶ 809; and engaging in conduct that "could require that one or more members of the Enterprise, their surrogates, and their lawyers be subjected to the penalty of death," *id.* ¶ 757. Plaintiff further asserts that in carrying out these alleged conspiracies, Defendants were assisted by at least forty "Enterprise surrogates" or "Enterprise collaborators."[1]

---

[1] Neither of these terms appear in RICO or in opinions interpreting the statute.  Individuals and entities identified as "Enterprise surrogates" or "Enterprise collaborators" include Huma Abedin, James Baker, Sidney Blumenthal, former CIA Director John Brennan, former Director of National Intelligence James Clapper, Paul Combetta, former FBI Director James Comey, Marc Elias, Frank Giustra, Stefan Halper, former Attorney General Eric Holder, Daniel Jones, Peter Kadzik, undersigned counsel David E. Kendall, former Attorney General Loretta Lynch, former Virginia Governor Terence McAuliffe, former acting FBI Director Andrew McCabe, Jill McCabe, Cheryl

On the basis of these unsubstantiated assertions, Plaintiff alleges three RICO claims: (1) that Defendants "conducted" or "participated" in the affairs of a RICO enterprise "through a pattern of racketeering activity," in violation of 18 U.S.C. § 1962(c) (Second Cause of Action); (2) that Defendants acquired and maintained "an interest in or control of" a RICO enterprise "through a pattern of racketeering activity," in violation of 18 U.S.C. § 1962(b) (First Cause of Action); and (3) that Defendants conspired to violate § 1962(b), in violation of 18 U.S.C. § 1962(d) (Third Cause of Action).

The Complaint fails to connect any of these purported political conspiracies to any harm to Plaintiff.  Plaintiff's sole allegation of RICO injury is a legal conclusion that certain poorly defined harms were the "result of" the alleged conspiracies:  he asserts that "as a direct and proximate result of Defendant's [sic]" racketeering, he "suffered the loss of valuable property, financial services and support, and suffered other business and pecuniary damages."  Compl. ¶ 763.

Plaintiff also accuses Defendants of defaming him by questioning the accuracy of *Crisis of Character* (Fourth Cause of Action).  His defamation claim is premised on alleged statements by Defendants Jonathan Wackrow, Jan Gilhooly, Media Matters, Correct the Record, and David Brock.  There are no allegations that the Clinton Defendants made any defamatory statements,

---

Mills, Special Counsel Robert Mueller, Bruce Ohr, Nellie Ohr, Lisa Page, Brian Pagliano, former U.S. Ambassador to the United Nations Samantha Power, former National Security Advisor Susan Rice, Deputy Attorney General Rod Rosenstein, Michael Sussman, Heather Samuelson, former New York Attorney General Eric Schneiderman, Cody Shearer, Glenn Simpson, Christopher Steele, Peter Strzok, Jake Sullivan, Andrew Weissman, Jonathan Winer, and former Deputy Attorney General Sally Yates, as well as Fusion GPS, and Hillary for America.  Plaintiff also states that the list of Enterprise surrogates and collaborators "may include" President Obama, Compl. at 29, and that another Enterprise surrogate has a "close and continuing relationship" with "corrupt judge Rudolph Contreras," *id.* at 34, ¶ 287.  Curiously, President and Secretary Clinton are both referred to at times as Enterprise surrogates.  *See, e.g.*, *id.* at 24, ¶ 178.

only the factually unsupported assertion that they conspired with or directed other Defendants to defame Plaintiff.  *See, e.g.*, *id.* ¶ 789.  Further, Plaintiff's allegations of injury in support of the defamation claim are both conclusory and self-contradictory.  While Plaintiff alleges that he "suffered extraordinary reputational injury and . . . devastating monetary damage to his business as an author and commentator," *id.* ¶ 783, he states elsewhere that his book was a "*New York Times* Number 1 nonfiction bestseller," *id.* ¶¶ 6, 55, 789, and that he was "often invited to address private groups" and "appeared" at both the Republican and Democratic National Conventions, *id.* at 10 & n.2.

Plaintiff seeks $3 billion in compensatory and punitive damages stemming from his RICO claims, *see id.* ¶¶ 766, 772, 777, and $151.5 million in compensatory and punitive damages related to his defamation claim, *see id.* ¶ 792, as well as attorney's fees and costs.  The Complaint does not identify the factual basis for these claimed amounts.

## LEGAL STANDARD

This motion is premised on two independent bases for dismissal:  Federal Rule of Civil Procedure 12(b)(1), for lack of subject-matter jurisdiction, and Rule 12(b)(6), for failure to state a claim.

In adjudicating a motion to dismiss under Rule 12(b)(1), the guiding principle is that "[f]ederal courts are courts of limited jurisdiction, possessing only the power conferred by the Constitution and by statutes enacted by Congress."  *G. Keys PC/Logis NP v. Pope*, 630 F. Supp. 2d 13, 15 (D.D.C. 2009) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)).  Thus, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Kokkonen*, 511 U.S. at 377 (citation omitted).  When reviewing a motion to dismiss under Rule 12(b)(1), a court must grant

the plaintiff the benefit of all inferences that can be derived from the facts alleged, but "need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions." *Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)), *aff'd per curiam*, No. 12-5328, 2013 WL 1164502 (D.C. Cir. Feb. 20, 2013).

With regard to a claim for dismissal under Rule 12(b)(6), dismissal is warranted where the complaint fails to contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. While the court must take well-pleaded factual allegations as true, it "is not bound to accept as true a legal conclusion couched as a factual allegation." *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1050 (D.C. Cir. 2012) (quoting *Mountain States Legal Found. v. Bush*, 306 F.3d 1132, 1137 (D.C. Cir. 2002)). Nor need it accept "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *W. Assocs. Ltd. P'ship ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 634 (D.C. Cir. 2001) (quoting *Kowal v. MCI Commc'ns. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alternation in original) (quoting *Twombly*, 550 U.S. at 557).

As several courts have noted, this scrutiny of the sufficiency of a complaint is especially important in the context of RICO claims, where "particular care is required" to balance the inquiry

of Rule 12(b)(6) "with the necessity of preventing abusive or vexatious treatment of defendants."

*Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991).  Thus, courts "should strive to flush

out frivolous RICO allegations at an early stage of the litigation."  *Katzman v. Victoria's Secret*

*Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (quoting *Figueroa Ruiz v. Alegria*, 896 F.2d 645,

650 (1st Cir. 1990)), *aff'd*, 113 F.3d 1229 (2d Cir. 1997); *see also Cedar Swamp Holdings, Inc. v.*

*Zaman*, 487 F. Supp. 2d 444, 449 (S.D.N.Y. 2007) (noting warnings that putative civil RICO

claims may be "nothing more than sheep masquerading in wolves' clothing, or ordinary fraud

cases clothed in the Emperor's trendy garb" (internal quotation marks and footnote omitted)).[2]

## ARGUMENT

## I.   THE COMPLAINT MUST BE DISMISSED UNDER RULE 12(B)(1) FOR LACK OF JURISDICTION

The Complaint must be dismissed under Rule 12(b)(1) because it wholly fails to meet the

jurisdictional prerequisite of Article III standing.  Specifically, Plaintiff fails to allege facts

sufficient to establish that his federal claims present a justiciable case or controversy or that he has

suffered any cognizable injury.  Because the requirements of Article III are not satisfied, this Court

lacks subject-matter jurisdiction over Plaintiff's RICO claims.  *See Warth v. Seldin*, 422 U.S. 490,

498 (1975) (holding that standing is a "threshold question" in establishing the court's jurisdiction).

