**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| GARY JOHN BYRNE *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 18-cv-01422-PLF |
| HILLARY RODHAM CLINTON *et al.*, | |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT FORMER
SECRETARY OF STATE HILLARY RODHAM CLINTON'S MOTION TO DISMISS**

David E. Kendall (DC Bar No. 252890)
Katherine Turner (DC Bar No. 495528)
Michael Mestitz (DC Bar No. 1047260)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
dkendall@wc.com
kturner@wc.com
mmestitz@wc.com

*Counsel for Former Secretary of State
Hillary Rodham Clinton*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...........................................................................................................1

BACKGROUND ...........................................................................................................2

LEGAL STANDARD.....................................................................................................7

ARGUMENT ................................................................................................................8

I.     THE AMENDED COMPLAINT MUST BE DISMISSED UNDER RULE
12(B)(1) FOR LACK OF JURISDICTION.................................................................8

     A.     The Amended Complaint Fails To Allege a Justiciable Case or
Controversy as Required by Article III...................................................9

     B.     The Amended Complaint Fails to Allege a Concrete and Actual Injury In
Fact as Required by Article III.............................................................11

II.    THE AMENDED COMPLAINT MUST BE DISMISSED UNDER RULE
12(B)(6) FOR FAILURE TO STATE A CLAIM .......................................................16

     A.     The Amended Complaint Fails to Plead Facts Sufficient to Establish the
Elements of Plaintiff's RICO Claims. ..................................................16

          1.     The Amended Complaint Fails to Plead the Necessary Elements of
"RICO Standing." ...................................................................17

          2.     The Amended Complaint Fails to Plead a RICO Enterprise. ...................20

          3.     The Amended Complaint Fails to Adequately Plead a Pattern of
Racketeering Activity. .............................................................23

          4.     The Amended Complaint Fails to Plead Necessary Elements of a
Claim Under § 1962(d). ...........................................................29

     B.     The Amended Complaint Fails to State a Claim for Defamation..........................30

          1.     Plaintiff's State-Law Claim Is Time-Barred..............................................31

          2.     The Amended Complaint Fails to Allege Several Necessary
Elements of Defamation. .........................................................32

CONCLUSION..............................................................................................................38

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328 (D.C. Cir. 2015)..........................................31

*Adell v. Macon Cty. Greyhound Park, Inc.*,
    785 F. Supp. 2d 1226 (M.D. Ala. 2011) ..............................................................................17

*Allen v. Wright*, 468 U.S. 737 (1984) ...................................................................................12

*Almanza v. United Airlines, Inc.*, 851 F.3d 1060 (11th Cir. 2017)...............................................22

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006)..........................................................19, 20

*\*Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015) ...........................................................12, 13, 14

*\*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................. *passim*

*Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*,
    383 F. Supp. 2d 32 (D.D.C. 2005)......................................................................................37

*Bates v. Nw. Human Servs., Inc.*, 466 F. Supp. 2d 69 (D.D.C. 2006) ..........................................24

*Beck v. Prupis*, 529 U.S. 494 (2000)......................................................................................18

*Belaski v. United States*,
    No. 17-1035 (ABJ), 2017 WL 2694099 (D.D.C. June 21, 2017)..........................................10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................7, 8, 21, 22

*\*Boyle v. United States*, 556 U.S. 938 (2009) ...............................................................20, 21, 22

*\*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) ..........................................................18, 37

*Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444 (S.D.N.Y. 2007) ...........................8

*\*Cheeks v. Fort Myer Constr. Corp.*, 216 F. Supp. 3d 146 (D.D.C. 2016)...........................14, 24

*Delta Air Lines, Inc. v. Exp.-Imp. Bank of U.S.*, 85 F. Supp. 3d 250 (D.D.C. 2015) ...................11

*Disner v. United States*, 888 F. Supp. 2d 83 (D.D.C. 2012)........................................................7

*Doe I v. Israel*, 400 F. Supp. 2d 86 (D.D.C. 2005).....................................................................29

\*Authorities upon which we chiefly rely are marked with asterisks

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
    48 F.3d 1260 (D.C. Cir. 1995) ................................................................26, 28

*Fairbanks v. Roller*, 314 F. Supp. 3d 85 (D.D.C. 2018) ................................35, 36

*Fiala v. B&B Enters.*, 738 F.3d 847 (7th Cir. 2013) ......................................17

*Figueroa Ruiz v. Alegria*, 896 F.2d 645 (1st Cir. 1990) ................................8

*Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658 (D.C. Cir. 1996) ......................11

*Freedom Watch, Inc. v. Sessions*, 281 F. Supp. 3d 159 (D.D.C. 2017),
    *aff'd per curiam*, 729 F. App'x 7 (D.C. Cir. 2018) ..........................12, 14

*G. Keys PC/Logis NP v. Pope*, 630 F. Supp. 2d 13 (D.D.C. 2009) ................7

*Gaudreau v. Am. Promotional Events, Inc.*, 511 F. Supp. 2d 152 (D.D.C. 2007) ........................31

*Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91 (1979) ......................12

*Greenpeace, Inc. v. Dow Chem. Co.*, 808 F. Supp. 2d 262 (D.D.C. 2011) ................................29

*H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229 (1989) ....................................28

*Hemi Grp., LLC v. City of New York*, 559 U.S. 1 (2010) ....................17, 19

*Hoffman v. Hill & Knowlton, Inc.*, 777 F. Supp. 1003 (D.D.C. 1991) ............33

*Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258 (1992) ....................16, 17, 19

*Hourani v. Mirtchev*, 796 F.3d 1 (D.C. Cir. 2015) ........................................17

*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010) ................22

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
    678 F.3d 235 (3d Cir. 2012) ......................................................................10

*Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728 (D.C. Cir. 2007) ........12

*Jin v. Ministry of State Sec.*, 254 F. Supp. 2d 61 (D.D.C. 2003) ............31, 32

*Johnson v. Comput. Tech. Servs., Inc.*, 670 F. Supp. 1036 (D.D.C. 1987) ......24

*Joseph v. Xerox Corp.*, 594 F. Supp. 330 (D.D.C. 1984) ..............................35

\*Authorities upon which we chiefly rely are marked with asterisks

*Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649 (S.D.N.Y. 1996),
   *aff'd*, 113 F.3d 1229 (2d Cir. 1997) ...................................................................8

*Klayman v. Clinton, et al.*, No. 9:15–cv–80388–DMM (S.D. Fla. Aug. 11, 2015),
   *aff'd*, 668 Fed. App'x 351 (11th Cir. 2016) ......................................................15

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994)..........................................7

*Kowal v. MCI Commc'ns. Corp.*, 16 F.3d 1271 (D.C. Cir. 1994) .................................8

*\*Lail v. U.S. Gov't*, 771 F. Supp. 2d 49 (D.D.C. 2011)........................................13, 18

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014) .........17

*Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*,
   657 F. Supp. 2d 104, 115 (D.D.C. 2009),
   *aff'd*, 383 F. App'x 1 (D.C. Cir. 2010) ............................................................28

*\*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...........................................9, 15

*Miranda v. Ponce Fed. Bank*, 948 F.2d 41 (1st Cir. 1991)...........................................8

*\*Montgomery v. Risen*, 197 F. Supp. 3d 219 (D.D.C. 2016),
   *aff'd*, 875 F.3d 709 (D.C. Cir. 2017) .............................................................33

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964).....................................................36

*Ogden v. Ass'n of the U.S. Army*, 177 F. Supp. 498 (D.D.C. 1959) ...........................32

*Parisi v. Sinclair*, 774 F. Supp. 2d 310 (D.D.C. 2011)...............................................36

*Prosser v. Sessions*, 315 F. Supp. 3d 547 (D.D.C. 2018) ..........................................10

*\*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*,
   682 F.3d 1043 (D.C. Cir. 2012) .................................................................19, 29

*Salinas v. United States*, 522 U.S. 52 (1997)............................................................29

*Schoen v. Wash. Post*, 246 F.2d 670 (D.C. Cir. 1957)................................................37

*Sculimbrene v. Reno*, 158 F. Supp. 2d 8 (D.D.C. 2001) ............................................35

*\*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ....................................16, 17, 18

*Sierra Club v. EPA*, 755 F.3d 968 (D.C. Cir. 2014) ..............................................11, 13

\*Authorities upon which we chiefly rely are marked with asterisks

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) ................................................12

*Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128 (D.D.C. 2009) ....................................36

*Smith v. Clinton*, 253 F. Supp. 3d 222 (D.D.C. 2017),
    *aff'd*, 886 F.3d 122 (D.C. Cir. 2018) ......................................................................15

*Smith v. Clinton*, 886 F.3d 122 (D.C. Cir. 2018) ........................................................37

*Speelman v. United States*, 461 F. Supp. 2d 71 (D.D.C. 2006) .......................................7

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) .........................................................12

*Stankevich v. Kaplan*, 156 F. Supp. 3d 86 (D.D.C. 2016),
*aff'd per curiam*, 707 F. App'x 717 (D.C. Cir. 2017),
*petition for cert. filed*, 86 U.S.L.W. 3608 (U.S. Apr. 20, 2018) ....................................21

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ..........................................9

*Summers v. Earth Is. Inst.*, 555 U.S. 488 (2009) .........................................................9

*Taitz v. Obama*, 707 F. Supp. 2d 1 (D.D.C. 2010) ......................................................18

*Tavoulareas v. Piro*, 817 F.2d 762 (D.C. Cir. 1987) ...................................................36

*Toumazou v. Turkish Rep. of N. Cyprus*, 71 F. Supp. 3d 7 (D.D.C. 2014) ...........................24, 34

*United States v. Adefehinti*, 510 F.3d 319 (D.C. Cir. 2007),
    *as amended* (Feb. 15, 2008),
    *judgment entered*, 264 F. App'x 16 (D.C. Cir. 2008) .............................................25

*United States v. Turkette*, 452 U.S. 576 (1981) ......................................................20, 21

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State,*
    *Inc.*, 454 U.S. 464 (1982) ....................................................................................11

*W. Assocs. Ltd. P'ship ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*,
    235 F.3d 629 (D.C. Cir. 2001) ....................................................... *passim*

*Warth v. Seldin*, 422 U.S. 490 (1975) ...............................................................9, 11

*Wu v. Stomber*, 750 F.3d 944 (D.C. Cir. 2014) ......................................................30, 31

*Authorities upon which we chiefly rely are marked with asterisks

**STATE CASES**

*Doe No. 1 v. Burke*, 91 A.3d 1031 (D.C. 2014)...........................................................31

