IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

-----------------------------------------------------------------------------------------

**GARY J. BYRNE,** *et al*.

**Plaintiffs,**

**v.**                                                                                     **1:18-cv-01422-PLF**

**HILLARY RODHAM CLINTON,** *et al.*

**Defendants.**

_____

### OPPOSITION OF PLAINTIFFS TO MOTION TO DISMISS OF DEFENDANTS CLINTON AND PODESTA

Plaintiffs Gary Byrne and the GJB Project (hereinafter referred to as "Plaintiffs"), by and

through his undersigned counsel of record, hereby moves the Court to deny each Defendant's

Motion(s) to Dismiss Plaintiffs' Amended Complaint for failure to assert jurisdiction under Rule

12(b)(1), and failure to state a claim upon which relief can be granted under Rule 12(b)(6).[1]

Dated:  November 7, 2018                            Respectfully submitted,

                                                                     */s/    Mark R. Heilbrun*
                                                                     MARK R. HEILBRUN
                                                                     D.C. Bar No. 434681
                                                                     Reagan International Trade Center
                                                                     1300 Pennsylvania Avenue, N.W.
                                                                     Washington, D.C. 20004
                                                                     (202) 577-9178

_____

[1] Defendant Podesta in his Motion to Dismiss does not file a separate memorandum of law in support of dismissal of the Amended Complaint (AC), but merely incorporates by reference the Motion filed on behalf of Secretary Clinton.  *ECF 58*, p. 1.  Accordingly, this Opposition will address the adequacy of the AC with regard to both Defendants Secretary Hillary Rodham Clinton and John Podesta.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

--------------------------------------------------------------------------------------

**GARY J. BYRNE,** *et al.*

**Plaintiffs,**

**v.**

**1:18-cv-01422-PLF**

**HILLARY RODHAM CLINTON,** *et al.*

**Defendants.**

_____

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION

Plaintiffs Gary Byrne and the GJB Project (hereinafter referred to as "Plaintiffs"), by and through his undersigned counsel of record, hereby submits the following points and authorities in supports of Plaintiffs' Opposition motion to deny each of Defendant's Motion(s) to Dismiss Plaintiffs' Amended Complaint for failure to assert jurisdiction under Rule 12(b)(1), and failure to state a claim upon which relief can be granted under Rule 12(b)(6).

## INTRODUCTION

Contrary to Defendants' assertions, this is an Amended Complaint ("AC"), *ECF 51*, in which Plaintiffs sufficiently allege a justiciable legal controversy, and sufficiently allege claims under the RICO substantive statute, 18 U.S.C. § 1962(c) and (d), upon which relief can be granted.  The AC adequately alleges wrongdoing by former government officials, campaign officials, party advocates and others who have engaged in serious acts of predicate racketeering activity which proximately and directly caused injury to Plaintiffs, and only the Plaintiffs.

2

Defendants omit from their discussion congressional legislative history and Supreme Court precedent discussing that the elements of RICO are to be liberally and expansively construed (*see, e.g.*, association in fact enterprise per *Boyle, below*).  Defendants also fail to consider that this alleged action is not a "garden-variety" fraud case, which are disfavored by district courts.  Rather, Plaintiffs allege a complex, multi-faceted scheme involving numerous persons and entities who are alleged to have committed serious criminal offenses of obstruction of justice, Travel Act, and bribery, which courts have found from the very "nature of the activity" to meet the "open-ended continuity" requirement.  Finally, defendants fail to adequately address defamatory conduct which has been a consistent aspect of the continuing enterprise.

As discussed in detail below, Plaintiffs thus respectfully request the Court to allow this action alleging serious offenses and government corruption to continue, and deny the Defendants' motions to dismiss.

**POINTS AND AUTHORITIES REGARDING DEFENDANTS' RULE 12(B)(1) MOTION**

I. <u>There Are Sufficient Allegations of Jurisdiction Under Article III</u>

A. <u>The AC Sufficiently Alleges a Justiciable Case or Controversy</u>

Defendants first assert that Plaintiffs are only raising a generally available grievance about government which would not confer jurisdiction to this court.  *ECF 57*, Mot, p. 9-10.  This principle was discussed in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573-74 (1992) in which the Court addressed a claim asserting only harm to his <u>and every citizen's interest</u> in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large.  This claim was held to not state an <u>Article III</u> case or controversy. *Id*., at 574, *citing* to *Fairchild v. Hughes,* 258 U.S. 126, 129–130 (1922), in

which the Court dismissed a suit challenging the propriety of the process by which the Nineteenth Amendment was ratified.

