**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| GARY JOHN BYRNE *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 18-cv-01422-PLF |
| HILLARY RODHAM CLINTON *et al.*, | |
| Defendants. | |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT FORMER
SECRETARY OF STATE HILLARY RODHAM CLINTON'S MOTION TO DISMISS**

David E. Kendall (DC Bar No. 252890)
Katherine Turner (DC Bar No. 495528)
Michael Mestitz (DC Bar No. 1047260)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
dkendall@wc.com
kturner@wc.com
mmestitz@wc.com

*Counsel for Former Secretary of State
Hillary Rodham Clinton*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT........................................................................................................................2

I. THE AMENDED COMPLAINT MUST BE DISMISSED UNDER RULE 12(B)(1) FOR LACK OF JURISDICTION............................................................2
    A. The Amended Complaint Fails To Allege a Justiciable Case or Controversy as Required by Article III.................................................2
    B. The Amended Complaint Fails to Allege an Injury In Fact as Required by Article III. .........................................................................................3

II. THE AMENDED COMPLAINT MUST BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM ..............................................5
    A. The Amended Complaint Fails to Plead Facts Sufficient to Establish the Elements of Plaintiff's RICO Claims. ..............................................5
        1. The Amended Complaint Fails to Plead the Necessary Elements of "RICO Standing." ...............................................................................6
        2. The Amended Complaint Fails to Plead a RICO Enterprise. ......................8
        3. The Amended Complaint Fails to Adequately Plead a Pattern of Racketeering Activity. ................................................................9
        4. The Amended Complaint Fails to Plead Necessary Elements of a Claim Under § 1962(d). ..................................................................12
    B. Plaintiff's Defamation Claim Should Be Dismissed. ............................................12

CONCLUSION....................................................................................................................13

## **TABLE OF AUTHORITIES**

### **CASES**

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006)..................................................................7

*\*Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015) .......................................................................1, 3

*\*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................ passim

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................1, 5, 8

*\*Boyle v. United States*, 556 U.S. 938 (2009) ................................................................................8

*\*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) ...................................................................7

*Cheeks v. Fort Myer Constr. Corp.*, 71 F. Supp. 3d 163 (D.D.C. 2014).......................................11

*Cohen v. Bd. of Trs. of the Univ. of D.C.*, 819 F.3d 476 (D.C. Cir. 2016) ....................................13

*\*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
    48 F.3d 1260 (D.C. Cir. 1995)................................................................................10, 11

*Ferrer v. CareFirst, Inc.*, 265 F. Supp. 3d 50 (D.D.C. 2017)..........................................................4

*H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229 (1989) ....................................................................11

*\*Hemi Grp., LLC v. City of New York*, 559 U.S. 1 (2010) .............................................................6

*Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258 (1992)...............................................................5, 6

*Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728 (D.C. Cir. 2007) ........................................3

*Kowal v. MCI Commc'ns. Corp.*, 16 F.3d 1271 (D.C. Cir. 1994) ...................................................1

*\*Lail v. U.S. Gov't*, 771 F. Supp. 2d 49 (D.D.C. 2011).................................................................7

*Lewis v. Lhu*, 696 F. Supp. 723 (D.D.C. 1988)......................................................................4, 5, 6

*McDonnell v. United States*, 136 S. Ct. 2355 (2016).....................................................................9

*Peter B. v. CIA*, 620 F. Supp. 2d 58 (D.D.C. 2009).....................................................................13

*Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89 (D.D.C. 2015)..........................................11

*Authorities upon which we chiefly rely are marked with asterisks

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ..................................................................5

*United States v. Aulicino*, F.3d 1102 (2d Cir. 1995)..................................................................11

*\*W. Assocs. Ltd. P'ship ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*,
   235 F.3d 629 (D.C. Cir. 2001) .............................................................................1, 5, 10, 11

*Warth v. Seldin*, 422 U.S. 490 (1975) ..........................................................................................2

**CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES**

U.S. Const. art. III, § 2...........................................................................................................2, 3, 13

*Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68

   18 U.S.C. § 1962(c) ...............................................................................................................12

   18 U.S.C. § 1962(d) ...............................................................................................................12

   18 U.S.C. § 1964(c) .................................................................................................................5

*Fed. R. Civ. P. 12(b)(1)............................................................................................................1, 2

*Fed. R. Civ. P. 12(b)(6)................................................................................................1, 5, 12, 13

D.C. LCvR 7(b).......................................................................................................................12, 13

*Authorities upon which we chiefly rely are marked with asterisks

.