As to Plaintiff's state-law defamation claims, because there is no basis for the exercise of federal

jurisdiction, the Court likewise lacks a basis to exercise supplemental jurisdiction.  *Saksenasingh*

---

[2] Moreover, to the extent Plaintiff alleges predicate acts of fraud, including mail and wire fraud, Plaintiff's allegations are subject to the heightened pleading standard of Rule 9(b).  *Sandza v. Barclays Bank PLC*, 151 F. Supp. 3d 94, 108 (D.D.C. 2015).  Such claims "must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it."  *W. Assocs. Ltd. P'ship*, 235 F.3d at 637.

*v. Sec'y of Educ.*, 126 F.3d 347, 351 (D.C. Cir. 1997).   Accordingly, the Complaint should be dismissed in its entirety.

### A.  The Complaint Fails To Allege a Justiciable Case or Controversy as Required by Article III.

Article III of the Constitution confines the judicial power of federal courts to "Cases" and "Controversies."  U.S. Const. art. III, § 2.  Federal courts "have always taken this to mean cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998).  This limitation reflects the "traditional role" of the courts, which is "to redress or prevent actual or imminently threatened injury to persons caused by private or official violations of law," and "is founded in concern about the proper—and properly limited—role of the courts in a democratic society."  *Summers v. Earth Is. Inst.*, 555 U.S. 488, 492–93 (2009) (quoting *Warth*, 422 U.S. at 498).

To that end, a plaintiff is required to allege a personal stake in the outcome of a controversy he seeks to bring before the court.  "[A] plaintiff raising only a generally available grievance about government . . . does not state an Article III case or controversy."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573–74 (1992).  Moreover, when a plaintiff's asserted harm "is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction."  *Warth*, 422 U.S. at 499.  "Without such limitations . . . the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights."  *Id.* at 500.  Where the standing requirements of Article III are not met, dismissal is required.  *See, e.g.*, *Prosser v. Sessions*, No. 17-cv-01662 (TNM), --- F. Supp. ---, 2018 WL 2417854, at *5–6 (D.D.C. May 29, 2018) (dismissing RICO complaint for lack of Article III standing); *see also In*

*re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 246 (3d Cir. 2012) (same).

Here, the allegations underlying Plaintiff's RICO claims fall into two broad categories. The first category consists of generalized grievances against the Obama Administration (including Secretary Clinton in her capacity as Secretary of State from 2009 to 2013), the Department of Justice, the FBI, the FISA Court, and other governmental entities. These grievances are, fundamentally, expressions of Plaintiff's disagreement with governmental decisions, including the Committee on Foreign Investment in the United States' 2010 decision to authorize Russian investment in Uranium One, *see, e.g.*, Compl. 8, ¶¶ 144, 151, 162, 428, 624–25, the FBI's and Department of Justice's decision to seek FISA authorization to monitor members of the Trump Campaign, *id.* at 34–35, ¶¶ 62, 263, 421, 588, 661–64, and the FBI's and Department of Justice's determination that the facts concerning Secretary Clinton's e-mail usage did not warrant prosecution, *see, e.g.*, *id.* ¶¶ 640–42, 659–60. The second category is comprised of unsupported and abstract allegations that Defendants conspired to harm the United States and its citizens generally by colluding, for example, to commit treason, sedition, or to "carry out their operational scheme in secret to destabilize the United States Government and the 45th President of the United States." *Id.* ¶ 827. Neither of these categories of accusations states a justiciable case or controversy. It is well-established that such generalized claims that defendants have acted against the interests of the United States, or are alleged to have injured the rights of citizens generally or those other than the plaintiff, are insufficient to confer standing under Article III. *See, e.g.*, *Belaski v. United States*, No. 17-1035 (ABJ), 2017 WL 2694099, at *2 (D.D.C. June 21, 2017) ("[W]hile plaintiff's complaint may be impassioned, and she may have some legitimate grounds to differ with actions taken or not taken by the executive and legislative branches, what she has filed is, at

its core, a generalized grievance against the government, and that is not a justiciable federal case."). These and other allegations consume a substantial portion of the Complaint, but the generalized grievances levied against Defendants and others cannot confer standing, which "is not measured by the intensity of the litigant's interest or the fervor of his advocacy." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 486 (1982). Plaintiffs' RICO claims seek to transmute Plaintiff's political disagreements with the Clinton Defendants, the Obama Administration, the FBI, or other government agencies into a cognizable claim of racketeering, and to assert that Plaintiff can proceed individually on alleged political crimes against the United States as a nation. Long-standing Article III precedent rejects this gambit.

### B.     The Complaint Fails to Allege an Injury In Fact as Required by Article III.

"[A] showing of standing is an 'essential and unchanging' predicate to any exercise of a court's jurisdiction." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (quoting *Lujan*, 504 U.S. at 560). "The 'irreducible constitutional minimum' for standing is (i) the party must have suffered a concrete and particularized injury in fact, (ii) that was caused by or is fairly traceable to the actions of the defendant, and (iii) is capable of resolution and likely to be redressed by judicial decision." *Sierra Club v. EPA*, 755 F.3d 968, 973 (D.C. Cir. 2014) (citation omitted). In other words, to establish standing as a constitutional matter a plaintiff must "demonstrate the existence of a 'personal injury fairly traceable to the opposing party's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Delta Air Lines, Inc. v. Exp.-Imp. Bank of U.S.*, 85 F. Supp. 3d 250, 260 (D.D.C. 2015) (brackets omitted) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). And to allege an injury in fact,

> a plaintiff must demonstrate that he has "suffered an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." To be concrete, the injury must actually exist, meaning that it is real, and not abstract. . . . And to be "particularized," the injury must affect a plaintiff "in a personal and individual way."

10

*Freedom Watch, Inc. v. Sessions*, 281 F. Supp. 3d 159, 162 (D.D.C. 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016)), *aff'd per curiam*, 729 F. App'x 7 (D.C. Cir. 2018).

At the motion to dismiss stage, the court assesses whether the plaintiff has met his burden the same way it evaluates other elements of the complaint: by accepting all "well-pleaded" factual allegations as true. "Nevertheless," as the Court of Appeals for this Circuit has noted, "[t]hreadbare recitals of the elements of [standing], supported by mere conclusory statements, do not suffice," and courts "do not assume the truth of legal conclusions, nor do we 'accept inferences that are unsupported by the facts set out in the complaint.'" *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (alterations in original) (citation omitted) (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)). Like other aspects of a complaint, the plaintiff's pleading of injury must therefore provide "sufficient factual matter, accepted as true, to 'state a claim [of standing] that is plausible on its face.'" *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).