*Faulkner v. Ark. Children's Hosp.*, 69 S.W.3d 393 (Ark. 2002)...................................31

*Foley v. Lowell Sun Publ'g Co.*, 533 N.E.2d 196 (Mass. 1989)...................................33

*Howard Univ. v. Best*, 484 A.2d 958, 988 (D.C. 1984)................................................33

*Klayman v. Segal*, 783 A.2d 607 (D.C. 2001) .............................................................33

*Little Rock Newspapers, Inc. v. Fitzhugh*, 954 S.W.2d 914 (Ark. 1997)......................31

*Rosen v. Am. Is. Pub. Affairs Comm., Inc.*, 41 A.3d 1250 (D.C. 2012)........................31

**CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES**

U.S. Const. art. III, § 2 ..................................................................................... *passim*

18 U.S.C. § 201.................................................................................................5, 24, 25

18 U.S.C. § 1512...................................................................................................5, 24

18 U.S.C. § 1952.............................................................................................5, 24, 25

18 U.S.C. § 1956.................................................................................................25, 26

*Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68

    18 U.S.C. § 1961(1) .......................................................................................16, 18

    18 U.S.C. § 1961(4) .......................................................................................16, 20

    18 U.S.C. § 1962(c) ..........................................................................................5, 29

    18 U.S.C. § 1962(d) .........................................................................................5, 29

    18 U.S.C. § 1964(c) .................................................................................16, 17, 19

Ark. Code Ann. § 16-63-207, *repealed by* Ark. Acts 2013, No. 1148 .........................30

D.C. Code Ann. § 12-301(4)........................................................................................32

Fed. R. Civ. P. 8 ...............................................................................................24, 30, 35

*Authorities upon which we chiefly rely are marked with asterisks

Fed. R. Civ. P.9(g) ................................................................................................................37

*Fed. R. Civ. P.12(b)(1)............................................................................................... *passim*

*Fed. R. Civ. P.12 (b)(6)............................................................................................... *passim*

Ark. R. Civ. P. 8.....................................................................................................................30

*Authorities upon which we chiefly rely are marked with asterisks.

# INTRODUCTION

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Hillary Rodham Clinton moves to dismiss Plaintiff's[1] Amended Complaint (ECF No. 51) for lack of subject-matter jurisdiction and failure to state a claim.  The Amended Complaint is significantly shorter than Plaintiff's 210-page Corrected Complaint, but presents an abbreviated rehash of the same catalogue of conspiracy theories and threadbare allegations.  Like the original, the Amended Complaint fails to present any justiciable legal controversy or viable cause of action.  On the contrary, it simply fits the same legal deficiencies into fewer pages.  Accordingly, dismissal is required.

First, Plaintiff's claims must be dismissed because they do not present a justiciable case or controversy under Article III of the Constitution.  In particular, Plaintiff has failed to allege a concrete and particularized injury that is traceable to any conduct of Secretary Clinton.  Plaintiff's previous Complaint relied heavily on partisan conspiracy theories.  His Amended Complaint reiterates many of the same generalized grievances but has reconceived his allegations to focus primarily on his state-law defamation claim.  But the Amended Complaint remains devoid of any factual allegations that Secretary Clinton was involved in the alleged defamation; instead, it relies solely on conclusory allegations that Secretary Clinton conspired with or directed third-parties to defame Plaintiff.  Such allegations are insufficient as a matter of law.  Likewise, in an attempt to

---

[1] In this Memorandum, Secretary Clinton will follow the Amended Complaint's terminology and often refer to "Plaintiff" in the singular.  Although the Amended Complaint now identifies "The GJB Project" as an additional plaintiff in this action, Am. Compl. ¶ 5, the Amended Complaint is devoid of any well-pleaded factual allegations concerning separate claims stated or injuries suffered by The GJB Project.  Notwithstanding the use of the singular "Plaintiff" for readability throughout this Memorandum, Secretary Clinton's arguments apply to the Amended Complaint as a whole, and therefore apply to *both* Plaintiffs.  No waiver is intended by the use of this term, and, to the extent there is any distinction between Byrne and The GJB Project, both have failed to state claims for the reasons explained herein.

rescue his defective RICO claims, Plaintiff now alleges that he was somehow injured by the alleged destruction of Secretary Clinton's personal e-mails. But that claim of injury is both unexplained and unsupported. In sum, Plaintiff's conclusory claims of injury—which fail to identify any concrete harm to Plaintiff by reason of any conduct by Secretary Clinton—are insufficient to establish an injury in fact, as is necessary to invoke the jurisdiction of this Court. Thus, the Amended Complaint must be dismissed because it fails to allege facts sufficient to meet Article III's requirements.

Second, as an independent basis for dismissal, Plaintiff has failed to state any claims upon which relief can be granted. Even with a second bite at the apple, Plaintiff's Amended Complaint fails to include any well-pleaded factual allegations to support several essential elements of Plaintiff's claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68, including, among others, (1) a cognizable injury to business or property "by reason of" any well-pleaded predicate acts, (2) the requisite proximate cause between Defendants' acts and any such injury, (3) a sufficient RICO "enterprise," and (4) the necessary "pattern" of predicate activities. Plaintiff's state-law claim that he was defamed by third parties fares no better: that claim is time-barred on the face of the Amended Complaint, and is otherwise substantively defective. Plaintiff's hurdles in meeting the requirements of Article III are insuperable, but even if they could be cleared, the Amended Complaint should be dismissed for failure to state a claim.

For these reasons, Secretary Clinton respectfully requests that the Court dismiss the Amended Complaint against her.

## **BACKGROUND**

Plaintiff Gary Byrne is an author, commentator, and former officer of the uniformed U.S. Secret Service. Am. Compl. ¶ 5, 115. In June 2016, five months before the 2016 Presidential

election, Plaintiff published *Crisis of Character: A White House Secret Service Officer Discloses His Firsthand Experience with Hillary, Bill, and How They Operate*, which became a "*New York Times* Number 1 nonfiction bestseller." *Id.* ¶ 5. The book purportedly describes Plaintiff's "numerous and highly disturbing first-hand reflections of" President Clinton and Secretary Clinton, dating from Plaintiff's service in the White House in the mid-1990s. *Id.* ¶ 18.

In his Amended Complaint, Plaintiff claims that Defendants spearheaded a criminal Enterprise aimed both at influencing the highest levels of the United States government and personally persecuting him. Plaintiff claims that "[i]t is not difficult to discern what the Enterprise was attempting to do to Plaintiff Gary Byrne." *Id.* ¶ 24. On the contrary, it is exceedingly difficult to discern the logic behind Plaintiff's claims, and impossible to construct from the Amended Complaint any basis for legal relief. Even in this abridged version of his earlier Complaint, Plaintiff alleges that:

- Defendants' corrupt enterprise worked internationally with lawyers "in the Republic of China" to "further[] its objectives" "with attendant financial institutions in the United States." *Id.* ¶ 13.

- CNN is "aligned closely" with the Democratic Party and "espouse[s]" Defendants' criminal enterprise. *Id.* ¶ 20 n.2.

- He was personally targeted by "illegal domestic human and electronic surveillance" ordered by former CIA Director John Brennan, former FBI Director James Comey, and unspecified members of the alleged RICO Enterprise. *Id.* ¶¶ 22–24.

- Unspecified "Enterprise principals targeted [him] with the most robust counterintelligence powers in existence in order to illicit [sic] information which they could use to destroy him." *Id.* ¶ 26.

- The Enterprise misled the Foreign Intelligence Surveillance Court. *Id.* ¶ 29.

- The Enterprise illegally possessed and distributed classified information. *Ibid.*

- Secretary Clinton attempted to "mame [sic] (or possibly kill)" President Clinton. *Id.* ¶¶ 50, 52.

3

- The Enterprise operates entities "as part of the *#Resistance*" with a mission "to destroy those like Plaintiffs, and the presidency of the 45th President, through unethical, partisan defamation, litigation, and related tactics." *Id.* ¶ 63.

- The Enterprise operates "with the intent of destroying the Presidency of Donald Trump." *Id.* ¶ 66.

- The Enterprise threatens to physically harm those who oppose it. *Id.* ¶ 69.

- Defendants "tainted" the investigation of Secretary Clinton's e-mail use and "destroyed thousands" of documents, "including proof of criminal misconduct." *Id.* ¶ 75.

- Defendants bribed unspecified state and federal officials in unspecified jurisdictions. *Id.* ¶ 79.

- Senior FBI officials "corrupted" the "due and proper administration of the law" in concluding that the facts concerning Secretary Clinton's e-mail use did not warrant prosecution. *Id.* ¶ 80.

- Defendant Strzok "conspire[ed] with" Andrew McCabe, James Comey, and Loretta Lynch "to obstruct justice." *Id.* ¶ 82.

- The FBI, Department of Justice, and Obama Administration "used the 'salacious' and unsubstantiated 'Trump Dossier' to surreptitiously surveil . . . Trump associates and Clinton enemies." *Id.* ¶ 83.

Plaintiff's Amended Complaint has demoted many of the fifteen defendants previously named in his Corrected Complaint to "Enterprise member[s]," and identifies a cast of several other "Enterprise collaborators" and "Enterprise surrogates," including former CIA Director John Brennan, former FBI Director James Comey, undersigned counsel David E. Kendall, former Attorney General Loretta Lynch, former acting FBI Director Andrew McCabe, and Bruce Ohr.[2]

---

[2] Plaintiff's Corrected Complaint identified dozens more, including Huma Abedin, James Baker, Sidney Blumenthal, former Director of National Intelligence James Clapper, Paul Combetta, Marc Elias, Frank Giustra, Stefan Halper, former Attorney General Eric Holder, Daniel Jones, Peter Kadzik, former Virginia Governor Terence McAuliffe, Jill McCabe, Cheryl Mills, Special Counsel Robert Mueller, Nellie Ohr, Lisa Page, Brian Pagliano, former U.S. Ambassador to the United Nations Samantha Power, former National Security Advisor Susan Rice, Deputy Attorney General Rod Rosenstein, Michael Sussman, Heather Samuelson, former New York Attorney General Eric Schneiderman, Cody Shearer, Glenn Simpson, Christopher Steele, Jake Sullivan, Andrew

On the basis of these unsubstantiated assertions, Plaintiff alleges two RICO claims:  first, that Defendants "conducted" or "participated" in the affairs of a RICO enterprise "through a pattern of racketeering activity," in violation of 18 U.S.C. § 1962(c) ("Count One") and second, that Defendants conspired to violate § 1962(c), in violation of 18 U.S.C. § 1962(d) ("Second Cause of Action").  In furtherance of these claims, Plaintiff alleges the existence of RICO enterprise comprised of Clinton, Podesta, Brock, Strzok, and "others, including but not limited to" several nonprofits, private citizens, public servants, and "[n]umerous defendants [who] remain unknown named, and . . . will be identified and proven to be participants in the vastly expanding criminal Enterprise at issue in this lawsuit."  Am. Compl. ¶¶ 14, 87.  According to Plaintiff, this enterprise existed "to prepare a false and defamatory 'dossier' on Plaintiff . . . which [it] could disseminate throughout the media and therefore harm Plaintiffs," as well as to "destroy" Secretary Clinton's personal e-mails, which allegedly "included documents and e-mails evidencing" the illegal tactics used to persecute Plaintiff.  *Id.* ¶ 89.