Defendants misconstrue the Plaintiffs' allegations, none of which allege in any way a grievance about government activity applicable to persons other than exclusively himself, Gary Byrne, and his LLC.   The AC does address wrongdoing by former government officials, such as Secretary Clinton, but these assertions are not "generalized grievances" but rather specific allegations of her working with private citizens, such as Defendants Podesta (who also chaired the Hillary Clinton presidential campaign), Brock, and FBI official Peter Strzok, who as discussed below, engaged in predicate acts of racketeering which proximately caused injury to Plaintiffs, and only to the Plaintiffs.

Despite Defendants' persistent argument that the Plaintiffs' allegations are "generalized grievances" against government agencies and the FISA Court, *ECF 57*, Mot., p. 9-11, the Plaintiffs limit his/their allegations to those alleged as Defendants and conspirators of the Defendants.  The introductory paragraphs in the AC show how the allegations are limited to illegal activity directed at Plaintiffs because of his upcoming nonfiction book recounting verified corruption by the Clintons.  *See*, AC, *ECF 51*, para. 15, allegations that Defendants Clinton and Podesta engaged in obstruction of justice by "wiping clean" inculpatory documents (e-mails) which would have shown how they paid bribes to independent contractors to create false information about Plaintiffs and caused the illegal conducting of domestic surveillance of Officer Byrne.  *See also* AC, *ECF 51*, para. 16, Defendant Brock and Enterprise nonpartisan" non-profits, such as *Correct the Record*, used facilities in interstate commerce (such as internet outlets and other media outlets) to disseminate false information about Officer Byrne.  Brock utilized the services of Enterprise members Wackrow and Gilhooly to commit slander and libel,

knowing that they were compensated by Brock and Enterprise member George Soros.  These are not generalized claims or grievances, but rather specific allegations of how the Defendants, acting with Enterprise members and other conspirators, engaged in predicate activity against Plaintiffs, in order to discredit Byrne before his soon to be released book was published.

  B. <u>The AC Sufficiently Alleges Standing As Required by Article III</u>

  Defendants then argue that the Plaintiffs did not properly assert facts to support standing. *ECF 57*, Mot., p. 11-16. The Supreme Court has held that the "irreducible constitutional minimum of standing contains three elements: injury in fact, causation, and redressability." *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The Plaintiffs bear the burden of establishing each element to the standard of proof required at each successive stage of the litigation. *See id.* But, at the motion to dismiss stage, a court must accept the well-pleaded allegations of the complaint as true and draw all inferences in favor of the Plaintiffs. *See also Jerome Stevens Pharm. Inc.  v. Food & Drug Administration*, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005),  *citing United States v. Gaubert,* 499 U.S. 315,  327 (1991).

  Courts in this district find Plaintiffs meet the elements for standing when a Plaintiff's alleged injuries can be redressed by a monetary award, caused by the Defendant's wrongdoing. *See Ferrer v. CareFirst, Inc.*, 265 F.Supp.3d 50, 53 (D.D.C. 2017) (holding that insureds' complaint set forth sufficient facts that plausibly established Article III standing by alleging that Carefirst's denial of full coverage resulted in each of the Plaintiffs having to pay hundreds of dollars out of pocket, thereby easily meeting the injury-in-fact requirement and redressability requirement).

The AC adequately alleges these three elements of injury in fact, causation, and redressability.  First, regarding injury in fact, the AC specifically alleges, at *ECF 51*, para. 17, that Plaintiffs has standing to bring this action as he incurred injury to his business and as a result of damage to his reputation, which has long been found to be sufficient injury to meet the standing requirement in this district.  See *Lewis v. Lhu*, 696 F. Supp. 723, 727 (D.D.C. 1988) which held that Plaintiffs' allegations of reputational and other damage stemming from defendants' actions are sufficient to meet the "injury" standing requirement for a civil RICO federal action.  The *Lewis* court further stated that all that is required to sustain standing under RICO is an allegation that Plaintiffs' injuries flowed, directly or indirectly, from defendants' fraudulent acts. *Id.,* citing cases.