# **INTRODUCTION**

Plaintiff responds to Secretary Clinton's Motion to Dismiss his RICO claims by generally repeating the threadbare allegations in his Amended Complaint and asserting that they satisfy the pleading standard.[1] But they do not, and provide no avenue for relief. It is well-settled that dismissal is warranted under Rules 12(b)(1) or 12(b)(6) when a complaint fails to contain sufficient factual matter to establish the court's jurisdiction or to state a claim for relief that is plausible on its face. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While the court must take well-pleaded factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S at 678 (quoting *Twombly*, 550 U.S. at 555). Nor need it accept "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *W. Assocs. Ltd. P'ship ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 634 (D.C. Cir. 2001) (quoting *Kowal v. MCI Commc'ns. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alternation in original) (quoting *Twombly*, 550 U.S. at 557). For all the reasons previously raised in Secretary Clinton's Motion to Dismiss, the Amended Complaint does not meet these standards, and therefore fails to invoke this Court's subject-matter jurisdiction and fails to state claims upon which relief can be granted. The RICO claims should accordingly be dismissed.

---

[1] As in her Motion to Dismiss, Secretary Clinton uses "Plaintiff" to refer both to Gary Byrne and the GJB Project. *See* Mem. in Support of Mot. to Dismiss, ECF. No. 57-1, at 1 n.1.

With respect to Plaintiff's defamation claim, notably, Plaintiff has not responded at all to *any* of Secretary Clinton's arguments demonstrating that dismissal of that claim is also required. Nor could he, because his defamation claim is plainly time-barred under the D.C. statute of limitations, and he has further failed to plead several necessary elements of the claim. Nothing, therefore, stands in the way of dismissing that claim. Thus, the defamation claim should be dismissed with prejudice along with the RICO claims.

## ARGUMENT

### I. THE AMENDED COMPLAINT MUST BE DISMISSED UNDER RULE 12(B)(1) FOR LACK OF JURISDICTION

#### A. The Amended Complaint Fails To Allege a Justiciable Case or Controversy as Required by Article III.

Plaintiff asserts that the Amended Complaint alleges a justiciable case or controversy under Article III because it states particular and unique harms suffered "only" by Byrne and the GJB Project. *See* Opp. at 4. In particular, Plaintiff argues that Byrne and the GJB Project were harmed by "illegal activity directed" at them for "recounting verified corruption by the Clintons," and that the Amended Complaint shows they were personally harmed by the alleged destruction of Secretary Clinton's e-mails and by the "dissemination of false information" by David Brock and other alleged enterprise members. *See id.* at 3–5. These efforts to allege a concrete harm to Plaintiff, however, are wholly conclusory. *See Warth v. Seldin*, 422 U.S. 490, 503 (1975) (finding insufficient plaintiffs' allegations "in conclusory terms" that they were "among the persons" injured by defendant's actions). Plaintiff is not entitled to the benefit of unsupported inferences, and "there remains the question whether" he was injured, "in any concretely demonstrable way, from [Secretary Clinton's] alleged . . . infractions." *Id.* Plaintiff's threadbare pleading cannot transmute a general grievance regarding Secretary Clinton's e-mails, or his wholesale dislike of

those he characterizes as "democratic politicians . . . , democratic operatives, lobbyists and corrupted government investigators," into a justiciable case or controversy. Opp. at 19.