Here, the only articulation of purported injury appears in Plaintiff's conclusory assertions that "[a]s a direct and proximate result of Defendant's [sic] violation of 18 U.S.C. § 1962(a), Plaintiff suffered the loss of valuable property, financial services and support, and suffered other business and pecuniary damages," *see* Compl. ¶ 763, and similarly conclusory allegations that Plaintiff was harmed by the alleged defamation, *see id.* ¶¶ 4, 6, 112, 543, 783.[3] This generic

---

[3] Although the First Cause of Action alleges a violation of 18 U.S.C. § 1962(*b*), Paragraph 763 alleges that Plaintiff suffered damages "[a]s a direct as proximate result of Defendant's [sic] violation of 18 U.S.C. § 1962(*a*)." Compl. ¶ 763 (emphases added). Read literally, therefore, Plaintiff's complaint does not allege an injury associated with the First Cause of Action. Plaintiff's subsequent RICO claims fare no better: in fact, Plaintiff has not pleaded damages connected with the Second and Third Causes of Action at all. Those causes of action generally incorporate the preceding paragraphs of the Complaint, including Paragraph 763's conclusory allegation relating to damages specifically arising from the alleged violation of § 1962(a), but do not contain

assertion of broad categories of pecuniary harm does not suffice.  Instead, Plaintiff is required to

plead facts that "show that he personally has suffered some actual or threatened injury as a result

of the putatively illegal conduct of the defendant," *Gladstone Realtors v. Vill. of Bellwood*, 441

U.S. 91, 99 (1979), and that the injury can be "fairly . . . traced to the challenged action of the

defendant," *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41 (1976).  Plaintiff's allegations

are unsupported by any factual content and are nothing more than "[t]hreadbare recitals" of

injury—the kind of conclusory statements and legal conclusions that are not entitled to be assumed

true for the purposes of establishing Article III jurisdiction.  *Arpaio*, 797 F.3d at 19 (alteration in

original) (internal quotation marks omitted).  "In the absence of any allegation of any form of

injury that might logically flow from the conduct complained of, purely conclusory allegations of

damages fail to rise to the level of plausibility."  *Lail v. U.S. Gov't*, 771 F. Supp. 2d 49, 60 (D.D.C.

2011) (dismissing RICO claim where allegations of injury simply tracked statutory language).

       In addition, even if credited as true, Plaintiff's unsupported assertions of harm fail to

establish that Plaintiff's alleged injuries were "caused by or . . . fairly traceable to the actions of

the defendant[s]."  *Sierra Club*, 755 F.3d at 973.  On the contrary, the Complaint consists of a

panoply of theories of activities in which Defendants and the so-called "Enterprise surrogates,"

and "Enterprise collaborators" are purportedly involved, without identifying any specific conduct

of any particular Defendant, let alone any facts connecting any such conduct to a concrete and

particular injury suffered by Plaintiff.  And, with regard to the allegations that are specific to the

Clinton Defendants, the content of those allegations is so vague and general as to be meaningless:

they are alleged to have conspired with or "directed" other Defendants or various third parties to

---

equivalent paragraphs alleging damages from the claimed violations of § 1962(c) and (d).  *See*
Compl. ¶¶ 767–72 (Second Cause of Action); ¶¶ 773–77 (Third Cause of Action).

engage in various types of racketeering, *see* Compl. ¶¶ 527, 739, or defamation, *id.* ¶¶ 788–89, or are simply have alleged to have committed crimes in a recitation of the rote statutory language, *see, e.g.*, *id.* ¶¶ 490, 492–502, 505, 516, 552–42, 544–47, 573, 598, 690, 717–22.   But these accusations are wholly unsupported by any well-pleaded factual allegations.   Without that factual support, they are not entitled to a presumption of truth and therefore are insufficient to support a causal connection.   *Arpaio*, 797 F.3d at 19.   And without factual content connecting the purported harm with these alleged activities, Plaintiff has failed to establish any harm that is "fairly traceable" to the Clinton Defendants' actions.

Because Plaintiff has failed to allege facts that, if proven, would establish a concrete injury in fact or traceability the Clinton Defendants' alleged acts, the federal RICO claims must be dismissed for lack of jurisdiction.

### C. Because the Court Lacks Jurisdiction Over the Federal RICO Claims, It Cannot Exercise Supplemental Jurisdiction Over the Defamation Claim.

Because Plaintiff's federal claims must be dismissed for lack of jurisdiction, the Court must also dismiss Plaintiff's state-law defamation claims.   If a district court dismisses all of a party's federal claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure Rule 12(b)(1), it is precluded from exercising supplemental jurisdiction over any state-law claims. *Saksenasingh*, 126 F.3d at 351.   Thus, because the court lacks subject-matter jurisdiction over Plaintiff's RICO claims here, it "is precluded from exercising supplemental jurisdiction over any state law claims." *Id.*

## II. THE COMPLAINT MUST BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM

In addition to a lack of subject-matter jurisdiction, Plaintiff's claims suffer from a variety of substantive defects.   Even if there were jurisdiction to entertain the claims on the merits—and

there is not—the Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

**A.     The Complaint Fails to Plead Facts Sufficient to Establish the Elements of Plaintiff's RICO Claims.**

To state a claim under RICO, a plaintiff must at least allege that a defendant has (1) conducted; (2) an enterprise; (3) through a pattern (i.e., two or more acts that are sufficiently related); (4) of racketeering activity.  *See W. Assocs. Ltd. P'ship*, 235 F.3d at 633 (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)).   A RICO enterprise includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).   "Racketeering activity" includes offenses that are either "chargeable" or "indictable" under state or federal law and enumerated in 18 U.S.C. § 1961(1).  Standing to assert claims under RICO is limited to those who have suffered business or property losses directly and proximately caused by the underlying predicate acts.  *See* 18 U.S.C. § 1964(c); *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258 (1992).

Because Plaintiff has failed to allege facts sufficient to establish these necessary elements, his RICO claims must be dismissed.

**1.     The Complaint Fails to Plead the Necessary Elements of "RICO Standing."**

In addition to establishing Article III standing, a plaintiff seeking relief under RICO must establish "RICO standing."[4]   This concept is "narrower than Article III standing," *Fiala v. B&B*

---

[4] Notwithstanding the use of the word "standing," the Supreme Court has clarified that the key inquiry is whether the plaintiff has satisfied the requirements of the statutory cause of action.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014).  Courts therefore review the question of RICO standing under Rule 12(b)(6), rather than Rule 12(b)(1).  *See, e.g.*, *Adell v. Macon Cty. Greyhound Park, Inc.*, 785 F. Supp. 2d 1226, 1237 (M.D. Ala. 2011) (collecting cases).

*Enters.*, 738 F.3d 847, 850 (7th Cir. 2013), and focuses on RICO's requirement that a plaintiff have been "injured in his business or property by reason of a violation of [the statute]," 18 U.S.C. § 1964(c).  Thus, a "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the [RICO] violation." *Sedima*, 473 U.S. at 496; *see also Hourani v. Mirtchev*, 796 F.3d 1, 11 (D.C. Cir. 2015).  This requires a plaintiff to allege qualifying predicate acts—the "racketeering activity" prohibited by the statute— and to show that the defendant's racketeering activity "not only was a but for cause of [Plaintiff's] injury, but was the proximate cause as well." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (internal quotation marks omitted) (quoting *Holmes*, 503 U.S. at 268).  A viable RICO claim "thus requires 'some direct relation between the injury asserted and the injurious conduct alleged'"; "[a] link that is 'too remote,' 'purely contingent,' or 'indirect' is insufficient." *Id.* (brackets omitted) (quoting *Holmes*, 503 U.S. at 274, 268, 271).

### a.    The Complaint Fails to Plead Injury to "Business or Property" That Is Connected to a Predicate Act.

As explained above, Plaintiff has failed to plausibly plead any injuries connected with the alleged RICO predicate acts, providing instead a "formulaic recitation" of injury, claiming that the purported commission of the various federal crimes listed in the Complaint somehow caused injury to his business or property. *See* Compl. ¶¶ 4, 6, 112, 543, 763, 783.  For that reason alone, Plaintiff has failed to plead facts sufficient to establish a cognizable injury to "business or property" caused by alleged RICO predicate acts.  *See Lail*, 771 F. Supp. 2d at 60 (dismissing claims of injury that were "purely conclusory, in some cases merely parroting statutory language" where plaintiff simply asserted that defendants caused "injury to business or property").