Plaintiff vaguely alleges that the enterprise existed from "before year 2016 through the present time," or "[f]rom at least a few years before year 2016, and continuing through at least year 2016, and likely through the present time."  *Id.* ¶¶ 92, 101.  During this period, Plaintiff alleges that the enterprise engaged in three types of racketeering activity:  bribery indictable under 18 U.S.C. § 201, tampering with witnesses or "obstruction of justice" indictable under 18 U.S.C. § 1512, and Travel Act violations indictable under 18 U.S.C. § 1952.  Am. Compl. ¶ 92.

---

Weissman, Jonathan Winer, and former Deputy Attorney General Sally Yates, as well as Fusion GPS, and Hillary for America.  Plaintiff also previously alleged that the list of Enterprise surrogates and collaborators "may include" President Obama, Corr. Compl. at 29, and that another Enterprise surrogate has a "close and continuing relationship" with "corrupt judge Rudolph Contreras," *id.* at 34, ¶ 287.  It also previously identified Defendant Peter Strzok as a "Enterprise surrogate."  *See, e.g.*, Corr. Compl. at 42.

Plaintiff separately accuses Defendants of defaming him by questioning the accuracy of his book, *Crisis of Character* ("Third Cause of Action").  His defamation claim is premised on alleged statements made entirely by third parties.  There are no allegations that Secretary Clinton made any defamatory statements, only the factually unsupported assertion that she conspired with or directed other Defendants or third parties to defame Plaintiff.  *See, e.g.*, *id.* ¶¶ 90, 121.  Indeed, Secretary Clinton is absent from a majority of the factual allegations in the Amended Complaint, which primarily concern the facts and circumstances of the alleged third-party defamation.  *See, e.g.*, *id.* ¶¶ 30–70 (containing no substantive allegations against Secretary Clinton).

Plaintiff's allegations of injury are both conclusory and self-contradictory.  While he alleges that he was "deeply damaged," and sales of his book were "harmed in an amount greater than fifty million dollars," *id.* ¶ 58, he states in the very same paragraph that his book was a "*New York Times* (Number 1) best-selling book," *id.*; *see also id.* ¶¶ 5, 121 (same).  He also alleges he incurred unspecified "legal fees and expenses as a result of damage to his reputation caused by" Defendants' alleged destruction of documents.  *Id.* ¶ 17.  Finally, he alleges in a few instances and without any further detail that Defendants David Brock and/or John Podesta—but not Secretary Clinton—injured him by causing media organizations to "blacklist" him.  *Id.* ¶¶ 53, 58, 121.

Plaintiff claims he was damaged by "not less than $ 100 million" by Defendants' RICO violations and seeks "no less than" $1 billion in compensatory and punitive damages stemming from his RICO claims, *see id.* ¶¶ 105–06, 110, $151.5 million in compensatory and punitive damages related to his defamation claim, *see id.* ¶¶ 123–24, as well as attorney's fees and costs.  The Amended Complaint does not identify the factual basis for these claimed amounts.

## **LEGAL STANDARD**

This motion is premised on two independent bases for dismissal. First, the Amended Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. In the alternative, it should be dismissed under Rule 12(b)(6) for failure to state a claim.

In adjudicating a motion to dismiss under Rule 12(b)(1), the guiding principle is that "[f]ederal courts are courts of limited jurisdiction, possessing only the power conferred by the Constitution and by statutes enacted by Congress." *G. Keys PC/Logis NP v. Pope*, 630 F. Supp. 2d 13, 15 (D.D.C. 2009) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)). Thus, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (citation omitted). When reviewing a motion to dismiss under Rule 12(b)(1), a court must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged, but "need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor . . . plaintiff's legal conclusions." *Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)), *aff'd per curiam*, No. 12-5328, 2013 WL 1164502 (D.C. Cir. Feb. 20, 2013).

Dismissal is warranted under Rule 12(b)(6) where the complaint fails to contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. While the court must take well-pleaded factual allegations as true, it is "not bound to accept as true

7

a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Nor need it accept "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *W. Assocs. Ltd. P'ship ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 634 (D.C. Cir. 2001) (quoting *Kowal v. MCI Commc'ns. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alternation in original) (quoting *Twombly*, 550 U.S. at 557).

As several courts have noted, this scrutiny is especially important in the context of RICO claims, where "particular care is required" to balance the inquiry of Rule 12(b)(6) "with the necessity of preventing abusive or vexatious treatment of defendants." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991). Thus, courts "should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (quoting *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990)), *aff'd*, 113 F.3d 1229 (2d Cir. 1997); *see also Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 449 (S.D.N.Y. 2007) (noting warnings that putative civil RICO claims may be "nothing more than sheep masquerading in wolves' clothing, or ordinary fraud cases clothed in the Emperor's trendy garb" (internal quotation marks and footnote omitted)).

## **ARGUMENT**

## I. THE AMENDED COMPLAINT MUST BE DISMISSED UNDER RULE 12(B)(1) FOR LACK OF JURISDICTION

The Amended Complaint must be dismissed under Rule 12(b)(1) because it wholly fails to meet the jurisdictional prerequisite of Article III standing. Specifically, Plaintiff fails to allege

facts sufficient to establish that his claims present a justiciable case or controversy or that he has suffered any cognizable injury. Because the requirements of Article III are not satisfied, this Court lacks subject-matter jurisdiction over Plaintiff's claims. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975) (holding that standing is a "threshold question" in establishing the court's jurisdiction).

**A.     The Amended Complaint Fails To Allege a Justiciable Case or Controversy as Required by Article III.**

Article III of the Constitution confines the judicial power of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. Federal courts "have always taken this to mean cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). This limitation reflects the "traditional role" of the courts, which is "to redress or prevent actual or imminently threatened injury to persons caused by private or official violations of law," and "is founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Summers v. Earth Is. Inst.*, 555 U.S. 488, 492–93 (2009) (quoting *Warth*, 422 U.S. at 498).

To that end, a plaintiff is required to allege a personal stake in the controversy he or she brings before the court. "[A] plaintiff raising only a generally available grievance about government . . . does not state an Article III case or controversy." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573–74 (1992). Moreover, when a plaintiff's asserted harm "is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Warth*, 422 U.S. at 499. "Without such limitations . . . the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." *Id.* at 500. And where the standing requirements of Article III are not met, dismissal is required.

9

*See, e.g.*, *Prosser v. Sessions*, 315 F. Supp. 3d 547, 555 (D.D.C. May 29, 2018) (dismissing RICO complaint for lack of Article III standing); *see also In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 246 (3d Cir. 2012) (same).

Here, several of Plaintiff's allegations consist of generalized grievances against the Department of Justice, the FBI, the FISA Court, and other governmental entities. These grievances are, fundamentally, expressions of Plaintiff's disagreement with governmental decisions, including the FBI's and Department of Justice's decision to seek FISA authorization to monitor members of the Trump Campaign, Am. Compl. ¶¶ 29, 62, 83, and the FBI's and Department of Justice's determination that the facts concerning Secretary Clinton's e-mail use did not warrant prosecution, *see, e.g.*, *id.* ¶¶ 77–78, 80. Plaintiff supplements these claims with unsupported and abstract allegations that Defendants conspired to harm the United States and its citizens generally by colluding, for example, to commit espionage, misappropriate classified information, or to otherwise engage in allegedly illegal conduct. Finally, Plaintiff attempts to support his RICO claims with the unadorned and unexplained suggestion that Defendants destroyed documents showing that they committed other offenses against him, and that he was somehow injured by the destruction of that evidence. *See, e.g.*, *id.* ¶¶ 15, 21.

None of these accusations states a justiciable case or controversy. It is well-established that such generalized claims that defendants have acted against the interests of the United States, or are alleged to have injured the rights of citizens generally or those other than the plaintiff, are insufficient to confer standing under Article III. *See, e.g.*, *Belaski v. United States*, No. 17-1035 (ABJ), 2017 WL 2694099, at *2 (D.D.C. June 21, 2017) ("[W]hile plaintiff's complaint may be impassioned, and she may have some legitimate grounds to differ with actions taken or not taken by the executive and legislative branches, what she has filed is, at its core, a generalized grievance

against the government, and that is not a justiciable federal case."). The generalized grievances levied against Defendants and others cannot confer standing, which "is not measured by the intensity of the litigant's interest or the fervor of his advocacy." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 486 (1982). Nor can Plaintiff create a particularized injury merely by tacking onto his generalized grievance an unexplained and threadbare allegation that he was somehow personally injured by the alleged destruction of Secretary Clinton's private e-mails. *See, e.g.*, *Warth*, 422 U.S. at 502 (finding insufficient allegations "in conclusory terms" that plaintiffs were personally injured by defendants' actions).

At bottom, Plaintiffs' RICO claims seek to transmute Plaintiff's political disagreements with the Defendants, the Obama Administration, the FBI, or other government agencies into a cognizable claim of racketeering, and to assert that Plaintiff can proceed individually on alleged political crimes against the United States as a nation. Long-standing Article III precedent rejects this gambit.

### B. The Amended Complaint Fails to Allege a Concrete and Actual Injury In Fact as Required by Article III.

"[A] showing of standing is an 'essential and unchanging' predicate to any exercise of a court's jurisdiction." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (quoting *Lujan*, 504 U.S. at 560). "The 'irreducible constitutional minimum' for standing is (i) the party must have suffered a concrete and particularized injury in fact, (ii) that was caused by or is fairly traceable to the actions of the defendant, and (iii) is capable of resolution and likely to be redressed by judicial decision." *Sierra Club v. EPA*, 755 F.3d 968, 973 (D.C. Cir. 2014) (citation omitted). In other words, to establish standing as a constitutional matter a plaintiff must "demonstrate the existence of a 'personal injury fairly traceable to the opposing party's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Delta Air Lines, Inc. v. Exp.-Imp. Bank of*

11

*U.S.*, 85 F. Supp. 3d 250, 260 (D.D.C. 2015) (brackets omitted) (quoting *Allen v. Wright*, 468 U.S.