Because satisfaction of the RICO injury to business or property requirement is satisfied under *Lewis*, the injury in fact requirement for Title III standing, which only requires "general factual allegations of injury resulting from the defendant's conduct" would be also satisfied.  *See Lujan, 504 U.S. at 561*; *Lexmark Intern. Inc. v. Static Control Components Inc.*, 572 U.S. 118, 132 (2014) (holding that proximate causation in a civil RICO claim (and other claims) is not a requirement of Article III standing, which standing requires only that the Plaintiffs' injury be fairly traceable to the defendant's conduct).  *See also ECF 57*, Mot., p. 17, citing case.

The AC further alleges <u>causation</u>, stating at *ECF 51*, para. 17, that Plaintiffs have also incurred legal fees and expenses as a result of the damage to his reputation <u>caused</u> by the illegal predicate activity of obstruction of justice (destroying inculpatory documents), and the Defendants use of interstate facilities to promote and facilitate their bribery.  Lastly, there would be <u>redressability</u> as the Plaintiffs allege direct monetary injury (both as a result of loss of book sales, and because his reputation was discredited and incurrence of legal fees), which can be

quantified.  This is sufficient to find standing under Title III requirements. *Lannon Foundation v. Gingold*, 300 F. Supp.3d 1, 16 (D.D.C. 2017) (holding that the Plaintiffs had sufficient standing under Title III when there was a legitimate claim for fees or damages).  Accordingly, the Plaintiffs has standing under Title III to bring this action.

### POINTS AND AUTHORITIES REGARDING DEFENDANTS' RULE 12(B)(6) MOTION

II.     A Claim for Relief Under Rule 8(a) is Liberally Construed Under Supreme Court Precedent

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal quotation marks omitted).  The Plaintiffs need not plead all of the elements of a *prima facie* case in the complaint.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

Despite this liberal pleading standard, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A claim is facially plausible when the facts pled in the complaint allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The standard does not amount to a "probability requirement," but it does require more than a "sheer possibility that a defendant has acted unlawfully."  *Id*.

"[W]hen ruling on a defendant's motion to dismiss [pursuant to Rule 12(b)(6)], a judge must accept as true all of the factual allegations contained in the complaint,"

*Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (internal quotation marks omitted), and

the court must give the Plaintiffs the "benefit of all inferences that can be derived from the facts

alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  But,

[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements" are not sufficient to state a claim. *Iqbal,* 556 U.S. at 678.

III.     RICO Standing Is Sufficiently Alleged

        A plaintiff must show that racketeering activity must be a "but-for," proximate, and direct

cause of Plaintiff's injuries.  *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)

(rejecting the notion that 18 U.S.C. § 1964 contains a distinct "racketeering injury" requirement);

*Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992) (proximate cause);

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006) (a Plaintiff may sue for injuries that

he directly suffers by reason of a RICO violation).

        First, Defendants argue, at *ECF 57*, Mot., p. 18, that Plaintiffs failed to plead injury to

"business or property," stating incorrectly that the AC only alleges injury caused by the

defamation claim which is not a RICO predicate act.   This ignores the case law in this district,

*see Lewis v. Lhu*, supra, 696 F. Supp. at 727, which held that Plaintiffs' allegations of

reputational and other damage stemming from defendants' actions are sufficient to meet the

"injury" standing requirement for a civil RICO federal action.   This is still good law in this

district.

        In this regard, per *Lewis*, the underlying Complaint here describes in detail that the

damage to Plaintiffs' reputation caused the injury to his business and property.  *See* AC, *ECF 51*,

para. 6, "defamation caused fatal injury to Byrne's business,"; para. 87, defendants as enterprise

members worked together for a number of years to defame Byrne and cause him reputational

injury and incurrence of legal fees. *See also*, para. 103 (same); para. 115 (Byrne suffered extraordinary reputational injury and, as noted throughout this complaint, devastating monetary damage to his business as an author and commentator).