### B. The Amended Complaint Fails to Allege an Injury In Fact as Required by Article III.

For much the same reason, Plaintiff has failed to allege a concrete and actual injury in fact, and has failed to allege the necessary causation to establish Article III standing. "Threadbare recitals of the elements of [standing], supported by mere conclusory statements, do not suffice," and courts "do not assume the truth of legal conclusions, nor do [they] 'accept inferences that are unsupported by the facts set out in the complaint.'" *Arpaio*, 797 F.3d at 19 (first alteration in original and citation omitted) (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)). Like other aspects of a complaint, a plaintiff's pleading of injury must therefore provide "sufficient factual matter, accepted as true, to 'state a claim [of standing] that is plausible on its face.'" *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).

Plaintiff asserts that the Amended Complaint "specifically alleges" injury, relying on a paragraph in the Amended Complaint reciting the bare conclusion that he "has standing to bring this action as he incurred injury to his business and as a result of damage to his reputation, which has long been found to be sufficient injury to meet the standing requirement in this district." Opp. at 6. But this is the type of "threadbare recital," "conclusory statement," or "legal conclusion" that courts regularly reject. *Arpaio*, 797 F.3d at 19. For all the reasons stated in Secretary Clinton's Motion to Dismiss, Plaintiff's unsupported assertions of injury fall well below the necessary threshold to establish a cognizable injury in fact. *See* Clinton Mem. in Support of Mot. to Dismiss, ECF No. 57-1, at 11–16 ("Clinton MTD").[2]

---

[2] In addition, because Plaintiff has *at least* conceded his defamation claim, no injury to his reputation caused by the alleged defamation can support standing for Plaintiff's remaining claims.

Plaintiff relies on the same threadbare allegation to establish "causation," asserting that he "also incurred legal fees and expenses as a result of the damage to his reputation *caused* by the illegal predicate activity of obstruction of justice (destroying inculpatory documents), and the Defendants [sic] use of interstate facilities to promote and facilitate their bribery." Opp. at 6 (emphasis in original). Again, this is nothing more than a legal conclusion, unsupported by any well-pleaded factual allegations establishing a link between Secretary Clinton's actions and Plaintiff's alleged injury. The talismanic invocation of the word "cause" cannot satisfy Plaintiff's pleading burden. Any harm from the alleged bribery or the alleged destruction of Secretary Clinton's personal e-mails is wholly speculative and cannot support standing. *See* Clinton MTD 12–15; *see also id.* at 15 n.4 (discussing cases rejecting similar theories of injury regarding Secretary Clinton's e-mails).

Plaintiff relies particularly on *Ferrer v. CareFirst, Inc.*, 265 F. Supp. 3d 50 (D.D.C. 2017), and *Lewis v. Lhu*, 696 F. Supp. 723 (D.D.C. 1988), but neither of those cases is persuasive. In fact, the complaint in *Ferrer* provides an instructive comparison to the Amended Complaint, because it is significantly more detailed. For example, in pleading injury, the *Ferrer* complaint alleges specific dates and amounts of the expenses constituting the plaintiff's alleged injury, accompanied by a clear explanation of how the defendant's alleged conduct caused those expenses. *See* Compl. ¶¶ 63–85, *Ferrer v. CareFirst, Inc.*, 265 F. Supp. 3d 50 (D.D.C. 2017). Contrasting the Amended Complaint with the pleading in *Ferrer* lays bare the deficiencies in Plaintiff's approach here.

*Lewis v. Lhu* is similarly distinguishable. Plaintiff argues that *Lewis* stands for the general proposition that "reputational and other damage stemming from defendants' actions are sufficient to meet the 'injury' standing requirement for a civil RICO action." Opp. at 6, 8. But in *Lewis*, the

4

plaintiffs' pleadings were more detailed in describing defendants' conduct and the manner in which it allegedly harmed the plaintiffs. *Lewis*, 696 F. Supp. 725–26 (reciting facts). Plaintiff places great weight on the opinion's statement that "[a]ll that is requited to sustain standing under RICO is an allegation that plaintiffs' injury flowed, directly or indirectly, from defendants' fraudulent acts," but ignores the context of that statement, which was made in the course of explaining that a RICO plaintiff himself need not be "the *target* of the predicate fraudulent acts," so long as he was actually harmed by the RICO conduct. *Id.* at 727 (emphasis added). In context, that statement cannot give Plaintiff leave to employ conclusory statements or legal conclusions in the place of the requisite well-pleaded facts. Moreover, *Lewis* dates from 1988—well before the Supreme Court's controlling articulation of the pleading standard in *Twombly* and *Iqbal*—and has been rarely cited in the 30 years since its publication.