Plaintiff separately asserts that the alleged defamation in Count Four damaged his reputation and slowed sales of his bestselling book.  Compl. 33–34, ¶¶ 55, 783.  But these abstract

allegations of injury to his reputation do not change the analysis, as defamation is not a predicate

act under RICO, and therefore any alleged harm associated with that claim does not constitute an

injury for RICO purposes.  *See Browning v. Clinton*, 292 F.3d 235, 249 (D.C. Cir. 2002) (noting

that defamation is not a RICO predicate act); *see also Sedima*, 473 U.S. at 495 (RICO "consists of

no more and no less than the commission of a predicate act" listed in § 1961(1)); *Beck v. Prupis*,

529 U.S. 494, 497 n.2 (2000) (statutory list of predicate acts is "exhaustive" and acts that do not

appear on list cannot form the basis for RICO liability).  Thus, any injury allegedly caused by the

defamation cannot, by definition, have been caused by the conduct constituting the RICO

violation.  *See Taitz v. Obama*, 707 F. Supp. 2d 1, 6 (D.D.C. 2010) (crimes that are not predicate

acts cannot support RICO liability).[5]

> **b.      The Complaint Fails to Plead Proximate Cause Required by RICO.**

Plaintiff's failure to allege any injury from a qualifying RICO predicate act necessarily

means that he has also failed to allege that his injuries were caused "by reason of a violation" of

the statute. 18 U.S.C. § 1964(c).  At most, Plaintiff has claimed that he was harmed by Defendants'

alleged defamation.  But where, as here, "[t]he cause of [a plaintiff's] asserted harms . . . is a set

of actions . . . entirely distinct from the alleged RICO violation," RICO's proximate cause

requirement is not met.  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006).  Plaintiff's

---

[5] In addition, courts have recognized that reputational injury is not an injury to "business or property" for RICO purposes.  *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 954 (8th Cir. 1999) (damage to "business reputation" was not an injury to "business or property" under RICO statute); *see also, e.g.*, *Santana v. Cook Cty. Bd. of Review*, 679 F.3d 614, 623 (7th Cir. 2012) (Plaintiff's "alleged reputational injury" was not cognizable "even if it could result in a loss of income"); *Kerik v. Tacopina*, 64 F. Supp. 3d 542, 561 (S.D.N.Y. 2014) ("[R]eputational injuries are insufficient to support a civil RICO claim.").  And, although "[l]ost profits can be recoverable" under RICO "if they are concrete and deprived by the wrongful conduct, instead of an intervening event or market condition," *Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89, 99–100 (D.D.C. 2015) (quoting *Bryant v. Mattel, Inc.*, No. CV 04–9049, 2010 WL 3705668, at *12 (C.D. Cal. Aug. 2, 2010)), any alleged decline in Plaintiff's book sales is wholly speculative.

conclusory assertion that his "injuries are proximately related" to defendants' conduct, Compl. ¶ 4, is not enough. *See RSM Prod. Corp.*, 682 F.3d at 1050 (courts will not accept "a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).

Moreover, even if Plaintiff had alleged that he personally suffered harm from the RICO predicate acts identified in the Complaint, Plaintiff would still fail to state a claim because any connection between his injuries and the alleged RICO violations would be too remote to satisfy the statute's proximate cause requirement. In this context, "proximate cause . . . requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Hemi Grp.*, 559 U.S. at 9 (quoting *Holmes*, 503 U.S. at 268). This principle, also referred to by the Supreme Court as a "directness requirement[]," *Anza*, 547 U.S. at 458, prevents plaintiffs from stating RICO claims when the defendant's actions bear only an "attenuated connection" with the claimed injury, *id.* at 459.

Here, the RICO predicates alleged in the Complaint have virtually nothing to do with Plaintiff. Indeed, aside from unsupported suggestions that the Defendants were motivated to a desire to "exact revenge against," "destroy, or "undermine" him, Plaintiff is completely unconnected to any of the allegations concerning the RICO predicate acts. *See, e.g.*, Compl. at 20, ¶¶ 490, 512, 527, 536, 550, 599, 755; *see also id.* at 13, ¶¶ 302, 306, 308, 339 (suggesting without any support whatsoever that Secretary Clinton's private emails contained information about Plaintiff). Moreover, none of the Complaint's allegations ever connect the alleged racketeering activity with any harm inflicted directly on Plaintiff. Plaintiff has failed to allege any injury from the RICO predicate acts, much less any "direct relation" between that injury and Defendants' racketeering conduct. *Hemi Grp.*, 559 U.S. at 9 (internal quotation marks omitted). And any alleged injury from Plaintiff's state-law defamation claim has not been connected to any RICO

predicate act and would, in any case, be far too remote to be proximately caused by the claimed racketeering activity.  *See Browning*, 292 F.3d at 250 (acknowledging that defamation is not a predicate act and calling otherwise "unpersuasive" a RICO plaintiff's claim that allegedly defamatory statements injured her ability to market her book, "for no factual allegations support this utterly conclusory contention" and "[l]inking the alleged racketeering activities with her claimed injury requires . . . a huge leap in logic").

### 2.      The Complaint Fails to Plead a RICO Enterprise.

To state a claim under RICO, Plaintiff must allege the existence of an enterprise, defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  A RICO enterprise must have "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Boyle v. United States*, 556 U.S. 938, 946 (2009).  Although "an association-in-fact enterprise is simply a continuing unit that functions with a common purpose," the existence of an enterprise is "an element distinct from the pattern of racketeering activity and 'proof of one does not necessarily establish the other.'"  *Id.* at 947–48 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).  Here, Plaintiff's "enterprise" allegations involve a revolving cast of political and media figures, purportedly acting for myriad purposes over a long period of time.  Plaintiff's protean imaginings of a so-called enterprise does not meet the pleading standard.

First, Plaintiff has failed to clearly define the membership of the alleged RICO enterprise, making it impossible to understand the longevity, scope, and goals of the alleged RICO activities.  *See Boyle*, 556 U.S. at 946 ("[A]n 'enterprise' must have some longevity, since the offense proscribed by that provision demands proof that the enterprise had 'affairs' of sufficient duration to permit an associate to 'participate' in those affairs through 'a pattern of racketeering activity.'");

*see also Turkette*, 452 U.S. at 583 (the enterprise element requires that "various associates function as a continuing unit").   Instead, Plaintiff generally alleges an enterprise formed by Defendants Brock, President Clinton, Secretary Clinton, George Soros, "and at various stages of the illegal Enterprise, the other defendants named here."   Compl. at 6.   Elsewhere, Plaintiff expands this description to include in the alleged enterprise "the defendants, their surrogates, and participants in their illegal conduct," forming a "collection of organized culpable criminals."   Compl. ¶ 7; *see also id.* at 5 (defining the "Enterprise" as "the named defendants . . . along with their corrupt surrogates and collaborators" "individually and collectively").   He later promises that "numerous" additional defendants "will be identified and proven to be participants in the vastly expanding criminal Enterprise."   *Id.* ¶ 21.   Plaintiff's sweeping definition purports to embrace forty or more additional individuals and entities beyond Defendants, without clearly defining the details of any particular Defendant's or surrogate's engagement in the alleged "enterprise," including the nature or longevity of their participation.[6]   Rather than alleging any "continuing unit," the enterprise that Plaintiff conjures seems to be comprised nebulously of those individuals and organizations he considers to be personal enemies or enemies of the United States, in his own political worldview, at any particular point in time.   This cannot satisfy RICO's enterprise requirement.   *See Stankevich v. Kaplan*, 156 F. Supp. 3d 86, 94 (D.D.C. 2016) (dismissing where plaintiff failed to allege facts suggesting "an associated enterprise," and instead "simply list[ed] grievances he has with each party and then conclusively and generally invokes the language of RICO"), *aff'd per curiam*, 707 F. App'x 717 (D.C. Cir. 2017), *petition for cert. filed*, 86 U.S.L.W. 3608 (U.S. Apr. 20, 2018) (No. 17-1546).