737, 751 (1984)).  And to allege an injury in fact,

> a plaintiff must demonstrate that he has "suffered an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  To be concrete, the injury must actually exist, meaning that it is real, and not abstract. . . .  And to be "particularized," the injury must affect a plaintiff "in a personal and individual way."

*Freedom Watch, Inc. v. Sessions*, 281 F. Supp. 3d 159, 162 (D.D.C. 2017) (quoting *Spokeo, Inc.*

*v. Robins*, 136 S. Ct. 1540, 1548 (2016)), *aff'd per curiam*, 729 F. App'x 7 (D.C. Cir. 2018).

At the motion to dismiss stage, the court assesses whether the plaintiff has met his burden

the same way it evaluates other elements of the complaint:  by accepting all "well-pleaded" factual

allegations as true.  Within that framework, "[t]hreadbare recitals of the elements of [standing],

supported by mere conclusory statements, do not suffice," and courts "do not assume the truth of

legal conclusions, nor do we 'accept inferences that are unsupported by the facts set out in the

complaint.'"  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (alterations in original and

citation omitted) (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir.

2007)).  Like other aspects of a complaint, the plaintiff's pleading of injury must therefore provide

"sufficient factual matter, accepted as true, to 'state a claim [of standing] that is plausible on its

face.'"  *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).

Plaintiff appears to pursue three theories of injury.  But none states an injury sufficient to

confer standing.  In particular, Plaintiff has failed to plead facts showing "that he personally has

suffered some actual or threatened injury as a result of the putatively illegal conduct of" Secretary

Clinton, *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99 (1979), or that any injury can be

"fairly . . . traced" to her actions, *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41 (1976).

First, Plaintiff claims primarily that he was "deeply damaged" by the allegedly defamatory statements of third parties, and that sales of his book were "harmed in an amount greater than fifty million dollars."  Am. Compl. ¶ 58; *see also id.* ¶¶ 6, 7, 17, 19, 103, 115 (alleging injury to business and reputation as a result of defamation).  But these allegations are completely unsubstantiated by any supporting facts.  Indeed, they are contradicted by Plaintiff's own repeated boasts that his book was a "*New York Times* (Number 1) best-selling book," *id.* ¶ 58; *see also* ¶¶ 5, 121 (same).  Plaintiff's unsupported allegations are nothing more than "[t]hreadbare recitals" of injury—the kind of conclusory statements and legal conclusions that are not entitled to be assumed true for the purposes of establishing Article III jurisdiction.  *Arpaio*, 797 F.3d at 19 (alteration in original) (internal quotation marks omitted).

Moreover, the allegations of the Complaint do not include facts demonstrating any connection between Secretary Clinton  and the claimed defamation, which is based solely on statements by third parties.   Instead, Plaintiff alleges without any factual support that "Defendants," including Secretary Clinton "paid for," "instructed," or "ordered" third parties to defame Plaintiff.  Am Compl. ¶¶ 41, 76, 90, 121.  Absent any facts supporting any connection between Secretary Clinton and the alleged defamation, Plaintiff has failed to plead an injury "caused by or . . . fairly traceable to the actions of the defendant."  *Sierra Club*, 755 F.3d at 973.

Second, presumably in an attempt to connect his alleged injury to his RICO causes of action, Plaintiff alleges that he was in some way injured by "obstruction of justice and bribery," which Secretary Clinton allegedly "directed . . . in order to further the goals of the Enterprise to cause injury to the business and property of Office [sic] Byrne."  Am. Compl. ¶ 8.  Once again, this is little more than a conclusory allegation of injury, and is not entitled to be assumed true.  And, once again, it is entirely unexplained how the alleged conduct connects directly to any

13

concrete and actual injury suffered by Plaintiff.  "In the absence of any allegation of any form of injury that might logically flow from the conduct complained of, purely conclusory allegations of damages fail to rise to the level of plausibility." *Lail v. U.S. Gov't*, 771 F. Supp. 2d 49, 60 (D.D.C. 2011) (dismissing RICO claim where allegations of injury simply tracked statutory language).

Plaintiff claims he was injured by the alleged bribery when "Hillary Clinton and John Podesta directed the payments of bribes to independent contractors located in various states, and federal public officials, to create sources of false information about Officer Byrne, the particular States herein to be determined during discovery." *See, e.g.*, Am. Compl. ¶ 79.  Plaintiff, however, fails to identify any particular individual bribed, in any particular jurisdiction, for any particular false information.  Nor does he explain how any such information resulted in actual injury— besides, of course, his conclusory allegation that he was harmed by the alleged defamation itself. Clearly, it is not enough for Plaintiff to claim that discovery will lead to information substantiating his allegation of harm:  "It goes without saying that the statement that 'further discovery is necessary . . . to further detail these factual allegations,' is insufficient to state a plausible claim on the face of the Complaint." *Cheeks v. Fort Myer Constr. Corp.*, 216 F. Supp. 3d 146, 158–59 (D.D.C. 2016), *aff'd per curiam*, 728 F. App'x 12 (D.C. Cir. 2018).

Plaintiff's claim that he was injured by the alleged destruction of Secretary Clinton's personal e-mails is even more frivolous, and fails to state any injury that is more than purely "conjectural or hypothetical." *Freedom Watch, Inc.*, 281 F. Supp. 3d at 162.  Plaintiff's injury is founded on the theory that documents allegedly destroyed by Secretary Clinton and John Podesta "would have shown" that they targeted Plaintiff. *See, e.g.*, Am Compl. ¶¶ 15, 21.  That inference is wholly "unsupported by facts set out in the complaint," and is not entitled to be assumed true. *Arpaio*, 797 F.3d at 19.  Moreover, it does not establish that Plaintiff was *actually injured* by the

destruction of any such documents.  In a similar case brought by another political controversialist, the Eleventh Circuit affirmed dismissal for lack of Article III standing where the plaintiff alleged that Secretary Clinton used her personal e-mail account to "conceal government records."  Order Granting Mot. to Dismiss, *Klayman v. Clinton, et al.*, No. 9:15–cv–80388–DMM, slip op. at 8 (S.D. Fla. filed Aug. 11, 2015), *aff'd*, 668 Fed. App'x 351 (11th Cir. 2016).  Observing that "it is unclear whether the records allegedly withheld from Plaintiff exist at all," that the "contents of any alleged records" is equally unknown, and that "it is unclear" how depriving the plaintiff of the alleged documents translated into any actual injury, the district court noted that "'[p]urely speculative, nonconcrete injuries' are insufficient to establish an injury in fact for the purposes of Article III standing."  *Id.* at 9 (quoting *Lujan*, 504 U.S. 556).[3]  Moreover, Plaintiff has failed to explain how he would be *entitled* to any of Secretary Clinton's private e-mails, and therefore, by extension, has failed to explain how he could be injured by their absence.  *See id.* at 6–9.  Finally, Plaintiff does not explain how the alleged destruction of Secretary Clinton' personal e-mails would be redressable by this Court—an independent barrier to establishing a cognizable injury on this basis.[4]

---

[3] Plaintiff asserts without explanation that he "incurred legal fees and expenses as a result of the damage to his reputation caused by the illegal predicate activity of obstruction of justice (destroying inculpatory documents), and the Defendants [sic] use of interstate facilities to promote and facilitate their bribery."  Am. Compl. ¶ 17.  This does not transmute his amorphous claims of general injury into concrete and actual harm.  Plaintiff fails to explain which legal fees he incurred as a result of Defendants' alleged obstruction of justice and Travel Act violations.

[4] This is not the first time a partisan litigant has invoked Secretary Clinton's e-mails in an attempt to establish a cognizable injury, tie unrelated events to Secretary Clinton, or simply suggest the appearance of impropriety.  Courts have roundly rejected these prior attempts.  *See Klayman*, 668 Fed. App'x at 352 (dismissing for lack of standing); *Smith v. Clinton*, 253 F. Supp. 3d 222, 229 nn.1 & 2 (D.D.C. 2017) (rejecting a plaintiff's "conclusory assertion that there was a causal connection" between Secretary Clinton's e-mail use and the attack in Benghazi, Libya, but dismissing on other grounds), *aff'd*, 886 F.3d 122 (D.C. Cir. 2018).

Finally, Plaintiff alleges, in a few instances and without any further detail, that Defendants David Brock and/or John Podesta, but not Secretary Clinton, injured him by causing media organizations to "blacklist" him.  Am. Compl. ¶¶ 53, 58, 121.  The allegations are unsupported and, according to Plaintiff's own pleadings, not attributable to any of Secretary Clinton's actions.

Because Plaintiff has failed to allege facts that, if proven, would establish a concrete injury in fact traceable to Secretary Clinton's alleged actions and redressable by this Court, the claims must be dismissed for lack of jurisdiction.

## II. THE AMENDED COMPLAINT MUST BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM

In addition to a lack of subject-matter jurisdiction, Plaintiff's claims suffer from a variety of substantive defects.  Even if there were jurisdiction to entertain the claims on the merits—and there is not—the Amended Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### A. The Amended Complaint Fails to Plead Facts Sufficient to Establish the Elements of Plaintiff's RICO Claims.

Standing to assert claims under RICO is limited to those who have suffered business or property losses directly and proximately caused by the underlying predicate acts.  *See* 18 U.S.C. § 1964(c); *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258 (1992).  To state a claim under RICO, a plaintiff must at least allege that a defendant has (1) conducted; (2) an enterprise; (3) through a pattern (*i.e.*, two or more acts that are sufficiently related); (4) of racketeering activity.  *See W. Assocs. Ltd. P'ship*, 235 F.3d at 633 (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)). A RICO enterprise includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  "Racketeering activity" includes offenses that are either "chargeable" or "indictable" under state or federal law and enumerated in 18 U.S.C. § 1961(1).

Because Plaintiff has failed to allege facts sufficient to establish these necessary elements, his RICO claims must be dismissed.