Moreover, contrary to Defendants' assertions, the AC also alleges facts to support a finding of injury directly from the predicate acts of obstruction of justice and bribery. *See* AC para. 8; 13 ("*predicate acts of obstruction of justice and bribery caused injury to business and property of Plaintiffs"); see* para. 17, incurrence of legal fees caused injury as a result of damage to reputation caused by the illegal predicate activity of obstruction of justice and bribery.

Second, Defendants argue that even if Plaintiffs had alleged cognizable injury (which Plaintiffs assert he did), the alleged RICO violations would be too remote to satisfy the statute's proximate cause requirement, which requires "some direct relation between the injury asserted and the injurious conduct alleged." *ECF 57*, Mot, p. 19-20. The AC meets this requirement - as described above, it is alleged that Enterprise members "directed predicate acts involving obstruction of justice and bribery in order to further the goals of the Enterprise to cause injury to the business and property of Officer Byrne," AC, *ECF 51*, para. 13 (Strzok); para. 8 (Clinton); para. 6 (Brock).

The AC then describes in detail these predicate racketeering activities, and how they directly injured Plaintiffs. *See* AC, *ECF 51*, para. 21, (a) bribery in violation of state law and section 201- Defendants Hillary Clinton and John Podesta, with the assistance of David Brock, bribed independent contractors and government officials to provide sources of false information about Byrne. This inculpatory information resided on Hillary Clinton's personal e-mail system/servers; (b) obstruction of justice in violation of section 1512, Hillary Clinton and John Podesta – with the assistance of Clinton's legal counsel - destroyed large numbers of documents

and e-mails, which (with the knowledge and support of Strzok, McCabe and Comey) remain

missing to this day.  *See* other factual allegations in substantive RICO claim, para. 87; 90;

payment of bribes to create false sources of information to be used against Byrne; para. 88; 94,

obstruction of justice by destruction of documents evidencing the bribery.

Further, it is alleged in the AC, *ECF 51*, para. 17 that Plaintiffs incurred legal fees and

expenses to remedy the damage to his reputation (not fees incurred in bringing this lawsuit, but

in other legal proceedings) caused by the illegal predicate activity.  Many courts agree that, in

certain circumstances, these fees and expenses qualify as an injury compensable under the RICO

statute.  *See e.g.*, *Handeen v. Lemaire*, 112 F.3d 1339, 1354 (8th Cir.1997) (holding that the

Plaintiffs' expenditure of attorneys' fees in objecting to the defendant's allegedly fraudulent

claims in another litigation sufficient as an injury within the meaning of RICO); *Stochastic*

*Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1167 (2d Cir.1993) (allowing legal fees to be

recoverable under RICO), and *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1105 (2d Cir.1988)

(holding that the Plaintiffs could recover under RICO for past legal fees and expenses incurred

"in fighting defendants' frivolous lawsuits in New York state court"); *Burger v. Kuimelis*, 325

F.Supp.2d 1026, 1035 (N.D.Cal. 2004) (holding that legal expenses incurred in other

proceedings as a result of a RICO defendant's wrongful conduct can be recovered; "[l]egal

expenses are concrete financial losses"), and *LaBarbera v. Angel*, 95 F.Supp.2d 656, 662

(E.D.Tex.2000) ("To the extent that the Plaintiffs incurred expenses as a result of defending [the

defendant's] claim and asserting a counter-claim against him those expenses can be the subject of

a civil RICO cause of action).

Accordingly, injury to Plaintiffs' business and property proximately and directly resulting

from the racketeering activity was adequately alleged.

IV.   The Enterprise Is Adequately Alleged

A.   Legal Background

In *United States v. Turkette*, 452 U.S. 576 (1981), the Supreme Court first set forth the liberal and expansive counters of an association in fact enterprise as requiring an "ongoing organization with a framework, formal or informal, for carrying out its objectives and the various members and associates functioned as a continuing unit to achieve a common purpose."  The Court in *Boyle v. United States*, 556 U.S. 939, 946 (2009) resolved a split in the circuits interpreting *Turkette* as to what kind of framework, or structure, if any, was required.