## II.    THE AMENDED COMPLAINT MUST BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM

### A.    The Amended Complaint Fails to Plead Facts Sufficient to Establish the Elements of Plaintiff's RICO Claims.

Standing to assert claims under RICO is limited to those who have suffered business or property losses directly and proximately caused by the underlying predicate acts. *See* 18 U.S.C. § 1964(c); *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258 (1992). To state a claim under RICO, a plaintiff must at least allege that a defendant has (1) conducted; (2) an enterprise; (3) through a pattern (*i.e.*, two or more acts that are sufficiently related); (4) of racketeering activity. *See W. Assocs. Ltd. P'ship*, 235 F.3d at 633 (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)). Because Plaintiff has failed to allege facts sufficient to establish these necessary elements, his RICO claims must be dismissed.

### 1. The Amended Complaint Fails to Plead the Necessary Elements of "RICO Standing."

A viable RICO claim requires both an injury to the plaintiff's business or property and "'some direct relation between the injury asserted and the injurious conduct alleged'": "A link that is 'too remote,' 'purely contingent,' or 'indirect' is insufficient." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (brackets omitted) (quoting *Holmes*, 503 U.S. at 274, 268, 271). Plaintiff has failed to allege any injury proximately caused by any of the alleged predicate acts.

Plaintiff first argues that injury to his reputation satisfies the RICO statute's "business or property" requirement, invoking *Lewis v. Lhu*. Opp. at 8–9. As explained above, *Lewis* is of little persuasive value. It is particularly significant that the court there found the plaintiffs' alleged reputational injury was connected directly to the defendants' "fraudulent acts"—that is, the RICO predicate activity itself. *Lewis*, 696 F. Supp. at 727; *see also id.* at 726 (describing plaintiffs' allegations that, as part of the RICO predicate fraud, defendants had prepared false declarations and statements which attacked plaintiffs' reputation), *id.* at 727 (referring to "numerous allegations that defendants' *racketeering activities* have injured plaintiffs' reputation" (emphasis added)). Here, by contrast, the alleged harm to Plaintiff's reputation is attributable to alleged defamation, which is not a RICO predicate and cannot confer RICO standing. *See infra*; *see also Lewis*, 696 F. Supp. at 728–29 (discussing plaintiffs' libel and slander claims separately from plaintiffs' RICO claim).[3]

Moreover, Plaintiff's argument is a red herring: the question is not whether a reputational injury can *ever* satisfy the statute's requirements, but whether Plaintiff has adequately alleged

---

[3] To the extent Plaintiff argues the defamation itself was somehow procured by bribery, Plaintiff has failed to plead any facts supporting that suggestion. In any event, such an attenuated connection would not satisfy RICO's proximate cause requirement.

RICO injury and causation *in this case*. *See* Clinton MTD at 18–23. To the extent Plaintiff claims he has suffered injuries related to obstruction of justice or bribery, the relevant allegations are purely conclusory, or represent nothing more than legal conclusions.[4] *See, e.g.*, Opp. at 9 (citing Am. Compl. ¶ 13 for the bare assertion that "predicate acts of obstruction of justice and bribery caused injury to business and property of Plaintiffs"). It is well-settled that allegations cannot survive dismissal if, as here, they are "purely conclusory" and "merely parrot[] statutory language." *See, e.g.*, *Lail v. U.S. Gov't*, 771 F. Supp. 2d 49, 60 (D.D.C. 2011) (rejecting unadorned allegations of injury to "business or property").