---

[6] *See supra* note 1.

Second, Plaintiff has not pleaded a coherent "common purpose" animating the alleged enterprise over the course of its existence.  On the contrary, Plaintiff alleges a panoply of purposes supposedly furthered by the alleged enterprise, including "to assist Hillary Clinton become the 45th president of the United States, destroy Gary Byrne, and enrich [the Defendants]," Compl. at 5, and alleges that once the enterprise "failed in its mission to deliver the U.S. presidency to Hillary Clinton," it "continued its mission—now that mission is to destroy the presidency of Donald Trump (and presumably anyone with the audacity to support the President)," *id.* ¶ 325; *see also, e.g.*, *id.* ¶ 22 (alleging a purpose "to destroy plaintiff and . . . to damage and ultimately abrogate the presidency of the 45th President of the United States and undermine the U.S. government").  Elsewhere, Plaintiff suggests that another goal of the enterprise is "financial gain," in addition to "revenge."  *Id.* ¶ 480.

Finally, Plaintiff has failed to allege any relationship or coordination between several of the Defendants (and surrogates), and failed to plead particularized facts supporting any such coordination.  Claims that "several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates . . . [is] not . . . enough to show that the individuals were members of an enterprise."  *Boyle*, 556 U.S. at 947 n.4.  Here, the Complaint relies on the inference that anyone who supported Secretary Clinton's Presidential candidacy, sought to hold Donald Trump accountable for his activities during the Presidential campaign or in the White House, or challenged the narrative in Plaintiff's book must have done so due to membership in a vast conspiracy.  Plaintiff substitutes conclusory assertions that the Clinton Defendants conspired with or directed the actions of other Defendants in a wide-ranging conspiracy, when the federal pleading standard requires factual allegations.  *See, e.g.*, Compl. ¶¶ 481 (alleging that "Defendants, in collusion with their surrogates, have jointly and severally aided and abetted and conspired to

violate myriad laws through their criminal enterprise"), *id.* ¶ 485 (alleging that "the Enterprise participants, individually and in coordination among themselves and their surrogates, utilized the wires and mails as to <u>all</u> predicate acts" (emphasis in original)); *id.* ¶ 486 ("Overall, the Enterprise is a *corrupt crime apparatus*, and each and every factual allegation herein is incorporated by reference into all of the alleged predicate acts (and vice-versa) . . . ." (emphasis in original)).

Plaintiff cannot skate by without pleading "factual content that allows the court to draw the reasonable inference" of a common purpose, organization, and continuity. *Iqbal*, 556 U.S. at 678. Allegations of independent action or even intentional parallel conduct between actors does not suffice. *See Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1069 (11th Cir. 2017) (finding no RICO enterprise and noting that "[a]lthough parallel conduct and interdependence are consistent with collusion, they are 'just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market'" (quoting *Twombly*, 550 U.S. at 554)); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 374 (3d Cir. 2010) ("Because plaintiffs' factual allegations do not plausibly imply anything more than parallel conduct by the [defendants], they cannot support the inference that the [defendants] 'associated together for a common purpose of engaging in a course of conduct.'" (quoting *Boyle*, 556 U.S. at 946)). Absent facts supporting coordination or a relationship between the members of the purported enterprise, the mere fact that some or all Defendants engaged in parallel conduct to support Hillary Clinton's candidacy or to challenge Donald Trump's campaign or presidency does not create a RICO enterprise.

### 3. The Complaint Fails to Adequately Plead the RICO Predicate Acts.

To state a claim under RICO, Plaintiff must allege that Defendants engaged in a "pattern" of racketeering activity made up of two or more predicate acts. *See W. Assocs. Ltd. P'ship*, 235 F.3d at 633. The pleading of these predicate acts is an "essential element of a civil RICO claim."

*See Cheeks v. Fort Myer Constr. Corp.*, 216 F. Supp. 3d 146, 159, 171 (D.D.C. 2016) (dismissing complaint for failure to state a claim when plaintiff failed to properly plead predicate acts), *aff'd per curiam*, 728 F. App'x 12 (D.C. Cir. 2018); *Johnson v. Comput. Tech. Servs., Inc.*, 670 F. Supp. 1036, 1039–40 (D.D.C. 1987) (dismissing a RICO claim where allegations predicate acts were "unsupported and insufficient").

Although Plaintiff purports to allege twelve "representative, albeit not exclusive" categories of predicate acts, *see generally* Compl. ¶¶ 488–757, Plaintiff's allegations are nothing more than "naked assertions" of criminal conduct or "labels and conclusions" devoid of factual support. *Iqbal*, 556 U.S. at 678. Many of the paragraphs in the Complaint are simply unsupported and conclusory claims that Defendants—individually, in conjunction with others, or in conjunction with the alleged Enterprise—violated the law, with no articulation of the acts claimed to have given rise to such violations. *See, e.g., id.* ¶¶ 491–93, 495–502 (alleging repetitively that various Defendants and "Enterprise surrogates" "directly or indirectly, corruptly gave, offered, or promised" money or things of value, or "directly or indirectly, corruptly demanded, sought, received, accepted, or agreed to receive" things of value). These unadorned allegations are insufficient to state a predicate act for pleading purposes. Further, in many instances, Plaintiff "neglect[s] to distinguish between the defendants when describing the factual underpinnings" of the claims, *Bates v. Nw. Human Servs., Inc.*, 466 F. Supp. 2d 69, 85 (D.D.C. 2006), instead lumping several Defendants together into a single vague factual allegation, *see, e.g.*, Compl. ¶¶ 494, 538, 573, alleging wrongdoing attributable to the "Enterprise" as a whole, *see, e.g., id.* ¶¶ 497, 512, 541, 564, 609, or setting forth pages of allegations connected only to "Enterprise surrogates," without establishing any concrete connection to any Defendant, *see, e.g., id.* ¶¶ 586–96, 634–42, 661–74, 695–704. Because Plaintiff "cannot satisfy the minimum pleading requirements under

22

Rule 8 of the Federal Rules of Civil Procedure by 'lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct,'" Plaintiff has failed to adequately plead the necessary predicate acts, and his RICO claims must be dismissed.  *Toumazou v. Turkish Rep. of N. Cyprus*, 71 F. Supp. 3d 7, 21–22 (D.D.C. 2014) (citation omitted).

Plaintiff's pleading failures are even more pronounced with respect to the alleged predicate acts that sound in fraud, and therefore are subject to Rule 9(b)'s heightened pleading requirement. Plaintiff blandly asserts, with no citation of precedent, that "RICO has always had a relaxed standard with respect to the particularity requirements of . . . mail and wire fraud."  Compl. ¶¶ 568, 580.  On the contrary, a plaintiff must plead circumstances of the fraudulent acts that form the alleged pattern of racketeering activity with sufficient specificity to satisfy Rule 9(b), and RICO claims premised on fraud "must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *W. Assocs. Ltd. P'ship*, 235 F.3d at 637 (internal quotation marks omitted).  To pass muster under Rule 9(b)'s particularity requirement, Plaintiff "must 'state the time, place, and content of the false misrepresentations, the fact misrepresented, and what was retained or given up as a consequence of the fraud.'"  *Cheeks*, 216 F. Supp. 3d at 157 (brackets omitted) (quoting *Sandza*, 151 F. Supp. 3d at 108).  The Complaint's allegations of mail and wire fraud are completely devoid of these necessary specifics.  *See* Compl. ¶¶ 557–611.