### 1. The Amended Complaint Fails to Plead the Necessary Elements of "RICO Standing."

In addition to establishing Article III standing, a plaintiff seeking relief under RICO must establish "RICO standing."[5]  This concept is "narrower than Article III standing," *Fiala v. B&B Enters.*, 738 F.3d 847, 850 (7th Cir. 2013), and focuses on RICO's requirement that a plaintiff be "injured in his business or property by reason of a violation of [the statute]," 18 U.S.C. § 1964(c). Thus, a "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the [RICO] violation." *Sedima*, 473 U.S. at 496; *see also Hourani v. Mirtchev*, 796 F.3d 1, 11 (D.C. Cir. 2015).  This requires a plaintiff to allege qualifying predicate acts—the "racketeering activity" prohibited by the statute—and to show that the defendant's racketeering activity "not only was a but for cause of [Plaintiff's] injury, but was the proximate cause as well." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (internal quotation marks omitted) (quoting *Holmes*, 503 U.S. at 268).  A viable RICO claim "thus requires 'some direct relation between the injury asserted and the injurious conduct alleged'"; "[a] link that is 'too remote,' 'purely contingent,' or 'indirect' is insufficient." *Id.* (brackets omitted) (quoting *Holmes*, 503 U.S. at 274, 268, 271).

---

[5] Notwithstanding the use of the word "standing," the Supreme Court has clarified that the key inquiry is whether the plaintiff has satisfied the requirements of the statutory cause of action.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014).  Courts therefore review the question of RICO standing under Rule 12(b)(6), rather than Rule 12(b)(1). *See, e.g.*, *Adell v. Macon Cty. Greyhound Park, Inc.*, 785 F. Supp. 2d 1226, 1237 (M.D. Ala. 2011) (collecting cases).

a.    **The Amended Complaint Fails to Plead Injury to "Business or Property" That Is Connected to a Predicate Act.**

As explained above, Plaintiff has failed to plausibly plead any injuries connected with the alleged RICO predicate acts, providing instead a "formulaic recitation" that the purported predicate acts—bribery, witness tampering, and Travel Act violations—somehow caused injury to his business or property. *See* Am. Compl. ¶¶ 5, 8, 13, 15, 21, 79.  For that reason alone, Plaintiff has failed to plead facts sufficient to establish a cognizable injury to "business or property" caused by alleged RICO predicate acts. *See Lail*, 771 F. Supp. 2d at 60 (dismissing claims of injury that were "purely conclusory, in some cases merely parroting statutory language" where plaintiff simply asserted that defendants caused "injury to business or property").  Moreover, as explained below, any harm from the alleged predicate acts is too attenuated and remote to support RICO liability.

Setting aside for the moment Defendants' alleged racketeering, the majority of Plaintiff's factual allegations assert that the alleged defamation by third parties complained of in Count Three damaged his reputation and slowed sales of his bestselling book.  Am. Compl. ¶¶ 6, 7, 17, 19, 58, 103, 115.  But these abstract allegations of injury from defamation do not change the analysis, as defamation is not a predicate act under RICO, and therefore any alleged harm associated with that claim does not constitute an injury for RICO purposes. *See Browning v. Clinton*, 292 F.3d 235, 249 (D.C. Cir. 2002) (noting that defamation is not a RICO predicate act); *see also Sedima*, 473 U.S. at 495 (RICO "consists of no more and no less than the commission of a predicate act" listed in § 1961(1)); *Beck v. Prupis*, 529 U.S. 494, 497 n.2 (2000) (statutory list of predicate acts is "exhaustive" and acts that do not appear on list cannot form the basis for RICO liability).  Thus, any injury purportedly caused by the alleged defamation cannot, by definition, have been caused by conduct constituting a RICO violation. *See Taitz v. Obama*, 707 F. Supp. 2d 1, 6 (D.D.C. 2010) (crimes that are not predicate acts cannot support RICO liability).

18

> **b.**      **The Amended Complaint Fails to Plead Proximate Cause Required by RICO.**

Plaintiff's failure to allege any injury from a qualifying RICO predicate act necessarily means that he has also failed to allege that his injuries were caused "by reason of a violation" of the statute. 18 U.S.C. § 1964(c). At most, Plaintiff has claimed that he was harmed by the alleged third-party defamation. But where, as here, "[t]he cause of [a plaintiff's] asserted harms . . . is a set of actions . . . entirely distinct from the alleged RICO violation," RICO's proximate cause requirement is not met. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006). Plaintiff's conclusory assertion that his "injuries are proximately related" to Defendants' conduct, Am. Compl. ¶ 3, is not enough, nor are his unsupported allegations that Secretary Clinton somehow directed or ordered the defamation. *See RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1050 (D.C. Cir. 2012) (courts will not accept "a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).

Plaintiff's Amended Complaint attempts to cobble together RICO injury by suggesting that any injury is ultimately attributable to Defendant's racketeering violations: that is, that the defamation was caused by Defendant's bribery of unspecified individuals, or that he was somehow harmed in his "business and property" by the alleged destruction of Secretary Clinton's personal e-mails. For the reasons explained above, these allegations fail to state an injury in fact, much less an injury cognizable under RICO. But even if Plaintiff had alleged a cognizable injury, he would still fail to state a claim because any connection between his injuries and the alleged RICO violations would be too remote to satisfy the statute's proximate cause requirement. In this context, "proximate cause . . . requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Hemi Grp.*, 559 U.S. at 9 (quoting *Holmes*, 503 U.S. at 268). This principle, also referred to by the Supreme Court as a "directness requirement[]," *Anza*, 547 U.S. at

458, prevents plaintiffs from stating RICO claims when the defendant's actions bear only an "attenuated connection" with the claimed injury, *id.* at 459.

In addition, Plaintiff's Amended Complaint confounds the question of direct injury by introducing "The GJB Project," "the legal entity by which [Plaintiff] conducts his business affairs." Am. Compl. ¶ 5.  But Plaintiff does not specify whether he was harmed in his "business or property," or whether any harm was borne by the legal entity itself.  This can be dispositive of whether Plaintiff was sufficiently injured to support his RICO claim.  *See W. Assocs. Ltd. P'ship*, 235 F.3d at 635 (noting that "[t]o the extent that [the Plaintiff partnership's] partners were injured, they were injured indirectly.").

### 2.    The Amended Complaint Fails to Plead a RICO Enterprise.

To state a claim under RICO, Plaintiff must allege the existence of an enterprise, defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  A RICO enterprise must have "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Boyle v. United States*, 556 U.S. 938, 946 (2009).  Although "an association-in-fact enterprise is simply a continuing unit that functions with a common purpose," the existence of an enterprise is "an element distinct from the pattern of racketeering activity and 'proof of one does not necessarily establish the other.'"  *Id.* at 947–48 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).  Here, Plaintiff has alleges that Defendants Clinton, Podesta, Brock, and Strzok formed a criminal enterprise "with others," Am. Compl. ¶ 92, including fifteen different "Brock entities," *id.* ¶ 6, George Soros, *id.* ¶ 9, Jan Gilhooly, *id.* ¶ 11, Jonathan Wackrow, *id.* ¶ 12, the Clinton Global Enterprise and Clinton Giustra Enterprise Partnership, *id.* ¶ 19, John Brennan, *id.* ¶ 24, James Comey, *ibid.*, Andrew McCabe, *id.* ¶ 82, and "[n]umerous" "unknown named" defendants who

20

"will be identified and proven to be participants in the vastly expanding criminal Enterprise at issue in this lawsuit," *id.* ¶ 14.

First, Plaintiff has failed to clearly define the membership of the alleged RICO enterprise, making it impossible to understand the longevity, scope, and goals of the alleged RICO activities. *See Boyle*, 556 U.S. at 946 ("[A]n 'enterprise' must have some longevity, since the offense proscribed by that provision demands proof that the enterprise had 'affairs' of sufficient duration to permit an associate to 'participate' in those affairs through 'a pattern of racketeering activity.'"); *see also Turkette*, 452 U.S. at 583 (the enterprise element requires that "various associates function as a continuing unit").   Even with the benefit of Defendants' previous motions to dismiss, Plaintiff's Amended Complaint continues to allege only a vague and nebulous conspiracy made up of those with whom he personally disagrees.   Although Plaintiff alleges that the Enterprise is made up of a wide variety of entities associated in fact, he fails support the participation of the alleged enterprise members with any allegations of fact.

Specifically with respect to the four Defendants, Plaintiff fails to support his "threadbare" claim that they have formed an association in fact.   Indeed, his formal description of the alleged enterprise, *see* Am. Compl. ¶¶ 87–89, is nothing more than a collection of "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," and "'naked assertion[s]' devoid of 'further factual enhancement.'"   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).   At bottom, Plaintiff essentially suggests that Secretary Clinton and John Podesta allegedly destroyed documents, that David Brock allegedly used media and nonprofit organizations to coordinate in defaming him for the benefit of the Clinton Campaign, and that Peter Strzok allegedly interfered with FBI operations to harm Donald Trump.   Even assuming such allegations are true—which they are not—the fact that Plaintiff has an axe to grind with each

Defendant does not make them an associated RICO enterprise. *See Stankevich v. Kaplan*, 156 F. Supp. 3d 86, 94 (D.D.C. 2016) (dismissing where plaintiff failed to allege facts suggesting "an associated enterprise," and instead "simply list[ed] grievances he has with each party and then conclusively and generally invoke[d] the language of RICO"), *aff'd per curiam*, 707 F. App'x 717 (D.C. Cir. 2017), *petition for cert. filed*, 86 U.S.L.W. 3608 (U.S. Apr. 20, 2018) (No. 17-1546).

At most, Plaintiff's claims establish parallel action on the part of Defendants. But claims that "several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates . . . [is] not . . . enough to show that the individuals were members of an enterprise." *Boyle*, 556 U.S. at 947 n.4, and Plaintiff cannot skate by without pleading "factual content that allows the court to draw the reasonable inference" of a common purpose, organization, and continuity. *Iqbal*, 556 U.S. at 678. Allegations of independent action or even intentional parallel conduct between actors does not suffice to state a claim. *See Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1069 (11th Cir. 2017) (finding no RICO enterprise and noting that "[a]lthough parallel conduct and interdependence are consistent with collusion, they are 'just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market'" (quoting *Twombly*, 550 U.S. at 554)); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 374 (3d Cir. 2010) ("Because plaintiffs' factual allegations do not plausibly imply anything more than parallel conduct by the [defendants], they cannot support the inference that the [defendants] 'associated together for a common purpose of engaging in a course of conduct.'" (quoting *Boyle*, 556 U.S. at 946)).[6]

---

[6] Plaintiff suggests Exhibit A to his Amended Complaint demonstrates the existence of a conspiracy. Am. Compl. ¶¶ 6, 64, 65. This is facially false. Secretary Clinton is mentioned only once in the document, and that mention actually *undercuts* Plaintiff's assertion, stating that the various entities involved "were started long before Hillary Clinton ran for president." Am. Compl. Exh. A. at 3. Plaintiff does not allege that Secretary Clinton created the document, had any

Here, the Amended Complaint relies on the inference that anyone who supported Secretary Clinton's Presidential candidacy, sought to hold Donald Trump accountable for his activities during the Presidential campaign or in the White House, concluded that the facts concerning Secretary Clinton's e-mail use did not warrant prosecution, or challenged the narrative in Plaintiff's book must have done so due to membership in a vast conspiracy.  To fill any gaps, Plaintiff supplies conclusory assertions that Secretary Clinton conspired with or directed the actions of other Defendants in a wide-ranging conspiracy, when the federal pleading standard requires factual allegations.  *See, e.g.*, Am. Compl. ¶¶ 41, 76, 90, 121.  Absent facts supporting coordination or a relationship between the members of the purported enterprise, the mere fact that some members of the alleged enterprise engaged in parallel conduct to support Hillary Clinton's candidacy or to challenge Donald Trump's campaign or presidency does not create a RICO enterprise.