In *Boyle*, supra, 556 U.S. at 946, the Court describes that an association in fact enterprise "must have at least three structural features:  a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  Importantly, the Supreme Court in  *Boyle* gave a  liberal and expansive denotation to the term "enterprise" which term includes "*any* ... group of individuals associated in fact."  The Court stated that such language ensures that the definition of "enterprise" has a wide reach, and the very concept of an association in fact is expansive.  *Id.* at 944.

The *Boyle* Court stated a broad view of the structural requirements stating that there is *no* basis in the language of RICO for additional requirements such as "a structural 'hierarchy,' role differentiation, a unique *modus operandi*, a chain of command," etc., or other business-like characteristics.  Id., at 948.   The Court stated that "an association in fact enterprise is simply a continuing unit that functions with a common purpose."  *Id*. at 948.  The group must merely remain in existence long enough to pursue a course of conduct.  *Id*.

The Court in *Boyle* bases its broad and expansive view of an association in fact enterprise by stating that the RICO statute provides that its terms are to be "liberally construed to effectuate

its remedial purposes." *Id*. at 944, citing to *National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 257 (1994) ("RICO broadly defines 'enterprise' "); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985) ("RICO is to be read broadly").

     B.  <u>The AC Sufficiently Alleges an Association in Fact Enterprise</u>

Defendants first argue that the membership of the alleged Enterprise is not clearly defined. *ECF 57*, Mot., p. 21, *citing* to AC, *ECF 51*, para. 14. This misconstrues the clear language of the AC as para. 14 is merely a general statement that "numerous defendants remain unknown." This is also a factually true statement, as there are potential defendants who have not yet been documented. Moreover, such unknown potential defendants are not described as members or associates of the Enterprise as the AC, para. 87, limits the Enterprise membership to specific individuals and entity members of the Enterprise, and thus the alleged Enterprise membership and associates are sufficiently defined.

Defendants then argue that the Plaintiffs' claims only "establish parallel action on the part of Defendants." Mot., p. 22. This is a misreading of the AC, as, for example, in the "Purposes and Relationships" section of the AC, para. 88, there are explicit factual allegations how the "members functioned together" to accomplish their goal to defame Plaintiffs and cause him injury. Moreover, even though Defendants argue otherwise (*ECF 57*, Mot., p. 23), there are sufficient facts supporting coordination:

> The Enterprise activities involved/involve coordination, by their own admission, between David Brock's partisan nonprofits and the Hillary for America presidential campaign (and its various complicit entities) and Enterprise participants with the intent to criminally injure, and defame, Hillary Clinton "enemies," which include, but are not limited to, Plaintiffs Byrne.

AC, *ECF 51*, para. 89.

This is a clear factual allegation describing how the Defendants coordinated their action, *i.e.*, functioned as a continuing unit per *Turkette, supra*, to inflict injury and was not some remote "hub and spoke" arrangement as described in the Third Circuit case relied upon by the Defendants.  Moreover, although Defendants argue, below, that the AC alleges "at most a course of conduct spanning only a few years," (*ECF 57*, Mot., p. 28, fn. 8), relationships of such length may be sufficient to satisfy *Boyle's* statement above, *i.e.*, "the group must remain in existence long enough to pursue a course of conduct."

Accordingly, given the factual allegations in the AC, as summarized in the charging language in *ECF 51*, para. 87-89, and the broad expansive view of an association-in-fact enterprise per *Boyle, supra*, the Enterprise is adequately alleged.

V.       The Pattern of Racketeering is Adequately Alleged

A.   Legal Background

As described by the Supreme Court in *H.J. Inc., supra*, 493 U.S. at 241 ("what a Plaintiffs or prosecutor must prove is continuity of racketeering activity, or its threat, *simpliciter*").  As a matter of background, the RICO statute, section 1961(5) requires that the defendant have engaged in a "pattern of racketeering," which is defined to be at least two predicate acts committed, or agreed to be committed, within ten years of each other.[2]

The Court in *H.J. Inc*. discussed that "continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. *Id*., at 241.  The Court further stated that