Plaintiff next asserts that he sufficiently pleaded RICO's proximate causation requirement. Opp. 9–10. But his pleadings fall far short of the statute's "directness requirement[],"which requires dismissal when the alleged predicate acts bear only an "attenuated connection" to the claimed injury. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458, 459 (2006). As explained in Secretary Clinton's Motion to Dismiss, the Amended Complaint attempts to draw a causal connection only between purported injury to Plaintiff's reputation and alleged defamation, not between such injury and any claimed RICO predicate acts. Indeed, the paragraphs of the Amended Complaint on which Plaintiff relies in his Opposition make this point explicit. Opp. at 8–9 (citing paragraphs concerning reputational injury from defamation). Where, as here, "[t]he cause of [a plaintiff's] asserted harms . . . is a set of actions . . . entirely distinct from the alleged RICO violation," RICO's proximate cause requirement is not met. *Anza*, 547 U.S. at 458; *see also, e.g.*, *Browning v. Clinton*, 292 F.3d 235, 249 (D.C. Cir. 2002) (noting that defamation is not a RICO predicate act).

---

[4] The Amended Complaint also identifies alleged violations of the Travel Act as a RICO predicate, but Plaintiff's Opposition does not address how those alleged violations are proximately related to any injury to his business or property.

Finally, Plaintiff asserts that, "in certain circumstances," legal fees and expenses qualify as injury under RICO. Opp. at 10. Perhaps so. But once again, Plaintiff's allegations here fall far short of a well-pleaded allegation of injury. In response to Secretary Clinton's observation that the nature of the alleged legal fees is completely unexplained, *see* Clinton MTD at 15 n.3, 19–20, Plaintiff now states that the fees were "not fees incurred in bringing this lawsuit, but in other legal proceedings," "to remedy the damage to his reputation." Opp. at 10. Plaintiff cannot fix defects in the underlying pleading by adding additional facts at this stage, nor does this cryptic statement—even had it been pleaded—provide sufficiently meaningful detail about the legal proceedings at issue or the fees incurred. In fact, to the extent Plaintiff claims the fees were incurred in proceedings "to remedy damage to his reputation," he concedes that they were proximately caused by alleged defamation, not by the alleged RICO predicates.

### 2. The Amended Complaint Fails to Plead a RICO Enterprise.

In response to Secretary Clinton's argument that he has failed to properly plead a RICO enterprise, Plaintiff does nothing more than cite the very paragraphs Secretary Clinton identified as deficient and assert instead that they contain "explicit factual allegations." Opp. at 12–13. But, as explained in Secretary Clinton's Motion, Clinton MTD at 20–23, those paragraphs are nothing more than a collection of "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," and "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Plaintiff's unsupported claims of coordination are no more persuasive, and are not entitled to be presumed true. A claim that "several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates . . . [is] not . . . enough to show that the individuals were members of an enterprise." *Boyle v. United States*, 556 U.S. 938, 947 n.4 (2009), and Plaintiff cannot skate by

without pleading "factual content that allows the court to draw the reasonable inference" of a common purpose, organization, and continuity. *Iqbal*, 556 U.S. at 678.

### 3. The Amended Complaint Fails to Adequately Plead a Pattern of Racketeering Activity.

Plaintiff asserts that the Amended Complaint contains allegations that are sufficiently detailed to establish the elements of each predicate act and establish the requisite threat of future conduct. Opp. at 13–19. For the reasons explained at length in Secretary Clinton's motion, he is incorrect. Clinton MTD at 23–28; *see also* Brock Mem. in Support of Mot. to Dismiss, ECF No. 59-1, at 11–15 (discussing Plaintiff's failure to plead the necessary elements of each predicate act).

Despite Plaintiff's assertion, the Amended Complaint fails to plead the requisite elements of each predicate act. To remedy this, Plaintiff attempts to string together disparate paragraphs into a coherent cause of action. In response to the insufficiency of his bribery claims, for example, Plaintiff asserts that allegations in two paragraphs of the Amended Complaint provide the requisite specificity and describe the claimed "official acts" in violation of the bribery statute. *See* Clinton MTD at 25–26; Opp. at 16 (citing Am. Compl. ¶¶ 13, 16). But, contrary to Plaintiff's suggestion, these two paragraphs do not "describe[] a scheme" satisfying the elements of bribery. Opp. at 16. Rather, they are pulled from the opening sections of the Amended Complaint and contain only threadbare (and wholly fantastical) allegations that Defendant Strzok accepted unspecified bribes from Secretary Clinton's campaign—*not* Secretary Clinton herself—to disseminate false information, which does not constitute an "official act." *See McDonnell v. United States*, 136 S. Ct. 2355, 2369 (2016) (defining an "official act" to require some "formal exercise of government power").