### 4.     The Complaint Fails to Plead the "Acquisition or Maintenance" Injury Necessary to Support a Claim Under § 1962(b).

In addition to the above defects, which apply to each of Plaintiff's RICO claims, Plaintiff has failed to plead a necessary element of his First Cause of Action, which alleges a violation of 18 U.S.C. § 1962(b).  Section 1962(b) provides in relevant part that "[i]t shall be unlawful for any

person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise."  18 U.S.C. § 1962(b).

The Court of Appeals of this Circuit has long held that Section 1962(b) requires not merely a proof of injury attributable to the RICO enterprise, but "proof of injury arising from the acquisition or maintenance of an interest in or control of an enterprise."  *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1231 (D.C. Cir. 1991).  Even if Plaintiff had adequately pleaded an injury by reason of a RICO predicate act—which he has not—he has failed to plead that any such injury was caused by the specific act of acquiring or maintaining an interest in the enterprise.

### 5.     The Complaint Fails to Plead Necessary Elements of a Claim Under § 1962(d).

Plaintiff has also failed to plead elements unique to his Third Cause of Action, which alleges a violation of 18 U.S.C. § 1962(d).  Section 1962(d) makes it unlawful for any person to conspire to violate subsections (a), (b), or (c).  Plaintiff's claim is limited to the allegation that Defendants conspired to violate § 1962(b) by conspiring to "acquire and maintain an interest in a RICO enterprise."  Compl. ¶ 774.

Here, because Plaintiff has failed to state a claim under § 1962(b) as explained above, his conspiracy claims under § 1962(d) fail as well.  "To establish a violation of § 1962(d), a conspirator must have intended 'to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense.'"  *Greenpeace, Inc. v. Dow Chem. Co.*, 808 F. Supp. 2d 262, 274 (D.D.C. 2011) (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)).  Further, Plaintiff has failed to plead facts adequately supporting the existence of any conspiratorial agreement.  But "unsupported conclusory allegations are 'not entitled to be assumed true,' and dismissal is proper when a conspiracy allegation 'd[oes] not plausibly suggest an illicit accord because it [i]s not only

24

compatible with, but indeed [i]s more likely explained by, lawful, unchoreographed free-market behavior.'" *RSM Prod. Corp.*, 682 F.3d at 1052 (alterations in original) (quoting *Iqbal*, 556 U.S. at 680-81); *see also Doe I v. Israel*, 400 F. Supp. 2d 86, 120 (D.D.C. 2005) (dismissing claim where complaint never contained "any minimal demonstration or objectively sufficient allegation of the subjective agreement that is necessary to form a conspiracy actionable under § 1962(d)").

*   *   *

For all the foregoing reasons, Plaintiff has failed to state a RICO claim upon which relief can be granted, and his First, Second, and Third Causes of Action should be dismissed under Rule 12(b)(6).[7]

### B.     The Complaint Fails to State a Claim for Defamation.

In the Fourth Cause of Action, Plaintiff claims that he was "defamed by all defendants under Arkansas Code, Title 16, Subtitle 5, Chapter 63, Subchapter 3, § 16-63-207." Compl. ¶ 779.[8] The essence of Plaintiff's accusations is that certain Defendants—Media Matters, Correct the Record, David Brock, Jonathan Wackrow, and Jan Gilhooly—allegedly defamed him by calling into question the accuracy of his book. *See* Compl. ¶ 27 (alleging that Defendants called Plaintiff's

---

[7] With the dismissal of Plaintiff's federal RICO claims under Rule 12(b)(6), the Court has discretion over its continued exercise of supplemental jurisdiction over Plaintiff's defamation claim. *See Saksenasingh*, 126 F.3d at 351. Where all federal claims are dismissed before trial, "the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 424 (D.C. Cir. 2005) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). That balance tilts definitively against the exercise of supplemental jurisdiction where, as here, dismissal of the federal claims is warranted at the pleading stage.

[8] The cited statutory section creates no cause of action, but merely defines the rules for pleading libel and slander. Moreover, Section 16-63-207 is no longer good law: it was repealed by the Arkansas legislature in 2013 as superseded by Arkansas Rule of Civil Procedure 8, which is "substantially the same" as Federal Rule of Civil Procedure 8. *See* 2013 Ark. Act 1148, § 39; Ark. R. Civ. P. 8 Editor's notes, n.1.

book "recycled *gossip*," "debunked *lies*," and "Trump-esque *conspiracy theories*." (emphases in
original)); *id.* ¶ 28 (allegedly claiming Byrne had "no direct access to the First Family"); *id.* ¶ 29
n.10 (allegedly calling certain of Plaintiff's claims "inconceivable" or "question[ing] the veracity"
of his book, calling the book "purely a tell-all, salacious, opportunistic . . . storytelling" not "based
in fact at all," claiming Plaintiff had "a character issue" and was motivated by profit); *id.* ¶ 39
(allegedly suggesting Plaintiff had an "underlying motive" and his book "delved into falsities . . .
that read like the 'daydreams of a low-ranking employee'"); *id.* ¶ 53 (allegedly stating that "facts
seem to be optional for Gary Byrne"); *see also id.* ¶ 33 (alleging that Defendants "colluded in
claiming that the *New York Times*" questioned the accuracy of Plaintiff's book); *id.* ¶ 39 (alleging,
without providing supporting facts, that Defendant Gilhooly claimed Byrne's testimony before a
grand jury was not truthful).

Plaintiff's defamation claim is no more viable than his RICO claims.  As an initial matter,
the facts alleged in the Complaint establish that the claim is time-barred.  Moreover, Plaintiff has
failed to plead several necessary elements of defamation—and, in particular, has failed to plead
facts connecting a majority of Defendants, including the Clinton Defendants, to the allegedly
defamatory statements.  For those reasons, the defamation claim should be dismissed.

### 1.    Plaintiff's State-Law Claim Is Time-Barred.

In adjudicating state-law claims in exercise of diversity or supplemental jurisdiction,
federal courts "must apply the choice-of law rules of the jurisdiction in which [they] sit."  *Wu v.
Stomber*, 750 F.3d 944, 949 (D.C. Cir. 2014).  The District of Columbia's choice-of-law rules
"treat[] the statute of limitations as a procedural issue," such that "the law of the forum state
applies" when a federal court hears a claim under its supplemental jurisdiction.  *Gaudreau v. Am.
Promotional Events, Inc.*, 511 F. Supp. 2d 152, 157 (D.D.C. 2007) (internal quotation marks
omitted); *see also Jin v. Ministry of State Sec.*, 254 F. Supp. 2d 61, 68 (D.D.C. 2003) (noting D.C's

choice-of-law rules "require application of the District of Columbia statute of limitations," and holding plaintiff's defamation claims time-barred). Thus, regardless of which state's law would govern the substance of Plaintiff's defamation claim, at the outset, Plaintiff's claim must satisfy D.C.'s statute of limitations.