### 3.   The Amended Complaint Fails to Adequately Plead a Pattern of Racketeering Activity.

To state a claim under RICO, Plaintiff must allege that Defendants engaged in a pattern of racketeering activity made up of two or more predicate acts.  *See W. Assocs. Ltd. P'ship*, 235 F.3d at 633.  This pattern requirement contains two components.  First, a plaintiff must adequately plead the existence or two or more predicate acts enumerated in the statute.  Second, a plaintiff must establish that the predicate acts alleged form an actual "pattern" of activity that is cognizable under the RICO statute.  Here, Plaintiff's Amended Complaint fails on both counts.

---

knowledge of its contents, or was involved in any of the activities described therein.  Indeed, beyond Plaintiff's bare assertion that the document was authored by Brock and somehow proves certain third parties' "illicit role in [an] attempt to damage the Trump presidency," Am. Compl. ¶¶ 6, 64, the nature, authorship, distribution, and relevance of the document is entirely unclear.

### a.   The Amended Complaint Fails to Plead the Necessary Predicate Acts.

The proper pleading of RICO predicate acts is an "essential element of a civil RICO claim." *See Cheeks*, 216 F. Supp. 3d at 159, 171 (dismissing complaint for failure to state a claim when plaintiff failed to properly plead predicate acts); *Johnson v. Comput. Tech. Servs., Inc.*, 670 F. Supp. 1036, 1039–40 (D.D.C. 1987) (dismissing a RICO claim where the allegations of predicate acts were "unsupported and insufficient").  Here, Plaintiff alleges that the enterprise engaged in three types of racketeering activity:  bribery indictable under 18 U.S.C. § 201, tampering with witnesses indictable under 18 U.S.C. § 1512, and Travel Act violations indictable under 18 U.S.C. § 1952.  Am. Compl. ¶ 92; *see also id.* ¶ 89.

As an initial matter, Plaintiff in many instances "neglect[s] to distinguish between the defendants when describing the factual underpinnings" of the claims, *Bates v. Nw. Human Servs., Inc.*, 466 F. Supp. 2d 69, 85 (D.D.C. 2006).  Instead, he generally alleges that Defendants or other third parties worked in concert to commit various predicates.  *See, e.g.*, Am. Compl. ¶ 15 (alleging that "Enterprise members, including Defendants Hillary Clinton and John Podesta" destroyed documents and bribed individuals); *id.* ¶ 20 (alleging that Clinton, Brock, and Podesta "paid bribes"); *id.* ¶ 21 (similar); *id.* ¶ 29 (alleging "the Enterprise" destroyed documents); *id.* ¶ 75 (alleging that "Hillary Clinton and certain others including Defendants John Podesta" destroyed documents); *id.* ¶ 79 (alleging that "Hillary Clinton and John Podesta directed the payment of bribes").  Because Plaintiff "cannot satisfy the minimum pleading requirements under Rule 8 of the Federal Rules of Civil Procedure by 'lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct,'" Plaintiff has failed to adequately plead the necessary predicate acts, and his RICO claims must be dismissed.  *Toumazou v. Turkish Rep. of N. Cyprus*, 71 F. Supp. 3d 7, 21–22 (D.D.C. 2014) (citation omitted).

24

Moreover, Plaintiff has failed to properly plead each of the alleged predicates.  Plaintiff's allegations of bribery fail because he has not alleged any conduct that violates 18 U.S.C. § 201.  The statute generally forbids anyone from promising, soliciting, offering, or accepting anything of value "for or because of" a public official's "official act," 18 U.S.C. § 201(c)(1), or directly or indirectly giving, offering, or promising anything of value in exchange for an individual's testimony at or absence from a hearing or proceeding, *id.* § 201(c)(2), (3).  But Plaintiff has not identified any individuals allegedly bribed, any "thing of value" actually promised or exchanged, any alleged testimony influenced, or any "official acts" promised or taken.  Indeed, the claim that Defendants allegedly bribed private individuals to "create false information," Am. Compl. ¶¶ 15, 21, does not appear to violate the statute at all, because the claim involves neither a public official nor an official act.[7]  And in the absence of state or federal public officials or official acts, Plaintiff's allegations are nothing more naked assertions of criminal conduct that fail to plead a claim.  *Iqbal*, 556 U.S. at 678.

Plaintiff's pleading of obstruction and Travel Act violations is equally insufficient.  In particular, the basis for the alleged Travel Act violations, which requires travel or the use of mail in interstate commerce with the intent to distribute the proceeds or otherwise facilitate or carry on certain unlawful activity, 18 U.S.C. § 1952, is almost entirely unexplained.  Plaintiff hinges his claim on three theories.  First, he alleges that the enterprise maintains a "safehouse in Massachusetts" to "destabilize Donald J. Trump, Sr. in his bid for the presidency, the destruction and veiling of thousands of illicit Hillary Clinton electronic mail transmissions, and further the Enterprise operational scheme."  Am. Compl. ¶ 9; *see also id.* ¶¶ 13, 93.  These vague allegations

---

[7] Most of the conduct alleged in the Amended Complaint took place in 2016.  Secretary Clinton was Secretary of State from 2009 to 2013, and was therefore not a "public official" at the time of the alleged conduct.

are wholly unsupported by any facts.  Second, he claims that the enterprise violated the Travel Act in the course of committing bribery.  *Id.* ¶ 93.  As explained above, Plaintiff's bribery allegations are themselves fatally deficient.  Finally, Plaintiff claims that the enterprise violated the Travel Act in committing unspecified "financial crime and money laundering" in violation of 18 U.S.C. § 1956.  Am Compl. ¶ 93.  But Plaintiff fails to actually plead any of the highly technical elements money laundering.  *See United States v. Adefehinti*, 510 F.3d 319, 322 (D.C. Cir. 2007) (listing elements), *as amended* (Feb. 15, 2008), *judgment entered*, 264 F. App'x 16 (D.C. Cir. 2008). These unadorned allegations are insufficient to plead the necessary predicate acts.

### b.    The Amended Complaint Fails to Plead the Necessary "Pattern."

Moreover, Plaintiff has failed to show any well-pleaded predicates forming an actual "pattern" of racketeering activity.  To satisfy RICO's pattern requirement, Plaintiff must demonstrate "relatedness"—that the predicate acts share similar purposes, results, victims, or methods of commission, or other hallmarks of similarity—and "continuity"—that is, the acts must evince either a closed period of repeated conduct or a threat of future criminal activity.  *See W. Assocs. Ltd. P'ship*, 235 F.3d at 633.  Six factors aid in determining whether a pattern has been established:  the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity.  *Id.*  At bottom, while the RICO activities must be related in some respects, they must also represent more than isolated conduct targeted only at a few occurrences or victims. Although each case must be examined its own facts, the Court of Appeals for this Circuit has noted that "[i]f a plaintiff alleges only a single scheme, a single injury, and a few victims it is 'virtually impossible for plaintiffs to state a RICO claim.'"  *Id.* at 634 (quoting *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260 (D.C. Cir. 1995)).

Here, Plaintiff has alleged only a single scheme aimed essentially at defaming him and then destroying the evidence of that wrongdoing.  Am. Compl. ¶ 88.  To the extent he tries to "make a RICO claim seem more viable by parsing one scheme into multiple," his attempt is "unavailing" because the schemes are "similar in nature and purpose" and "resulted in a single harm rather than separate injuries."  *W. Assocs. Ltd. P'ship*, 235 F.3d at 635.  Moreover, Plaintiff is the only alleged victim of the scheme, because he and The GJB Project "should be viewed as a single victim" "[f]or purposes of the RICO pattern analysis."  *Id.*  Plaintiff cannot "artificially subdivide[]" his allegations of harm to make the alleged RICO conduct "seem more expansive."  *Id.* (rejecting a partnership's attempt to sue both on behalf of the corporate entity and on behalf of the individual partners).  Combined with a small number of alleged defendants and predicate acts of a constrained character—where the Defendant's conduct "can basically be characterized" as engineering the defamation of Plaintiff "with subsequent predicate acts serving as attempts to cover up" the previous conduct, *id.* at 636—Plaintiff has failed to demonstrate the requisite pattern of racketeering activity.

Dismissal is also warranted on the independent ground that Plaintiff has failed to demonstrate the "continuity" of the alleged pattern of racketeering activity.  This alone is fatal to his claim.  Setting aside Plaintiff's "legal conclusions" that the pattern requirement is satisfied, Am. Compl. ¶¶ 101–03, which are entitled to no presumption of truth, *Iqbal*, 556 U.S. at 678, the Amended Complaint essentially alleges that all the predicate acts were committed over the course of a few months or a year.  The impetus for Defendants' alleged bribery and subsequent destruction of documents was the publication of Byrne's book in June 2016, and Byrne identifies no specific

predicate acts that took place after 2016.  *See* Am. Compl. ¶ 20–21, 30.[8]  But because "Congress was concerned in RICO with long-term criminal conduct," "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy" RICO's continuity requirement.  *H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 242 (1989).  Indeed, even periods of a few years have been held insufficient to establish a pattern of racketeering activity.  *Edmondson & Gallagher*, 48 F.3d at 1265 (affirming dismissal of complaint alleging a pattern of "three years," with three victims and fifteen predicate acts, as insufficient to establish a pattern); *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 657 F. Supp. 2d 104, 115 (D.D.C. 2009), *aff'd*, 383 F. App'x 1 (D.C. Cir. 2010) (dismissing complaint alleging "only one scheme, spanning about two years, with only four identified victims").  Particularly because any future racketeering activity is wholly speculative and unsupported by any well-pleaded factual allegations, Plaintiff has failed to establish the continuity of a pattern of racketeering activity here.