_____

[2] In *H.J. Inc. v. Northwestern Bell Telephone Co.,* supra, 492 U.S. at 239-41,  the Supreme Court held that a "pattern" also required "relatedness."  It is clear and undisputed that here the alleged predicate acts of obstruction of justice, Travel Act, and federal bribery are sufficiently related to each other and to the operation of the enterprise.

in either case, it is centrally a temporal concept, that is a party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement. *Id., at 242.*

Regarding the threat of continuing criminal activity, also known as "open-ended continuity," the Supreme Court in *H.J. Inc*. offered some examples of how this element might be satisfied. *H.J. Inc., supra*, 492 U.S. at 242-243, describing, in relevant part that when the racketeering acts themselves include a specific threat of repetition extending *indefinitely* into the future, and thus supply the requisite threat of continuity.  In other cases, the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business.  The continuity requirement is likewise satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business (in the sense that it is not a business that exists for criminal purposes), or of conducting or participating in an ongoing and legitimate RICO "enterprise."  *Id.*, at 243.

B.   The AC Sufficiently Alleges "A Pattern of Racketeering Activity"

1.   Predicate Acts Have Been Adequately Pleaded

Defendants assert that predicate acts have not been properly pleaded because there are allegations of "lumping defendants together in each claim." *ECF 57*, Mot., p. 24.  Contrary to Defendants assertion, the AC identifies which particular defendant was engaged in the violative conduct, and even the paragraphs cited by Defendants distinguish between individual defendants. *Compare*, para. 15, identifying Clinton and Podesta; para. 20, identifying as the wrongdoers as Clinton, Brock, and Podesta; para. 79, identifying wrongdoers as Defendants Clinton and Podesta.  Moreover, there are of course many other allegations in the AC specifically identifying

the conduct by the particular Defendant, which are not set forth by Defendants.  *See e.g.*, para.,

para. 63, Defendant Brock identified in defamatory conduct; para. 64, Brock, American Bridge,

Crew and Shareblue (enterprise members) involved in wrongful tactics to cause injury; para. 75-

76; Hillary Clinton identified specifically as the wrongdoer.

Defendants also argue that there is insufficient allegation of the alleged predicates.  *ECF*

*57*, Mot., p. 25-26.  This is incorrect, as the basis for alleging the RICO predicates are explicitly

described and explained in depth in the AC, in the Racketeering Violation section of the AC in

paras. 92-100.  In para. 92, the AC specifically describes the violations are "acts indictable under

18 U.S.C. § 201; 1512; and 1952."  In subsequent paragraphs, these predicates are described in

detail.  See, AC, *ECF 51*, para. 13; 93, regarding Travel Act describing a Massachusetts safe

house to facilitate the carrying on of the unlawful activity of bribery.  These acts of bribery are

described to be in violation of states to be determined, including the District of Columbia, all in

violation of 18 U.S.C. section 1952(a)(3), which is RICO predicate activity. AC, *ECF 51*, para.

16.

Regarding the obstruction of justice, the AC details the conduct of each individual

defendant.  *See e.g.*, para. 94-100, describing details regarding each Defendant's role in

obstruction of justice in violation of section 1512(c)(1) and (2).  These paragraphs include

allegations of specific instructions by Hillary Clinton, and specific allegations of impeding an

official proceeding by Defendant Peter Strzok who is alleged to have concealed "metadata" in

documents which would have been incriminating against Defendant Hillary Clinton in the

federal government/FBI investigation of Clinton in year 2016.

The Defendants also argue that factual allegations in support of the bribery predicates are

insufficient.  Plaintiffs acknowledge that more specific information as to the identity of the

"independent contractors" who were paid the bribes by David Brock and others to gin up fake information (para. 88; 90) will be ultimately required to **prove** the allegations.  But the allegations as stated are sufficient to provide notice to Defendants of the specific violations to which they have been alleged to have committed.  In this regard, as described above, regarding the state bribery violations, which themselves are RICO predicates, Plaintiffs allege these acts of bribery are described to be in violation of states to be determined, including the District of Columbia.  AC, *ECF 51*, para. 16.   Moreover, para. 13 of the AC describes a scheme to pay bribes to a Department of Justice employee to assist the Enterprise's dissemination of false and defamatory information.  This fact, if proven, would be sufficient to meet the "state or federal public official," and "official acts" provisions of section 201.