The paragraphs Plaintiff cites as comprising his obstruction of justice allegations are similarly insufficient. Despite the claim that Paragraphs 94 through 100 of his Amended

Complaint "describe[] details" of each defendant's role and "specific instructions by Hillary Clinton" related to obstruction, Opp. at 15, the cited paragraphs include a statement from Secretary Clinton unrelated to the alleged destruction of her e-mails, and otherwise contain only unsupported allegations that Secretary Clinton "conspired with" others, couched in allegations having nothing whatsoever to do with Secretary Clinton's actions. Am Compl. ¶¶ 94–100. Plaintiff does not defend his Travel Act claims at all, other than to assert that the two cursory mentions of the Travel Act in his Amended Complaint are sufficient to state a claim. Clinton MTD at 25–26; Opp. at 15.

Plaintiff also attempts to argue that *Edmondson & Gallagher v. Alban Towers Tenants Association*, 48 F.3d 1260 (D.C. Cir. 1955), and *Western Associates Limited Partnership ex rel. Avenue Associates Limited Partnership v. Market Square Associates*, 235 F.3d 629 (D.C. Cir. 2001), are applicable only to RICO claims founded on allegations of mail or wire fraud. Opp. 16–18. This suggestion is simply incorrect. As an initial matter, Plaintiff is incorrect in stating that *Edmondson*, which provides this Circuit's controlling test for the RICO "pattern" inquiry, analyzed only claims of fraud. On the contrary, the allegations in that case also included bribery, extortion and interstate travel in aid of racketeering activity. *Edmondson*, 48 F.3d at 1264. Moreover, while *Western Associates* arose from claims of fraud, the D.C. Circuit discussed *Edmondson's* test at length, and nothing in *Western Associates*'s discussion limited its analysis to fraud claims. Rather, the D.C. Circuit interpreted the requirements of the RICO statute without reference to the underlying predicate acts. *W. Assocs. Ltd. P'ship*, 235 F.3d at 633–34. Only at the very end of its opinion, after the substantive analysis, did the court observe that claims of fraud must be particularly scrutinized. *Id.* at 637.

Plaintiff is also wrong in claiming that district courts have followed *Western Associates* only in suits alleging fraud. Opp. at 17. In fact, *Western Associates* has been widely cited in this

Circuit, including in cases concerning fraud, in cases entirely unrelated to allegations of fraud, and in cases where fraud formed only a small part of the alleged "pattern" of RICO activity. *See, e.g.*, *Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89, 99 (D.D.C. 2015) (alleging criminal infringement of a copyright); *Cheeks v. Fort Myer Constr. Corp.*, 71 F. Supp. 3d 163, 171 (D.D.C. 2014) (alleging bribery, intimidation, witness tampering, murder, and obstruction of justice in addition to fraud). In sum, Plaintiff's narrow reading of *Edmondson* and *Western Associates* finds no support in the opinions themselves or the case law of this Circuit.

Finally, Plaintiff contends that he has adequately alleged a threat of future conduct, relying primarily on the Amended Complaint's pleading of legal conclusions and unadorned assertions that the racketeering conduct is likely to recur. Opp. at 18. Plaintiff argues that *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989), or *United States v. Aulicino*, F.3d 1102 (2d Cir. 1995), establish that the predicate acts of obstruction, bribery, and Travel Act violations "themselves include a specific threat of repetition extending indefinitely into the future," and "thus supply the requisite threat of continuity." Opp. at 18 (emphasis omitted). On the contrary, both opinions emphasize that every case is specific to its facts. *H.J.*, 492 U.S. at 242 ("Whether the predicates proved establish a threat of continued racketeering activity depends on the specific facts of each case."); *Aulicino*, 44 F.3d at 1111 (similar).