It does not: Plaintiff's defamation claim is unequivocally barred by D.C.'s one-year statute of limitations on libel and slander claims. Plaintiff alleges that the defamation took place "throughout the summer of 2016," Compl. at 18, primarily in television appearances by Defendants Wackrow and Gilhooly that took place in "late June" of 2016 *see id.* ¶ 29 n.10, and which coincided generally with the June 2016 publication of his book, *see id.* Plaintiff's also alleges that many of the other Defendants' allegedly defamatory publications repeated the "slanderous statements . . . by Gilhooly and Wackrow," *id.* ¶ 29, "in the run up" to the 2016 election, *id.* ¶ 29 n.10; *see also id.* at 20. Thus, on the face of the Complaint, the allegedly actionable statements were made between June and November 2016. *See id.* ¶ 25 (alleging defamation "between the summer of calendar year 2016 . . . and the November 8th United States[] presidential election").

This presents an insurmountable barrier for Plaintiff's claim. Whether Plaintiff's defamation claim is characterized as libel or as slander, Plaintiff's claim is time-barred under D.C. law, which recognizes a one-year statute of limitations. *See* D.C. Code Ann. § 12-301(4) (West 2018). "Moreover, the District of Columbia follows the 'single publication' rule, whereby publication of defamatory matter 'gives rise to but one cause of action for libel, which accrues at the time of the original publication.'" *Jin*, 254 F. Supp. 2d at 68 (quoting *Ogden v. Ass'n of U.S. Army*, 177 F. Supp. 498, 502 (D.D.C. 1959)). Here, because the only statements alleged were made during "the summer of 2016," Compl. 18, or, at the latest, prior to the November 2016

election, *id.* ¶ 25, Plaintiff's claims became time-barred by November 2017, at the latest—well before Plaintiff filed the present action.  Plaintiff's Fourth Cause of Action must therefore be dismissed.

### 2.    The Complaint Fails to Allege Several Necessary Elements of Defamation.

In addition, Plaintiff's claim is substantively deficient in several respects.  Despite the logorrhea of a 210-page complaint, Plaintiff fails to allege with the requisite specificity the essential elements of a defamation claim:  that a particular defendant, at a particular time, published to a third party, a statement of fact (not opinion) of and concerning Plaintiff, that the statement was false and defamatory, was published with actual malice, and caused damage to Plaintiff.[9]

First, Plaintiff's presentation of the allegedly defamatory statements is scattershot and cursory.  With the exception of only a few statements, *see* Compl. ¶ 29 n.10, Plaintiff provides only partial quotations of the allegedly defamatory statement and fails to state any facts as to the time or place of publication, the full scope of the alleged statement, or the broader context in which

---

[9] Curiously, Plaintiff pleads his defamation claim "under Arkansas law," Compl. ¶ 778–81, even though there are no factual allegations in the Complaint that would indicate that D.C.'s substantive choice-of-law analysis—which requires application of the law of the jurisdiction that has the "most significant relationship" to the defamation claim—would point to the application of Arkansas law. *See Wu*, 750 F.3d at 949; *see also Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1338 n.6 (D.C. Cir. 2015).  In any event, the elements of a defamation claim in the District of Columbia are substantially similar to the framework employed in Arkansas.  *Compare Little Rock Newspapers, Inc. v. Fitzhugh*, 954 S.W.2d 914, 918 (Ark. 1997) ("In order to establish a claim of defamation, a party must prove the following elements: (1) The defamatory nature of the statement of fact; (2) that statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) damages."), *with Doe No. 1 v. Burke*, 91 A.3d 1031, 1044 (D.C. 2014) ("To establish liability for defamation, a plaintiff must show:  (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." (quoting *Rosen v. Am. Is. Pub. Affairs Comm., Inc.*, 41 A.3d 1250, 1256 (D.C. 2012)).  Plaintiff's claim fails under either analysis.

those statements appeared.  Plaintiff's pleading is therefore deficient.  *See Hoffman v. Hill & Knowlton, Inc.*, 777 F. Supp. 1003, 1005 (D.D.C. 1991) ("In libel and slander suits the time and place of the publication should be specifically stated in the complaint.").  Indeed, Plaintiff's cursory pleading frustrates Defendants' ability to fully defend against the defamation claim at this juncture, because it prevents Defendants and the court from determining whether the alleged statements are capable of defamatory meaning, and testing whether Plaintiff has accurately characterized Defendant's words.  An allegedly defamatory remark "must be more than unpleasant or offensive . . . [it] must make the plaintiffs appear odious, infamous, or ridiculous." *Klayman v. Segal*, 783 A.2d 607, 613 (D.C. 2001) (internal quotation marks omitted) (quoting *Howard Univ. v. Best*, 484 A.2d 958, 988 (D.C. 1984)).  From the Plaintiff's bare-bones pleading, it is highly doubtful that the statements satisfy this standard, but the Plaintiff's failure to provide the context of the alleged statements makes it impossible to evaluate them as a whole.  *See id.* at 614 ("[C]ontext 'requires that the court examine the statement in its totality in the context in which it was uttered or published.  The court must consider all the words used, not merely a particular phrase or sentence.'" (quoting *Foley v. Lowell Sun Publ'g Co.*, 533 N.E.2d 196, 197 (Mass. 1989))).

Second, Plaintiff has not clearly identified any false or defamatory statements of fact, as opposed to opinion, that could form the basis of an actionable defamation claim.  The "assertion that [Plaintiff] was motivated out of greed or ambition is a subjective judgment that is not verifiable," and is therefore "non-actionable" as defamation.  *Montgomery v. Risen*, 197 F. Supp. 3d 219, 248 (D.D.C. 2016) (collecting cases), *aff'd*, 875 F.3d 709 (D.C. Cir. 2017).  The same is true of a defendant's opinion that a plaintiff was a "con artist[.]"  *See id.* at 249.  Many of the alleged statements upon which Plaintiff premises his claim amount to nothing more than critical

but non-actionable statements of opinion regarding Plaintiff's motives.  *See, e.g.*, Compl. ¶ 29 n.10 (Defendants allegedly called certain of Plaintiff's statements "inconceivable" or "questioned the veracity" of his book, called the book "purely a tell-all, salacious, opportunistic . . . storytelling" not "based in fact at all," and claimed Plaintiff had "a character issue" and was motivated by profit); *id.* ¶ 39 (Defendants allegedly stated Plaintiff had an "underlying motive" and his book "delved into falsities . . . that read like the 'daydreams of a low-ranking employee'"); *id.* ¶ 53 (Defendants allegedly stated that "facts seem to be optional for Gary Byrne").

Third, the Complaint does not identify any allegedly defamatory statements made by either of the Clinton Defendants as the speaker, and fails to allege any facts to support Plaintiff's conclusory allegations that the Clinton Defendants directed or are otherwise at fault in the publication of the allegedly defamatory statements of others.  Indeed, there is no allegation of fact that suggests in any way that the Clinton Defendants were connected in any way to the alleged statements.  Rather, Plaintiff merely alleges in a conclusory fashion that "[a]ll defendants, individually and collectively, attempted to destroy" his business and reputation, and that Secretary Clinton "ordered" that he be defamed. *Id.* ¶ 789; *see also id.* ¶¶ 402, 405 (alleging that the Clinton campaign "funded" or "ordered" the alleged defamation).  These allegations are entirely devoid of factual support and are therefore not entitled to be credited as true.  *See Iqbal*, 556 U.S. at 678. Plaintiff therefore has not sufficiently pleaded the Clintons Defendants' involvement in the alleged defamation.