---

[8] Plaintiff's allegations concerning the length of the racketeering activities are often vague, cursory, and inconsistent, but allege at most a course of conduct spanning only a few years.  *See* Am. Compl. ¶ 15 ("[B]eginning at a time before 2016 and continuing through at least year 2016 . . . ."), *id.* ¶ 21 ("From before year 2016, and continuing through year 2016 . . . ."); *id.* ("[F]rom before year 2016 and continuing through 2016. . . ."); *id.* ¶ 92 ("From at a time before year 2016 through the present time . . . ."); *id.* ¶ 101 ("From at least a few years before year 2016, and continuing through at least year 2016, and likely through the present time . . . ."); *id.* ¶ 103 ("[A]t least a few years before year 2016 continu[ing] through at least year 2016 . . . .").  Given that Plaintiff claims that the racketeering activity was motivated by the publication of his book, it is simply implausible to suggest that the activity began any earlier than "the Spring of 2016," when advance copies of his book were circulated.  *Id.* ¶ 20.  And Plaintiff's suggestion that the racketeering activity continued any later than "summer 2016" or the November 2016 election is wholly unsupported by any allegations of specific racketeering activity past those dates.  *Cf. id.* ¶ 20 (alleging defamation continuing "throughout the summer of 2016, and thereafter," although defamation is not a RICO predicate).

### 4.     The Amended Complaint Fails to Plead Necessary Elements of a Claim Under § 1962(d).

Plaintiff has also failed to plead elements unique to his Second Cause of Action, which alleges a violation of 18 U.S.C. § 1962(d).  Section 1962(d) makes it unlawful for any person to conspire to violate subsections (a), (b), or (c).  Although not entirely clear, Plaintiff's claim appears to be that Defendants conspired to violate § 1962(c).  Am. Compl. ¶ 107.

Here, because Plaintiff has failed to state a claim under § 1962(c) as explained above, his conspiracy claims under § 1962(d) fail as well.  "To establish a violation of § 1962(d), a conspirator must have intended 'to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense.'"  *Greenpeace, Inc.*, 808 F. Supp. 2d at 274 (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)).  Further, Plaintiff has failed to plead facts adequately supporting the existence of any conspiratorial agreement.  "[U]nsupported conclusory allegations are 'not entitled to be assumed true,' and dismissal is proper when a conspiracy allegation 'd[oes] not plausibly suggest an illicit accord because it [i]s not only compatible with, but indeed [i]s more likely explained by, lawful, unchoreographed free-market behavior.'"  *RSM Prod. Corp.*, 682 F.3d at 1052 (alterations in original) (quoting *Iqbal*, 556 U.S. at 680–81); *see also Doe I v. Israel*, 400 F. Supp. 2d 86, 120 (D.D.C. 2005) (dismissing claim where complaint never contained "any minimal demonstration or objectively sufficient allegation of the subjective agreement that is necessary to form a conspiracy actionable under § 1962(d)").

\*     \*     \*

For all the foregoing reasons, Plaintiff has failed to state a RICO claim upon which relief can be granted, and his RICO claims should be dismissed under Rule 12(b)(6).

**B.      The Amended Complaint Fails to State a Claim for Defamation.**

In the Third Cause of Action, Plaintiff claims that he was "defamed by all said defendants under Arkansas Code, Title 16, Subtitle 5, Chapter 63, Subchapter 2, § 16-63-207." Am. Compl. ¶ 112.[9] The essence of Plaintiff's accusations is that Defendant David Brock, in association with a variety of third parties, allegedly defamed Plaintiff by calling into question the accuracy of his book. *See generally* Am. Compl. ¶¶ 30–70. Notably, there are no allegations that Secretary Clinton made any defamatory statements, only factually unsupported assertions that she conspired with or directed other Defendants to engineer third parties to make defamatory statements against Plaintiff. *See, e.g.*, *id.* ¶¶ 90, 121. Indeed, Secretary Clinton is absent from a majority of the relevant allegations in the Amended Complaint, which primarily concern circumstances of the alleged third-party statements concerning the Plaintiff. *See, e.g.*, *id.* ¶¶ 30–70 (containing no substantive allegations against Secretary Clinton).

Plaintiff's defamation claim is no more viable than his RICO claims. As an initial matter, the facts alleged in the Amended Complaint establish that the claim is time-barred. Moreover, Plaintiff has failed to plead several necessary elements of defamation—and, in particular, has failed to plead facts connecting Secretary Clinton to the allegedly defamatory statements.[10] For those reasons, the defamation claim should be dismissed.

---

[9] As noted in the Clinton Defendants' previous Motion to Dismiss, the cited statutory section creates no cause of action, but merely defines the rules for pleading libel and slander. Moreover, Section 16-63-207 is no longer good law: it was repealed by the Arkansas legislature in 2013 as superseded by Arkansas Rule of Civil Procedure 8, which is "substantially the same" as Federal Rule of Civil Procedure 8. *See* Ark. Acts 2013, No. 1148, § 39; Ark. R. Civ. P. 8 Editor's notes, n.1.

[10] Curiously, Plaintiff once again pleads his defamation claim "under Arkansas law," Am. Compl. ¶ 112–17, even though there are no factual allegations in the Amended Complaint that would indicate that D.C.'s substantive choice-of-law analysis—which requires application of the law of the jurisdiction that has the "most significant relationship" to the defamation claim—would point to the application of Arkansas law. *See Wu v. Stomber*, 750 F.3d 944, 949 (D.C. Cir. 2014); *see*

### 1.      Plaintiff's State-Law Claim Is Time-Barred.

In adjudicating state-law claims in exercise of diversity or supplemental jurisdiction, federal courts "must apply the choice-of law rules of the jurisdiction in which [they] sit." *Wu v. Stomber*, 750 F.3d 944, 949 (D.C. Cir. 2014).   The District of Columbia's choice-of-law rules "treat[] the statute of limitations as a procedural issue," such that "the law of the forum state applies" when a federal court hears a claim under its supplemental jurisdiction.   *Gaudreau v. Am. Promotional Events, Inc.*, 511 F. Supp. 2d 152, 157 (D.D.C. 2007) (internal quotation marks omitted); *see also Jin v. Ministry of State Sec.*, 254 F. Supp. 2d 61, 68 (D.D.C. 2003) (noting D.C's choice-of-law rules "require application of the District of Columbia statute of limitations," and

---

also *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1338 n.6 (D.C. Cir. 2015).  As before, Plaintiff makes the unexplained assertion Arkansas is "the ostensible 'home' of the Enterprise wrongdoing," Am. Compl. ¶ 114; *see also* Corr. Compl. ¶ 781 (same).  His Amended Complaint supplements that with the equally insubstantial allegation that Arkansas is "the State from where [sic] the Enterprise commenced over a decade ago."  Am. Compl. ¶ 59.  But, as before, Plaintiff continues to plead that "[a] substantial part of the events giving rise to Plaintiff's claim occurred in [DC]," that "much of the evidence of wrongdoing" is located in DC, that "the pattern of racketeering was and is directed and and committed within the confines of the District," and that "the Enterprise scheme continues" in DC to this day.  *Id.* ¶¶ 2, 4.

In any event, the elements of a defamation claim in the District of Columbia are substantially similar to the framework employed in Arkansas.  *Compare Little Rock Newspapers, Inc. v. Fitzhugh*, 954 S.W.2d 914, 918 (Ark. 1997) ("In order to establish a claim of defamation, a party must prove the following elements: (1) The defamatory nature of the statement of fact; (2) that statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) damages."), *with Doe No. 1 v. Burke*, 91 A.3d 1031, 1044 (D.C. 2014) ("To establish liability for defamation, a plaintiff must show:  (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." (quoting *Rosen v. Am. Is. Pub. Affairs Comm., Inc.*, 41 A.3d 1250, 1256 (D.C. 2012)).  Plaintiff's claim fails under either analysis.  If anything, it is actually more difficult for Plaintiff to prevail under Arkansas law, which, notwithstanding his repeated assertions of injury by defamation per se, Am. Compl. ¶¶ 18, 44, 61, does not recognize that doctrine, *see Faulkner v. Ark. Children's Hosp.*, 69 S.W.3d 393, 403 (Ark. 2002).

holding plaintiff's defamation claims time-barred).  Thus, regardless of which state's law would govern the substance of Plaintiff's defamation claim, at the outset, Plaintiff's claim must satisfy D.C.'s statute of limitations.

It does not:  Plaintiff's defamation claim is unequivocally barred by D.C.'s one-year statute of limitations on libel and slander claims.  Plaintiff alleges that the defamation took place in response to the publication of his book in June 2016, and "continued nonstop throughout the summer of 2016," and the November 2016 Presidential election.  *See* Am. Compl. ¶ 20; *id.* ¶ 30. This presents an insurmountable barrier for Plaintiff's claim.  Whether Plaintiff's defamation claim is characterized as libel or as slander, Plaintiff's claim is time-barred under D.C. law, which recognizes a one-year statute of limitations.  *See* D.C. Code Ann. § 12-301(4).  "Moreover, the District of Columbia follows the 'single publication' rule, whereby publication of defamatory matter 'gives rise to but one cause of action for libel, which accrues at the time of the original publication.'"  *Jin*, 254 F. Supp. 2d at 68 (quoting *Ogden v. Ass'n of U.S. Army*, 177 F. Supp. 498, 502 (D.D.C. 1959)).  Here, because the only statements alleged were made during "the summer of 2016," Am. Compl. ¶ 20, or, at the latest, prior to the November 2016 election, *id.* ¶ 30, Plaintiff's claims became time-barred by November 2017 at the latest—well before Plaintiff filed the present action.  Plaintiff's Third Cause of Action must therefore be dismissed.

## 2. The Amended Complaint Fails to Allege Several Necessary Elements of Defamation.

In addition, Plaintiff's claim is substantively deficient in several respects.  Despite the opportunity to revise his defamation claims in light of the Defendants' previous motions to dismiss, Plaintiff has failed to correct the same pleading errors that beset his previous filing.  Thus, Plaintiff once again fails to allege with the requisite specificity the essential elements of a defamation claim: that a particular defendant, at a particular time, published to a third party, a statement of fact (not

opinion) of and concerning Plaintiff, that the statement was false and defamatory, was published with actual malice, and caused damage to Plaintiff.