Accordingly, the AC contains sufficient allegations to put the Defendant on notice regarding which RICO predicate they are alleged to have committed, and/or agreed would be committed.

2.   The Subject Action Is Not a Merely "Garden-Variety Fraud" Proceeding

Defendants also assert that the AC fails to properly allege a "pattern of racketeering activity."  Mot., *ECF 57*, p. 26-28, asserting the scheme alleged is only a single scheme aimed at defrauding one individual, and asserting insufficient continuity.  These arguments have little merit.  Contrary to Defendant's assertion, the conduct alleged is hardly "a single scheme, a single injury, as set forth in *Western Associates Ltd. Partnership, ex rel*., 235 F.3d 629, 633 (D.C. Cir. 2001, and is clearly not "isolated conduct."   The AC alleges a complex, multi-faceted scheme by numerous important persons, including a presidential candidate (Hillary Clinton), her campaign chair (Podesta), democratic party operative Brock and the entities he controlled, and Podesta and the entities he controlled; and corrupted federal government investigators (Strzok), to function

together to obstruct justice and pay bribes to gin up false and fake information.  *See Crawford v. Franklin Credit Mgmt. Corp*., 758 F.3d 473, 488-89 (2d Cir. 2014), wherein the Second Circuit held there was insufficient pattern based upon mail fraud allegations involving a single victim and one fraudulent act, but distinguished the facts from other courts which have found a sufficient pattern involving only a single victim when the alleged fraudulent acts that were numerous, varied, and disparate.

Moreover, the "single-scheme, single-injury" basis to dismiss civil RICO claims rests with allegations of mail and wire fraud.  In *Crawford, supra*, the court stated that given the routine use of mail and wire communications in business operations, it agreed with the view of the First Circuit that "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a Plaintiffs may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Id*., at 489, citing *Efron v. Embassy Suites (Puerto Rico), Inc.,* 223 F.3d 12, 20 (1st Cir.2000).  Courts have stated that ("[t]he potential for transforming garden-variety common law actions into federal cases is greater if [the claims are] grounded entirely on [mail and wire fraud] predicates"). *Gross v. Waywell*, 628 F.Supp.2d 475, 493 (S.D.N.Y. 2009).

Cases relied upon by Defendants here, *i.e., Western Associates Ltd. Partnership, ex rel*., *supra*; *Edmondson & Gallagehr v. Alban Towers Tenants Ass'n*, 48 F.3d 1260 (D.C. Cir. 1995), analyze civil RICO claims of mail and/or wire fraud.  Moreover, district courts in this circuit which follow *Western Associates, supra*, also focus on civil RICO claims involving fraud.  *See e.g., Feld Entertainment Inc. v. American Society for the Prevention of Cruelty to Animals*, 873 F. Supp.2d 288, 313 (D.D.C. 2012).

Because the reliance on D.C. law addressing "single-injury, "single victim," arguably does not have strong validity when viewing a complex, multifaceted organization engaging in serious offenses of obstruction of justice and bribery, the district court cases cited by Defendant have little validity in this case.

### 3.  The AC Sufficiently Alleges Conduct Which Threatens(ed) Future Conduct

Importantly, Defendants assert there is inadequate continuity because the predicate acts were committed over the course of a few months or "at most a course of conduct spanning only a few years" and any "future racketeering activity is wholly speculative."  Mot, *ECF 57*, p. 27; 28, fn. 8.  However, as stated clearly in the AC, Plaintiffs are alleging that the predicate activity threatens future criminal conduct, and thus constitutes "open-ended" continuity:

> "Plaintiffs believe that this obstruction continues to this day as Defendants and Enterprise members continue to associate for the purpose of defaming Plaintiffs and damaging his reputation thereby causing him injury. Therefore, their conduct of bribe paying and destroying documents gives rise to the inference that such offenses would have continued indefinitely, if not interrupted." AC, *ECF 51*, para. 103.