Here, Plaintiff has failed to establish *any* predicate acts, much less predicate acts sufficient to establish a threat of continuity. In *H.J.* and *Aulicino*, the facts alleged allowed the courts to find some specific threat of repetition because of the nature of the enterprise or the context in which the RICO schemes unfolded—for example, a protection racket in which the perpetrator expressly promised to return each month, or an enterprise in which the alleged activities were fundamental to its ongoing operation. Here, however, Plaintiff does not seriously dispute that the only alleged

11

RICO predicates are said to have occurred over only a few months in 2016, nor does he dispute that he has not alleged *any* RICO conduct undertaken in the two years since. Given that the alleged aim of the RICO scheme was related solely to the 2016 publication of Plaintiff's book, his allegations provide no reason to infer a specific threat that the alleged conduct will continue. Any suggestion to the contrary is pure speculation. *See* Clinton MTD at 27–28, 28 n.8.[5]

### 4. The Amended Complaint Fails to Plead Necessary Elements of a Claim Under § 1962(d).

Because Plaintiff has failed to state a claim under § 1962(c), his conspiracy claims under § 1962(d) fail as well. Plaintiff's mere use of the word "agree" does not adequately plead a conspiracy to violate RICO. Opp. at 20; Clinton MTD at 29.

### B. Plaintiff's Defamation Claim Should Be Dismissed.

Secretary Clinton moved to dismiss Plaintiff's defamation claim under Rule 12(b)(6) for several reasons. Clinton MTD at 30–37. Plaintiff has not responded to any of those arguments in his Opposition, and for good reason—no response is possible, because Plaintiff's defamation claim is plainly deficient. As an initial matter, the claim is time-barred under D.C.'s statute of limitations for libel and slander claims. Clinton MTD at 31–32. In addition, Plaintiff has failed to adequately plead several necessary elements of defamation, including identifying particular statements, capable of defamatory meaning and attributable to Secretary Clinton, that were made with actual malice and led to specifically stated damages. *See* Clinton MTD at 32–37.

Because Plaintiff has not responded to Secretary Clinton's arguments concerning defamation, the Court has discretion to treat those claims as conceded under Local Rule 7(b),

---

[5] Plaintiff's belated claim that the predicate acts are an ongoing entity's regular way of doing business, Opp. at 19, is not reflected in his Amended Complaint and, in any event, is unsupported by any well-pleaded factual allegations.

which provides that the Court may treat "as conceded" any filing that is not opposed. LCvR 7(b). "It is well understood" that this same principle applies when, as here, "a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant." *Peter B. v. CIA*, 620 F. Supp. 2d 58, 69 (D.D.C. 2009). However, the D.C. Circuit has recently expressed "concerns" about granting motions to dismiss "solely" based on a plaintiff's procedural failure to respond. *See Cohen v. Bd. of Trs. of the Univ. of D.C.*, 819 F.3d 476, 480–83 (D.C. Cir. 2016). Accordingly, Secretary Clinton respectfully requests that if the Court finds that Plaintiff has established Article III standing, the Court dismiss the defamation claim on the merits under Rule 12(b)(6).

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Amended Complaint should be dismissed for lack of subject-matter jurisdiction or, in the alternative, for failure to state a claim.

Dated: December 12, 2018

Respectfully submitted,

/s/ David E. Kendall
David E. Kendall (DC Bar No. 252890)
Katherine Turner (DC Bar No. 495528)
Michael Mestitz (DC Bar No. 1047260)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
dkendall@wc.com
kturner@wc.com
mmestitz@wc.com

*Counsel for Former Secretary of State Hillary Rodham Clinton*

**CERTIFICATE OF SERVICE**

    I certify that on December 12, 2018, I caused a copy of the foregoing to be filed and served electronically upon the registered parties with the United States District Court for the District of Columbia via the Court's CM/ECF system.

                                    /s/ David E. Kendall
                                    David E. Kendall