Fourth, Plaintiff has similarly failed to plead any facts establishing the Clinton Defendants acted with "actual malice" in the alleged defamatory scheme.  Although Plaintiff asserts the legal conclusion that he is not a public figure, Compl. ¶ 784, he is by his own admission "an author and commentator" on political issues, *see id.* at 10, ¶¶ 6, 783.  He is therefore a public figure at least

with respect to public debate around the issues and views he has subjected to public scrutiny, including the contents of his book. *See Joseph v. Xerox Corp.*, 594 F. Supp. 330, 334 (D.D.C. 1984) (author was a limited purpose public figure on the topic of his book); *see also Sculimbrene v. Reno*, 158 F. Supp. 2d 8, 22–24 (D.D.C. 2001) (former FBI agent involved in 1996 investigation of "Filegate" by Independent Counsel Starr was a limited purpose public figure for purposes of discussing that investigation).

A public figure seeking to recover for defamation must prove that the offending publication "was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). But the Complaint is entirely lacking in factual allegations to support Plaintiff's threadbare assertion that the Clinton Defendants either participated in the defamation, much less that they did so knowing at the time of publication that the allegedly defamatory statements were false. *See Fairbanks v. Roller*, No. 1:17-cv-01052 (TNM), --- F. Supp. 3d ---, 2018 WL 2727897, at *4 (D.D.C. June 6, 2018) ("actual malice" inquiry focuses on defendant's knowledge at the time of publication). At most, Plaintiff claims that the Clinton Defendants "have conceded that Plaintiff Gary Byrne was 'the last barrier before anyone saw Bill Clinton.'" Compl. ¶ 34. But Plaintiff has not explained how that assertion relates to any of the allegedly defamatory statements. *See Tavoulareas v. Piro*, 817 F.2d 762, 794 (D.C. Cir. 1987) ("[D]efamation plaintiffs cannot show actual malice in the abstract; they must demonstrate actual malice *in conjunction* with a false defamatory statement."). Nor has Plaintiff alleged that the Clinton Defendants are responsible for any allegedly defamatory statements suggesting otherwise. *See* Compl. ¶ 34 (asserting that evidence "could have been reviewed *by Wackrow and Gilhooly* prior to slandering Plaintiff" (emphasis added)). In the absence of any facts showing that the Clinton Defendants themselves

were responsible for defaming Plaintiff with knowledge of or reckless disregard for a particular statement's falsity, Plaintiff falls far short of meeting the "demanding standard" for actual malice. *Fairbanks*, 2018 WL 2727897, at *4.  The defamation claim must therefore be dismissed with respect to the Clinton Defendants.  *Parisi v. Sinclair*, 774 F. Supp. 2d 310, 320 (D.D.C. 2011) ("[B]ecause the plaintiffs have failed to allege facts in the complaint supporting the inference that [the defendant] acted with actual malice, the remaining claims against [defendant] must be dismissed."); *Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128, 134 (D.D.C. 2009) (dismissing complaint where plaintiff "failed to plead actual malice").

Finally, Plaintiff has failed to plead any facts supporting his claim that he suffered damages from the alleged defamation.  Although Plaintiff repeatedly asserts that he was a victim of defamation per se, *see, e.g.*, Compl. ¶¶ 29 n.10, 39, 58, Arkansas law—the very state law under which Plaintiff purports to plead his claim—does not recognize that doctrine, and instead requires actual damages as a necessary element of a properly pleaded claim for defamation.  *See Faulkner v. Ark. Children's Hosp.*, 69 S.W.3d 393, 403 (Ark. 2002).  In addition, as noted at length above, Plaintiff has failed to support his claims of injury with anything beyond conclusory allegations. Where a plaintiff does not plead "specific facts demonstrating that [he] has suffered actual damage to [his] reputation, but has only pled a conclusion to that effect," the complaint cannot withstand a motion to dismiss.  *Id.* (citing Ark. R. Civ. P. 12(b)(6) and Ark. R. Civ. P. 8(a)(1)); *see also Brown v. Tucker*, 954 S.W.2d 262, 266 (Ark. 1997) (affirming dismissal where plaintiff "offered no factual assertion that he was damaged by the alleged slanderous remarks"); *Robertson v. Daniel*, 2013 Ark. App. 160 (2013) (allegation that plaintiff "suffered damage by 'being cast as untruthful'" was not sufficient where plaintiff "alleged no specific facts demonstrating actual damage to his reputation or profession").

Plaintiff's pleading of damages is equally deficient under D.C. law.  While D.C. holds that the imputation that someone has committed a criminal offense may constitute libel per se, *see Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*, 383 F. Supp. 2d 32, 40 (D.D.C. 2005), this does not rescue Plaintiff's claim.  Although Plaintiff premises his defamation per se claim on the suggestion that he was accused of perjury by Defendants Gilhooly or Wackrow, he fails to provide even a *partial* quotation of the alleged defamatory statement, much less the time, place, or context. *See* Compl. ¶¶ 29, 39, 782.  His unsupported assertion that he was accused of lying under oath, without more, is insufficient to state a claim.

In the absence of defamation per se, a plaintiff stating a claim for defamation in D.C. must plead special damages, *see Smith v. Clinton*, 886 F.3d 122, 128 (D.C. Cir. 2018), and comply with Federal Rule of Civil Procedure 9(g), which provides that "[i]f an item of special damage is claimed, it must be specifically stated," Fed. R. Civ. P. 9(g).  To comply with this rule, a plaintiff must "set forth 'the precise nature of the losses as well as the way in which the special damages resulted from the allegedly false publication.'"  *Browning*, 292 F.3d at 246 (quoting *Schoen v. Wash. Post*, 246 F.2d 670, 672 (D.C. Cir. 1957)).  It is not enough to "merely assert[] in general terms that [the defendant's statement] cost [the plaintiff] financially."  *Id.* at 246.

But, here, "general terms" is all that Plaintiff offers.  His Complaint contains only boilerplate allegations of damage as a result of the alleged defamation.  Compl. at 33, ¶¶ 55, 783. These conclusory allegations do not plausibly establish that Plaintiff suffered special harm, let alone do so with the particularity required by Rule 9(g).

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed for lack of subject-matter jurisdiction or, in the alternative, for failure to state a claim.

33

Dated: August 8, 2018                    Respectfully submitted,

                                         /s/   David E. Kendall
                                         David E. Kendall (DC Bar No. 252890)
                                         Katherine Turner (DC Bar No. 495528)
                                         Michael Mestitz (DC Bar No. 1047260)
                                         WILLIAMS & CONNOLLY LLP
                                         725 Twelfth Street, N.W.
                                         Washington, DC 20005
                                         Tel: (202) 434-5000
                                         Fax: (202) 434-5029
                                         dkendall@wc.com
                                         kturner@wc.com
                                         mmestitz@wc.com

                                         *Counsel for Former President William
                                         Jefferson Clinton and Former Secretary
                                         Hillary Rodham Clinton*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 8, 2018, I caused a copy of the foregoing to be filed and served electronically upon the registered parties with the United States District Court for the District of Columbia via the Court's CM/ECF system.

The following individuals were served by First Class U.S. Mail:

Jan Gilhooly
51 Clarken Drive
West Orange, NJ 07052

The Clinton Global Initiative
John Tisdale (Registered Agent)
200 West Capitol, Suite 2300
Little Rock, AR 72201

The Clinton Foundation
Louis Lance (Authorized Agent)
Corporation Service Company
1090 Vermont Avenue, N.W., #430
Washington, DC 20005

The Clinton Giustra Enterprise Partnership
c/o Frank Giustra
1502 San Ysidro Drive
Beverly Hills, CA 90210

/s/ David E. Kendall
David E. Kendall