First, Plaintiff's presentation of the allegedly defamatory statements is scattershot and cursory. Plaintiff provides only partial quotations of the allegedly defamatory statement and fails to state any facts as to the time or place of publication, the full scope of the alleged statement, or the broader context in which those statements appeared. Plaintiff's pleading is therefore deficient. *See Hoffman v. Hill & Knowlton, Inc.*, 777 F. Supp. 1003, 1005 (D.D.C. 1991) ("In libel and slander suits the time and place of the publication should be specifically stated in the complaint."). Indeed, Plaintiff's cursory pleading frustrates Defendants' ability to fully defend against the defamation claim at this juncture, because it prevents Defendants and the court from determining whether the alleged statements are capable of defamatory meaning and testing whether Plaintiff has accurately characterized Defendant's words. An allegedly defamatory remark "must be more than unpleasant or offensive . . . [it] must make the plaintiffs appear odious, infamous, or ridiculous." *Klayman v. Segal*, 783 A.2d 607, 613 (D.C. 2001) (internal quotation marks omitted) (quoting *Howard Univ. v. Best*, 484 A.2d 958, 988 (D.C. 1984)). From Plaintiff's bare-bones pleading, it is highly doubtful that the statements satisfy this standard, but Plaintiff's failure to provide the context of the alleged statements makes it impossible to evaluate them as a whole. *See id.* at 614 ("[C]ontext 'requires that the court examine the statement in its totality in the context in which it was uttered or published. The court must consider all the words used, not merely a particular phrase or sentence.'" (quoting *Foley v. Lowell Sun Publ'g Co.*, 533 N.E.2d 196, 197 (Mass. 1989))).

Second, Plaintiff has not clearly identified any false or defamatory statements of fact, as opposed to opinion, that could form the basis of an actionable defamation claim. The "assertion

that [Plaintiff] was motivated out of greed or ambition is a subjective judgment that is not verifiable," and is therefore "non-actionable" as defamation. *Montgomery v. Risen*, 197 F. Supp. 3d 219, 248 (D.D.C. 2016) (collecting cases), *aff'd*, 875 F.3d 709 (D.C. Cir. 2017). The same is true of a defendant's opinion that a plaintiff was a "con artist[.]" *See id.* at 249. Many of the alleged third-party statements upon which Plaintiff premises his claim amount to nothing more than critical but non-actionable statements of opinion regarding Plaintiff's motives. *See, e.g.*, Am. Compl. ¶ 35 (third parties allegedly "questioned Plaintiff's veracity"); *id.* ¶ 38 (third-party *Correct the Record* allegedly claimed the *New York Times* called portions of Plaintiffs book "a rehash of old rumors," and called the book "fiction"); *id.* ¶ 53 (third-party *Correct the Record* allegedly claimed that Plaintiff had "ulterior motives" and his book "delved into falsities . . . that read like the 'daydreams of a low-ranking employee'"); *id.* ¶ 56 (third-party *Correct the Record* allegedly stated that "facts seem to be optional for Gary Byrne").

Third, as the preceding discussions make clear, the Amended Complaint does not identify any allegedly defamatory statements made by Secretary Clinton as the speaker. Moreover, it fails to allege any facts to support Plaintiff's conclusory allegations that Secretary Clinton directed or is otherwise at fault in the publication of the allegedly defamatory statements of others. On the contrary, the statements alleged are entirely attributed to third parties Jonathan Wackrow or Jan Gilhooly, *see, e.g.*, Am. Compl. ¶¶ 20, 35, 36, 37, 44, 45, 46, 118; various non-party "Brock entities," *see, e.g.*, *id.* ¶¶ 20, 30, 31, 32, 34, 38, 50, 53, 56, 63; or David Brock and John Podesta, *see id.* ¶¶ 33, 58. A few general allegations simply accuse the enterprise or "the Defendants" of defamation, without distinguishing the conduct allegedly attributable to each actor. *See id.* ¶¶ 19, 31, 49, 52, 55, 120; *cf. Toumazou*, 71 F. Supp. 3d at 21–22 (Plaintiff "cannot satisfy the minimum

34

pleading requirements under Rule 8 of the Federal Rules of Civil Procedure by 'lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct[.]'").

Moreover, no well-pleaded factual allegations establish that Secretary Clinton is in any way at fault for the alleged statements of others.  Rather, Plaintiff merely alleges in a conclusory fashion that "defendants, individually and collectively," colluded to defame him, *id.* ¶ 31, or that Secretary Clinton "ordered," "paid for," "directed," or "approved" the alleged defamation.  *Id.* ¶ 41; *see also id.* ¶¶ 65, 76, 121; *cf. id.* ¶ 12 (alleging Wackrow and Gilhooly were paid "by Brock and Soros").  These allegations are entirely devoid of factual support and are therefore not entitled to be credited as true.  *See Iqbal*, 556 U.S. at 678.  Plaintiff therefore has not sufficiently pleaded Secretary Clinton's involvement in any alleged defamation.

Fourth, Plaintiff has similarly failed to plead any facts establishing that Secretary Clinton acted with "actual malice" in the alleged defamatory scheme.  Although Plaintiff asserts the legal conclusion that he is not a public figure, Am. Compl. ¶ 116, he is by his own admission "an author and commentator," *see id.* ¶ 115.  He is therefore a public figure at least with respect to public debate around the issues and views he has subjected to public scrutiny, including the contents of his book.  *See Joseph v. Xerox Corp.*, 594 F. Supp. 330, 334 (D.D.C. 1984) (author was a limited purpose public figure on the topic of his book); *see also Sculimbrene v. Reno*, 158 F. Supp. 2d 8, 22–24 (D.D.C. 2001) (former FBI agent involved in 1996 investigation of "Filegate" by Independent Counsel Starr was a limited purpose public figure for purposes of discussing that investigation).

A public figure seeking to recover for defamation must prove that the offending publication "was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."  *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964).

But the Amended Complaint is entirely lacking in factual allegations to support Plaintiff's threadbare assertion that Secretary Clinton even participated in the defamation, much less that she did so knowing at the time of publication that the allegedly defamatory statements were false. *See Fairbanks v. Roller*, 314 F. Supp. 3d 85, 92 (D.D.C. 2018) ("actual malice" inquiry focuses on defendant's knowledge at the time of publication). At most, Plaintiff claims that President and Secretary Clinton "have conceded that Plaintiff Gary Byrne was 'the last barrier before anyone saw . . . Bill Clinton.'" Am. Compl. ¶ 39. But Plaintiff has not explained how that assertion relates to any of the allegedly defamatory statements. *See Tavoulareas v. Piro*, 817 F.2d 762, 794 (D.C. Cir. 1987) ("[D]efamation plaintiffs cannot show actual malice in the abstract; they must demonstrate actual malice *in conjunction* with a false defamatory statement."). Nor has Plaintiff alleged that Secretary Clinton is responsible for any allegedly defamatory statements suggesting otherwise. *See* Am. Compl. ¶ 39 (asserting that evidence "should have been reviewed *by Wackrow and Gilhooly* prior to defaming Plaintiff" (emphasis added)). In the absence of any facts showing that Secretary Clinton herself was responsible for defaming Plaintiff with knowledge of or reckless disregard for a particular statement's falsity, Plaintiff falls far short of meeting the "demanding standard" for actual malice. *Fairbanks*, 2018 WL 2727897, at *4. The defamation claim must therefore be dismissed with respect to Secretary Clinton. *Parisi v. Sinclair*, 774 F. Supp. 2d 310, 320 (D.D.C. 2011) ("[B]ecause the plaintiffs have failed to allege facts in the complaint supporting the inference that [the defendant] acted with actual malice, the remaining claims against [defendant] must be dismissed."); *Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128, 134 (D.D.C. 2009) (dismissing complaint where plaintiff "failed to plead actual malice").

Finally, Plaintiff has failed to plead any facts supporting his claim that he suffered damages from the alleged defamation. While D.C. law holds that the imputation that someone has

committed a criminal offense may constitute libel per se, *see Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*, 383 F. Supp. 2d 32, 40 (D.D.C. 2005), this does not rescue Plaintiff's claim. Although Plaintiff premises his defamation per se claim on the suggestion that Gilhooly or Wackrow claimed he "had not fully told the truth under oath", he fails to provide even a *partial* quotation of the alleged defamatory statement, much less the time, place, or context. *See* Am. Compl. ¶ 34; *see also id.* ¶¶ 32, 44, 49. This makes it impossible to determine the content of the allegedly defamatory statement. Plaintiff's unsupported assertion that he was accused of contradicting his earlier testimony, without more, is insufficient to state a claim.

In the absence of defamation per se, a plaintiff stating a claim for defamation in D.C. must plead special damages, *see Smith v. Clinton*, 886 F.3d 122, 128 (D.C. Cir. 2018), and comply with Federal Rule of Civil Procedure 9(g), which provides that "[i]f an item of special damage is claimed, it must be specifically stated," Fed. R. Civ. P. 9(g). To comply with this rule, a plaintiff must "set forth 'the precise nature of the losses as well as the way in which the special damages resulted from the allegedly false publication.'" *Browning*, 292 F.3d at 246 (quoting *Schoen v. Wash. Post*, 246 F.2d 670, 672 (D.C. Cir. 1957)). It is not enough to "merely assert[] in general terms that [the defendant's statement] cost [the plaintiff] financially." *Id.* at 246.

But, here, "general terms" is all that Plaintiff offers. His Amended Complaint contains only boilerplate allegations of damage as a result of the alleged defamation. Am. Compl. ¶¶ 3, 5, 6, 7, 17, 19, 115. These conclusory allegations do not plausibly establish that Plaintiff suffered special harm, let alone do so with the particularity required by Rule 9(g).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Amended Complaint should be dismissed for lack of subject-matter jurisdiction or, in the alternative, for failure to state a claim.

Dated: September 19, 2018                   Respectfully submitted,

<div style="margin-left: 40%;">

<u>/s/   David E. Kendall</u>
David E. Kendall (DC Bar No. 252890)
Katherine Turner (DC Bar No. 495528)
Michael Mestitz (DC Bar No. 1047260)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
dkendall@wc.com
kturner@wc.com
mmestitz@wc.com

*Counsel for Former Secretary of State*
*Hillary Rodham Clinton*

</div>

38

## **CERTIFICATE OF SERVICE**

I certify that on September 19, 2018, I caused a copy of the foregoing to be filed and served electronically upon the registered parties with the United States District Court for the District of Columbia via the Court's CM/ECF system.

The following individuals were served by First Class U.S. Mail:

Peter Strzok
3214 Prince William Drive
Fairfax, VA 22031

/s/ David E. Kendall
David E. Kendall