As described in the examples in *H.J. Inc., supra*, 492 U.S. at 242-243, because these acts of obstruction, Travel Act, and bribery themselves include a specific threat of repetition extending *indefinitely* into the future, these predicates (<u>unlike</u> garden-variety fraud schemes which have been completed) threaten future criminal conduct and thus supply the requisite threat of continuity.  *See United States v. Aulicino*, 44 F.3d 1102, 1111 (2d Cir. 1995) the court found a 3 ½ month length scheme to commit kidnapping as constituting a sufficient pattern.   The *Aulicino* court stated that -

> in cases where the acts of the defendant or the enterprise were inherently unlawful, such as murder or <u>obstruction of justice</u>, and were in pursuit of inherently unlawful goals, such as narcotics trafficking or embezzlement, the courts generally have concluded that the requisite threat of continuity was adequately established by the <u>nature of the activity</u>, even though the period spanned by the racketeering acts was short.  In contrast, in cases concerning alleged racketeering activity in furtherance of endeavors that are not

inherently unlawful, such as frauds in the sale of property, the courts generally have
found no threat of continuing criminal activity arising from conduct that extended over
even longer periods.

*Id*., emphasis added.

The *Aulicino* court continued to find that *H.J. Inc.* does not hold that Congress grants

defendants a "RICO-free window of opportunity" to engage in numerous racketeering acts.  *Id*.,

at 1113.

Accordingly, even if this Enterprise disbands, which is unlikely, their short-term

activities involving alleged serious offenses of obstruction and bribery is sufficient to find that

the requisite threat of continuity was adequately established. *See also United States v. Busacca,*

936 F.2d 232 (6th Cir. 1991) (holding that a two-month period of embezzlement sufficed to

evince a threat of continuity, when "[t]he manner in which the embezzlements occurred was

capable of repetition indefinitely into the future).

Moreover, because the enterprise here consists of democratic politicians (Clinton),

buttressed by democratic operatives, lobbyists and corrupted government investigators, and

others (see para. 87), it may also be found that because this association may continue, that the

threat of continuity may be established by showing that the predicate acts or offenses are part of

this ongoing entity's regular way of doing business.  *H.J. Inc., supra*, at 243.

VI.  RICO Conspiracy

Defendants first assert that the section 1962(d) alleged violation fails because the

substantive section 1962(c) violation was not adequately alleged.  Mot., *ECF 57*, p. 29.  For the

reasons described above, Plaintiffs assert a substantive civil RICO was sufficiently alleged at this

juncture.

Second, Defendants assert the conspiratorial agreement was not adequately alleged.  This is contrary to the explicit terms of the AC, wherein in the Second Cause of Action (the Conspiracy), it is explicitly alleged 'Each Defendant <u>agreed</u> that a conspirator would commit at least two acts of racketeering, *i.e.*, bribery and obstruction of justice, in the conduct of the affairs of the Enterprise."  AC, *ECF 51*, para. 109 (emphasis added).  As noted above, there are more than sufficient facts alleged to support a finding of an agreement, and that each conspirator "adopt[ed] the goal of furthering or facilitating the criminal endeavor." *Salinas v. United States*, 522 U.S. 52, 65 (1997).

VII.    CONCLUSION

In conclusion, for the reasons above, the Defendants' Motions to Dismiss should be denied.

Respectfully submitted,

*/s/    Mark R. Heilbrun*
MARK R. HEILBRUN
D.C. Bar No. 434681
Reagan International Trade Center
1300 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 577-9178
mh@harlanbradleyllp.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**GARY J. BYRNE** *et al*.

Plaintiffs,

v.                                                                          **18-cv-01422-PLF**

**HILLARY RODHAM CLINTON** *et al.*

Defendants.

_____

## [PROPOSED] ORDER

Upon consideration of Plaintiffs' Opposition to the Motion to Dismiss of Defendant Clinton and the Motion to Dismiss of Defendant Podesta, it is hereby **ORDERED** that the motions to dismiss are **DENIED**.

**SO ORDERED**

Dated: _____, 2018

_____
Paul L. Friedman
United States District Judge

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on November 7, 2018, I caused a copy of the foregoing to be filed and served electronically upon the registered parties with the United States District Court for the District of Columbia via the Court's CM/ECF system.


/s/    *Mark R. Heilbrun*
MARK R. HEILBRUN