| | |
|---|---|
| GARY JOHN BYRNE and THE GJB PROJECT, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Action. No. 18-1422 (PLF) ) |
| HILLARY RODHAM CLINTON, JOHN PODESTA, DAVID BROCK, and PETER STRZOK, | ) ) ) ) ) |
| Defendants. | ) ) |

OPINION

On August 29, 2018, plaintiffs Gary John Byrne and the GJB Project, also known as GJB LLC, filed an Amended Complaint [Dkt. No. 51] – the third complaint that plaintiffs have filed in this action. Now pending before the Court are motions to dismiss the Amended Complaint from each of the four defendants remaining in this case: Hillary Rodham Clinton [Dkt. No. 57], John Podesta [Dkt. No. 58], David Brock [Dkt. No. 59], and Peter Strzok [Dkt. No. 67]. Upon careful consideration of the briefs, the relevant legal authorities, and the entire record in this case, the Court will grant each defendant's motion to dismiss.[1]

---

[1] The Court considered the following documents and accompanying attachments and exhibits in resolving the pending motions: plaintiffs' First Amended Complaint [Dkt. No. 51] ("Amended Complaint"); defendant Hilary Rodham Clinton's Motion to Dismiss the Amended Complaint [Dkt. No. 57] and Memorandum of Points and Authorities [Dkt. No. 57-1] ("Clinton Mot."); defendant John Podesta's Motion to Dismiss the Amended Complaint [Dkt. No. 58] and Memorandum of Points and Authorities [Dkt. No. 58-1] ("Podesta Mot."); defendant David Brock's Motion to Dismiss the Amended Complaint [Dkt. No. 59] and Memorandum of Points and Authorities [Dkt. No. 59-1] ("Brock Mot."); defendant Peter Strzok's Motion to Dismiss and Memorandum of Points and Authorities [Dkt. No. 67] ("Strzok Mot."); plaintiffs'

I. BACKGROUND

*A. Procedural History*

Plaintiffs initiated this civil action by filing a Complaint [Dkt. No. 1] on June 15, 2018, and then a Corrected Complaint [Dkt. No. 3] on June 19, 2018. The two initial complaints asserted claims under state law and under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., against fifteen individuals and organizations. A number of the defendants named in the initial and corrected complaints filed motions to dismiss the complaints. See Dkt. Nos. 44-50. Rather than responding to those motions to dismiss, however, plaintiffs filed the Amended Complaint [Dkt. No. 51] on August 29, 2018. In addition to shortening the factual allegations, the Amended Complaint omits one cause of action, removes a number of previously named individual and organizational defendants, and identifies an additional individual defendant.

The Amended Complaint supersedes the Complaint and the Corrected Complaint. The Court therefore dismissed as moot the seven motions to dismiss that either targeted the superseded complaints or were filed by defendants who are no longer parties to this case. Byrne v. Clinton Found., et al., 2019 WL 1330637 (D.D.C. March 25, 2019). As plaintiffs have confirmed, only four identified defendants remain parties to this case: Hillary Rodham Clinton,

---

Opposition to Motions to Dismiss of Clinton and Podesta [Dkt. No. 65] ("Opp. to Clinton/Podesta"); plaintiffs' Opposition to Motion to Dismiss of David Brock [Dkt. No. 66] ("Opp. to Brock"); plaintiffs' Opposition to Motion to Dismiss of Peter Strzok [Dkt. No. 73] ("Opp. to Strzok"); Hillary Clinton's Reply in Support of Motion to Dismiss the Amended Complaint [Dkt. No. 68] ("Clinton Reply"); John Podesta's Reply in Support of Motion to Dismiss the Amended Complaint [Dkt. No. 70] ("Podesta Reply"); David Brock's Reply in Support of Motion to Dismiss the Amended Complaint [Dkt. No. 69] ("Brock Reply"); and Peter Strzok's Reply in Support of Motion to Dismiss the Amended Complaint [Dkt. No. 74] ("Strzok Reply"). Where necessary, the Court has also considered arguments from the briefing on defendants' previous motions to dismiss. See March 25, 2019 Mem. Op. and Order, Dkt. No. 75, at 4 n. 2 (denying as moot Dkt. Nos. 44, 45, 46, 47, 48, 49, and 50).

John Podesta, David Brock, and Peter Strzok.  See Response of Plaintiffs to Order of March 25, 2019, Dkt. No. 76 (also indicating that there are "numerous named unknown defendants").  The motions to dismiss of these four individuals are now before the Court.

### B.  The Plaintiffs' Allegations

Plaintiff Gary J. Byrne is an author and commentator who served as a uniformed officer of the United States Secret Service during the administration of President William Jefferson Clinton.  Plaintiff the GJB Project, "also known as GJB LLC," is identified as "the legal entity by which Officer Byrne conducts his business affairs," but the Amended Complaint does not otherwise attribute any action or injury to the GJB Project specifically.  See Amended Complaint at 3.  Defendant Hillary Rodham Clinton was, inter alia, the Democratic Party's nominee for President of the United States in 2016.  Amended Complaint at 4.  John Podesta was the chairman of Hillary Clinton's 2016 campaign.  Amended Complaint at 5.  David Brock is the founder and leader of a number of the media organizations previously named as defendants in this action, including Media Matters for America.  Id. at 3.  Peter Strzok was an FBI Agent who was part of an investigation of Hillary Clinton that preceded the 2016 election.  Id. at 6.

The Amended Complaint alleges that Hillary Clinton and her co-defendants conspired to form, and did conduct and direct, a "vastly expanding criminal [e]nterprise," Amended Complaint at 6, whose aim was "to destroy Byrne and his business," id. at 8.  The conspiracy began "at least a few years before year 2016," and "likely [continues] through the present time."  Id. at 27; see also id. at 6 ("beginning at a time before 2016 and continuing through at least year 2016").  In addition to the four named defendants, Mr. Byrne describes an effort that includes many named and unnamed non-defendant "Enterprise Members" holding senior positions in the media, law enforcement, and the intelligence community.  See, e.g., id. at

3-6. Mr. Byrne refers to this group of defendants and non-defendants collectively as the "Enterprise" and ascribes to them a "common purpose to prepare a false and defamatory 'dossier' on [p]laintiff Gary Byrne, which they could disseminate throughout the media and therefore harm [p]laintiffs." Id. at 26.

In 2016, Mr. Byrne published a book entitled <u>Crisis of Character: A White House Secret Service Officer Discloses His Firsthand Experience with Hillary, Bill, and How They Operate</u> ("<u>Crisis of Character</u>" or the "Book"). Amended Complaint at 8. The Book purportedly describes "significant transgressions of President William Jefferson Clinton and Hillary Rodham Clinton" that Mr. Byrne says that he observed during his tenure as a Secret Service Agent in the mid-1990s. See id. Mr. Byrne also testified on these matters before a grand jury convened by Independent Counsel Kenneth Starr and believes that the testimony he gave was "instrumental in the impeachment of President William Clinton." Id. at 8. Mr. Byrne posits that defendants "have sworn reprisal ever since, and have sought payback against Byrne, utilizing [RICO] predicate acts and defamatory *per se* tactics to destroy Byrne and his business and, with Byrne and the other Plaintiffs [sic] out of the way, provide a path to a second Clinton presidency." Id. at 8.

Mr. Byrne identifies three causes of action. Count One alleges that each defendant participated in the affairs of a RICO enterprise through a "pattern of racketeering activity" in violation of 18 U.S.C. § 1962(c). Amended Complaint at 25-30. Count Two alleges that this pattern of racketeering activity was the result of a conspiracy among all four defendants, which RICO independently prohibits under 18 U.S.C. § 1962(d). Id. at 31.[2] Count Three is a

---
[2] Plaintiffs do not clarify which of the three subsections of 18 U.S.C. § 1962 was the object of the alleged conspiracy. The Court will construe Count Two to refer to a conspiracy

4

"defamation claim under Arkansas Law" against defendants Hillary Clinton, John Podesta, and David Brock for violating Arkansas Code § 16-63-207(a)(1). Id. at 31-33.

1. Count One: Pattern of Racketeering Activity

In Count One, plaintiffs claim that defendants committed three of the qualifying predicate offenses listed in 18 U.S.C. § 1961(1)(B). Amended Complaint at 25-30. First, Count One alleges the predicate offense of bribery in violation of 18 U.S.C. § 201: "Hillary Clinton and John Podesta, with the assistance of David Brock, bribed independent contractors and government officials to provide sources of false information about Byrne." Id. at 10. The Amended Complaint contains many variations on this claim, most of them undifferentiated as to the sources or recipients of any particular bribe. See, e.g., id. at 4-5, 6-7, 9, 24, 25, 27, 33.[3]

Second, Count One alleges the predicate offense of witness tampering and obstruction of justice in violation of 18 U.S.C § 1512. The core of the obstruction allegation is that defendants illegally "destroy[ed] inculpatory documents" that were obtained by bribery and stored on Ms. Clinton's email servers. Amended Complaint at 7-8; see id. at 23 (alleging that Hillary Clinton and John Podesta, among others, "destroyed thousands of Enterprise emails . . . [and] emails containing classified information"). Mr. Byrne claims that some of the deleted files mentioned him and that the deletion of the emails constituted obstruction of justice because it "destroyed evidence under subpoena." Id. at 23. Plaintiffs also allege that Mr. Strzok took no

---

to violate Section 1962(c) because plaintiffs plead an underlying Section 1962(c) violation. See Amended Complaint at 27. See also Podesta Mot. at 8.

[3] Plaintiffs also allege that Mr. Brock "pressured and paid off over 50 media outlets to blacklist Byrne," Amended Complaint at 33, although there is no indication that any of these payments were directed to public officials or to witnesses, as required for a violation of the RICO predicate offense of bribery. See 18 U.S.C. § 201.

5

action with respect to the destruction of documents, id. at 10, and that he "corruptly conducted" interviews and failed to take other investigative steps during the investigation of Ms. Clinton that he supervised. Id. at 23, 28.

Third, Count One alleges the predicate offense of a Travel Act violation under 18 U.S.C. § 1952. Plaintiffs claim that defendants used "mail and facilities, e.g., the Massachusetts safe house[,] for conspiracy in interstate commerce with clear intent to promote, manage, carry on and facilitate . . . unlawful activity." Amended Complaint at 27-28; see id. at 4-5 (indicating that the safehouse was used "to destabilize Donald J. Trump, Sr., in his bid for the presidency, the destruction and veiling of thousands of illicit Hillary Clinton electronic mail transmissions, and [to] further the Enterprise Operational Scheme"). Specifically, Mr. Brock is alleged to have used "facilities in interstate commerce (such as internet outlets and other media outlets)" to disseminate "false information about Mr. Byrne" allegedly obtained via bribery. Id. at 7.

2. Count Two: Conspiracy to Engage in Pattern of Racketeering Activity

Mr. Byrne alleges that the defendants "did cooperate jointly and severally in the commission of two or more" of the foregoing racketeering predicate offenses and that "[e]ach defendant agreed that a conspirator would commit at least two acts of racketeering" in violation of 18 U.S.C. § 1962(d). Amended Complaint at 31. Other than this bare conclusion, however, the allegations do not contain facts in support of the conspiracy claim beyond those presented in the underlying racketeering activity claim. See id. at 31. Most of those allegations about the alleged racketeering activities ascribe an action to multiple defendants without details on the nature of their agreement, if any. See, e.g., id. at 10 ("Defendants Hillary Clinton and John

Podesta, with the assistance of David Brock, bribed independent contractors and government officials to provide sources of false information about Byrne.").[4]

### 3. Count Three: Defamation

Plaintiffs allege that defendants Hillary Clinton, John Podesta, and David Brock, "individually and collectively, attempted to destroy the reputation and business of Byrne and other [p]laintiff with false statements in writing and on television." Amended Complaint at 32. Plaintiffs assert this cause of action under Arkansas Code § 16-63-207(a)(1).[5] The essence of the claim is that David Brock, in cooperation with a variety of individuals and entities, defamed plaintiffs by questioning the accuracy of Mr. Byrne's book Crisis of Character in a variety of media formats.

The Amended Complaint provides only brief excerpts of the allegedly defamatory statements. See, e.g., Amended Complaint at 13 ("Enterprise members, including David Brock, through its [sic] vehicle *Correct the Record* and enabling libel 'From the Desk of David Brock,' defamed plaintiff by referring to *Crisis* as 'recycled *gossip*,' 'debunked *lies*,' and 'Trump-esque *conspiracy theories* . . . .'") (emphases in original); id. at 14 ("[Non-defendants] directly and falsely questioned Plaintiff's veracity and slandered him on [CNN] . . . directly stating and

---

[4] Cf. Amended Complaint at 26 ("The Enterprise Activities involved/involve coordination, by their own admission, between David Brock's [non-defendant entities] and the [non-defendant] Hillary for America presidential campaign (and its various complicit entities) and Enterprise participants with the intent to criminally injury, and defame, Hillary Clinton "enemies," which include, but are not limited to, Plaintiff Byrne.").

[5] Plaintiffs' counsel presses the claim, however, by reference to a section of the Arkansas Code that does not create a substantive cause of action, but "merely defines the rules for pleading libel and slander." See Clinton Mot. 30, n. 9. Furthermore, Section 16-63-207 was repealed in 2013 and superseded by Rule 8 of the Arkansas Rules of Civil Procedure. That rule provides general pleading requirements, see id., and has no specific information on pleading libel or slander.

otherwise inferring [sic] that plaintiff was a criminal . . . ."). The allegations do not identify with specificity the date, manner, or content of any allegedly defamatory statement made by any named defendant. See generally Amended Complaint at 12-22.

## II. LEGAL STANDARDS

### A. Motions to Dismiss Under Rule 12(b)(1) of the Federal Rules of Civil Procedure

All defendants move to dismiss the Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Federal courts are courts of limited jurisdiction, possessing only those powers authorized by the Constitution and an act of Congress. See, e.g., Janko v. Gates, 741 F.3d 136, 139 (D.C. Cir. 2014); Abulhawa v. U.S. Dep't of the Treasury, 239 F. Supp. 3d 24, 30 (D.D.C. 2017). The plaintiffs bear the burden of establishing that the Court has jurisdiction. See Walen v. United States, 246 F. Supp. 3d 449, 452 (D.D.C. 2017).

In determining whether to grant a motion to dismiss under Rule 12(b)(1), the Court must construe the complaint in plaintiffs' favor and treat all well-pleaded factual allegations as true. See Attias v. CareFirst, Inc., 865 F.3d 620, 627 (D.C. Cir. 2017). Although the Court must grant plaintiffs the benefit of all reasonable inferences, the Court "need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint," and the court need not accept plaintiffs' legal conclusions. Disner v. United States, 888 F. Supp. 2d 83, 87 (D.D.C. 2012). Finally, in determining whether plaintiffs havr met the burden of establishing jurisdiction, the Court may consider materials beyond the pleadings where appropriate. Am. Nat'l Ins. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011); Cumis Ins. Society Inc. v. Clark, 318 F. Supp. 3d 199, 207 (D.D.C. 2018).

*B. Motions to Dismiss Under Rule 12(b)(6) of the Federal Rules of Civil Procedure*

In addition to their jurisdictional arguments, all defendants move to dismiss the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. To withstand such a motion to dismiss, plaintiffs must plead facts that "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555, 570); see also Henok v. Kessler, 78 F. Supp. 3d 452, 457 (D.D.C. 2015). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 218 (D.C. Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. at 678).

In deciding a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." See Bell Atl. Corp. v. Twombly, 550 U.S. at 572 (quoting Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)). The court considers the complaint in its entirety, see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007), and construes it liberally, granting plaintiffs "the benefit of all inferences that can [reasonably] be derived from the facts alleged." See Sickle v. Torres Advanced Enter. Sols., LLC., 884 F.3d 338, 345 (D.C. Cir. 2018) (alteration in original). The Court need not, however, accept plaintiffs' legal conclusions or the inferences drawn by plaintiffs if those inferences are unsupported by the facts alleged. See id. Nor is the Court "bound to accept as

true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. at 678. See also Kaempa v. Myers, 367 F.3d 958, 963 (D.C. Cir. 2004) ("Nor must we accept as true the complaint's factual allegations insofar as they contradict exhibits or matters subject to judicial notice.").

III.  ANALYSIS

*A.  Counts One and Two Must be Dismissed Under Rule 12(b)(1) for Lack of Standing*

Defendants argue that plaintiffs lack standing to sue – an essential constitutional predicate to any exercise of this Court's subject matter jurisdiction – because they have failed to allege a concrete and actual injury in fact. See Clinton Mot. at 11-16; Podesta Mot. at 5-6; Brock Mot. at 9; Strzok Mot. at 5-8. The Court agrees and will dismiss Counts One and Two for lack of standing.

Standing is one of the three "inter-related judicial doctrines" that – along with the requirements of mootness and ripeness – "ensure that federal courts assert jurisdiction only over 'Cases' and 'Controversies.'" Worth v. Jackson, 451 F.3d 854, 855 (D.C. Cir. 2006) (quoting U.S. CONST. art. Ill, § 2). Standing is an "essential and unchanging predicate to any exercise of the Court's jurisdiction," Fla. Audobon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C. Cir. 1996), and it is "one of the essential prerequisites to jurisdiction under Article III." Fleming v. Cherokee Nation, 2019 WL 2327814 at *3 (D.D.C. May 31, 2019) (quoting Crow Creek Sioux Tribe v. Brownlee, 331 F.3d 912, 915 (D.C. Cir. 2003)). The "irreducible constitutional minimum of standing" contains three elements, and "the party invoking federal jurisdiction bears the burden of establishing" them. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Plaintiffs bear the burden of establishing (1) that they have suffered a concrete injury in fact – the invasion of a legally protected interest – that is particular to plaintiffs and is actual or

imminent, as opposed to conjectural or hypothetical; (2) that the injury is fairly traceable to the defendant's conduct – that is, a causal connection exists between the injury and the defendants; and (3) that it is likely, and not merely speculative, that a favorable decision on the merits will redress plaintiff's injury. See Lujan v. Def. of Wildlife, 504 U.S. at 560-61; see also Arpaio v. Obama, 797 F.3d 11, 19 (D.C. Cir. 2015); Gettman v. DEA, 290 F.3d 430, 433 (D.C. Cir. 2002). As with other motions to dismiss under Rule 12(b)(1), "[t]hreadbare recitals of the elements of [standing], supported by mere conclusory statements, do not suffice," and courts "do not assume the truth of legal conclusions" nor "accept inferences that are unsupported by facts set out in the complaint." Arpaio v. Obama, 797 F.3d at 19.

The Amended Complaint alleges that plaintiffs sustained three kinds of injury, but not one of these purported injuries is a concrete and particularized injury to any plaintiff's legally protected interest, let alone an injury that is fairly traceable to the conduct of any named defendant.

1. Injuries from Alleged Defamation

Plaintiffs allege that Mr. Byrne "has standing to bring this action as he incurred injury to his business and as a result of damage to his reputation" [sic] due to defendants' alleged defamation. Amended Complaint at 7. Plaintiffs claim that members of the RICO Enterprise "worked together for a number of years to defame Byrne and cause him reputational injury and incurrence of legal fees." Id. at 26. They also claim that sales of Mr. Byrne's book Crisis of Character were "harmed in an amount greater than fifty million dollars due to Brock and Podesta threatening media outlets and making false statements to cause such outlets to blacklist [Mr. Byrne]." Id. at 19. The alleged injuries are insufficient to support standing because plaintiffs

11

have not provided facts establishing that either the reputational or the business "injuries" are (i) concrete injuries to a legally protected interest, and (ii) fairly traceable to defendants.[6]

First, with respect to the asserted reputational damage, plaintiffs provide the Court only with vague and conclusory claims: that defendants "attempted to destroy [Mr. Byrne's] reputation" and that Mr. Byrne "suffered extraordinary reputational injury." See Amended Complaint at 32; see also id. at 7-8, 20, 26-27, 30. The Amended Complaint lacks any information plausibly alleging that Mr. Byrne did, in fact, suffer an injury to his reputation. Plaintiffs do claim that Mr. Byrne's young children, family, colleagues, and friends "were cruelly made aware" of the allegedly false claims. Id. at 15-16. But Mr. Byrne does not explain how the fact that his family and closest associates were made aware of particular information – even false information – could have wrought "extraordinary reputational injury." See id. at 32. Such "conjectural or hypothetical" allegations of injury are insufficient to establish standing. Fleming v. Cherokee Nation, 2019 WL 2327814, at *3.

In addition, the Amended Complaint fails to demonstrate that any such reputational damage is "fairly traceable" to the named defendants. Lujan v. Defenders of Wildlife, 504 U.S. at 560-61. The Amended Complaint is devoid of any allegedly defamatory statement actually *made* by Ms. Clinton, Mr. Podesta, or Mr. Strzok, or facts allowing the Court reasonably to infer a connection between those defendants and the allegedly defamatory statements allegedly made by Mr. Brock or others. It contains only general allegations – for example, that Ms. Clinton sent instructions to others to defame Gary Byrne, see Amended

---

[6] Furthermore, as discussed infra at 18-20, the defamation allegations fail to state a claim for which relief can be granted because plaintiffs did not file this action timely in compliance with the District of Columbia's one-year statute of limitations. Any business and reputational injuries caused by the alleged defamation alone cannot establish Mr. Byrne's standing to sue on his two RICO claims.

12

Complaint at 23, or that Ms. Clinton and Mr. Podesta "ordered that Byrne be defamed," id. at 33. For standing, however, the "causal connection between the injury and the conduct complained of" must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Lujan v. Defenders of Wildlife, 501 U.S. at 561.

Similarly unsubstantiated is the claim that Mr. Byrne suffered an injury when Mr. Brock caused more than four dozen media outlets to "blacklist" Mr. Byrne and prevent him from using those outlets to promote his book. Amended Complaint at 33. While clearly there are more allegations regarding reputational injury against Mr. Brock than against the other three defendants, see id. at 9, 12-19, they consist largely of vague references to excerpts from an article or articles posted by Mr. Brock on a website. There is no information that demonstrates how Mr. Brock was able to harm Mr. Byrne through these articles, let alone to blacklist him. Nor is there any information as to how Mr. Byrne knows he is on a "blacklist," which outlets placed Mr. Byrne on a "blacklist," the consequences he has endured as a result, or whether Mr. Byrne otherwise had any right or expectation of appearing in those outlets.

Second, Mr. Byrne fails to establish that his business losses amounted to a concrete injury. Mr. Byrne's allegation that his book sales suffered $50 million in losses is unsubstantiated; in fact, the claim is *contradicted* by plaintiffs' own repeated references to the Book's commercial success. See Amended Complaint at 3, 19, 33. An injury must be actual and concrete to establish standing; claiming $50 million in foregone sales is, without more, the definition of a "conjectural or hypothetical" injury. See Lujan v. Defenders of Wildlife, 504 U.S. at 560-61. Moreover, plaintiffs allege that the Book suffered a decline in *sales* – which generally flow to a book's retailers and, in part, its publisher – but provide no information on whether and

to what extent plaintiffs experienced a decline in any *royalties*, which are the funds in which plaintiffs might have a legal interest.

The alleged business injuries also fail to establish standing for the independent reason that plaintiffs do not demonstrate even an attenuated "causal connection . . . between the injury and the defendants" with respect to the hypothetical loss of sales of Mr. Byrne's book. See <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. at 560-61. The pleadings lack any information that plausibly demonstrates a causal relationship between sales figures and defendants' conduct: for example, information on the overall sales of the book or the pace of sales before and after the allegedly defamatory conduct. In fact, the scant facts contained in the Amended Complaint tend to disprove the likelihood that defendants' conduct had a negative impact on sales. Even though the alleged defamation was ongoing during <u>Crisis of Character</u>'s early months on the market in the summer of 2016, <u>see</u> Amended Complaint at 8-9, the book became "an immediate bestseller on the <u>New York Times</u> list for nonfiction . . . ." Amended Complaint at 33.

Naturally, plaintiffs need not provide data that proves damages to a high degree of specificity at the motion to dismiss stage. But the Court "need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint." <u>Disner v. United States</u>, 888 F. Supp. 2d at 87. Here, any loss off sales could just as well be the product of independent consumer decisions: "the result of the independent action of some third party not before the court." See <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. at 560-61.

2. Injuries from the Alleged Bribery

Plaintiffs also claim to have been the victims of bribery: "Hillary Clinton and John Podesta directed the payments of bribes to independent contractors located in various states, and federal public officials, to create sources of false information about Officer Byrne, the

14

particular States herein to be determined during discovery." See Amended Complaint at 24; see also id. at 10 (claiming "the assistance of David Brock" in the bribery). The bribery allegations are vague: they do not identify any person who was bribed, the official capacity that the bribe recipient held, or the nature of the false information (or official act) that was obtained as a result of the bribe. See id. at 24, 25, 26-27; see also Clinton Mot. at 14. And, fatally, the allegations contain no information at all on any specific consequence that the alleged bribery had for either plaintiff.[7]

Under these circumstances, plaintiffs fail to establish that the bribes caused a concrete and particularized injury to a legally protected interest. The allegation that "Hillary Clinton . . . directed predicate acts involving obstruction of justice and bribery in order to further the goals of the Enterprise to cause injury to the business and property of Officer Byrne," Amended Complaint at 4, is not enough. It is the precise kind of "legal conclusion couched as a factual allegation" that a court need not accept as true in considering whether it has subject matter jurisdiction. See Fleming v. Cherokee Nation, 2019 WL 2327814 at *2 (citing Trudeau v. Federal Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006)); see also M.J. v. District of Columbia, 2019 WL 3344459, at *3 (D.D.C. July 25, 2019).[8]

---

[7] Mr. Byrne alleges that the bribery yielded information that facilitated defamatory statements. These purportedly defamatory statements also did not cause injuries in fact to either plaintiff. See supra at 11-14.

[8] And "[i]t goes without saying that the statement that 'further discovery is necessary . . . to further detail these factual allegations'" – a claim made by plaintiffs here, see Amended Complaint at 24 – "is insufficient to state a plausible claim on the face of the Complaint." Cheeks v. Fort Myer Constr. Corp., 216 F. Supp. 3d 146, 158-59 (D.D.C. 2016), aff'd per curiam 728 F. App'x 12 (D.C. Cir. 2018).

15

Nor is it sufficient to claim that Mr. Byrne "has also incurred legal fees and expenses as a result of the damage to his reputation caused by the illegal predicate activity of obstruction of justice (destroying inculpatory documents), and the Defendants['] use of interstate facilities to promote and facilitate their bribery." Amended Complaint at 7-8. Plaintiffs identify no specific suits that they brought or defended as a result of the alleged bribery and do not make even a nominal attempt to quantify the amount of legal fees and expenses. In fact, plaintiffs offer no clear explanation for how defendants' alleged obstruction (of a criminal investigation that did not target plaintiffs) or bribery (of public officials) could have resulted in legal fees and expenses for a private citizen or his business.[9] This "thread-bare recital" of injury is insufficient to establish standing. See Marouf v. Azar, __ F. Supp. 3d. __; 2019 WL 2452315 at *4 (D.D.C. June 12, 2019); Cf. Lail v. U.S. Gov't, 771 F. Supp. 2d 49, 60 (D.D.C. 2011) (granting a motion to dismiss under Rule 12(b)(6) and noting that "[i]n the absence of any allegation of any form of injury that might logically flow from the conduct complained of, purely conclusory allegations of damages fail to rise to the level of plausibility").

3. Injuries from the Alleged Obstruction of Justice

Finally, plaintiffs claim to have been injured by Mr. Podesta and Ms. Clinton's allegedly illegal destruction of "inculpatory documents" that were the subject of an FBI investigation, Amended Complaint at 8-10, and by certain investigative tactics used by Mr. Strzok and others during the conduct of that investigation, see id. at 28.

---

[9] Several defendants identified this failure in the pleading, but plaintiffs' response – that the fees were actually incurred in repairing his reputational damage – is similarly deficient in its absence of information. See Opp. to Clinton/Podesta at 10.

16

First, plaintiffs appear to believe that some of the allegedly deleted emails contained reference to Mr. Byrne, and that the emails "would have shown" that defendants targeted Mr. Byrne as part of the Enterprise's RICO conspiracy. Amended Complaint at 5. In support of this claim, plaintiffs say only that Mr. Byrne was "informed by a FBI . . . [s]ource that significant information about him was/is contained in the illegally deleted Clinton emails . . . ." Amended Complaint at 10.

But Mr. Byrne's gloss on the emails requires a supposition that is "unsupported by facts set out in the complaint." Arpaio v. Obama, 797 F.3d at 19. The Court will grant reasonable inferences in Mr. Byrne's favor, but it will not speculate about the contents of documents to which it has no access. Perhaps more importantly, even if the Court assumes that the emails are as plaintiffs describe, it is unclear how their deletion has inflicted any legally cognizable injury upon plaintiffs. "Plaintiff has failed to explain how he would be *entitled* to any of [Ms. Clinton's] private e-mails, and therefore . . . has failed to explain how he could be injured by their absence." Clinton Mot. at 15. In a similar case in which the plaintiff claimed standing based on a right of access to Ms. Clinton's e-mails, the Eleventh Circuit found that plaintiff "has no general property interest in government records," that he had alleged no basis for a "private [action] to recover records wrongfully removed from Government custody," and that any claim to economic injury based on the removal was "purely speculative and thus insufficient to support Article III standing." Klayman v. Clinton, 668 F. App'x 351, 352 (11th Cir. 2016).

Second, plaintiffs claim that Mr. Strzok corruptly interviewed certain witnesses and that he "corruptly influenced his agency's investigation . . . as relevant here to Officer Gary Byrne." Amended Complaint at 24. Whatever generalized grievances the plaintiffs may nurse

17

against the FBI and other government agencies, the Amended Complaint does not explain how plaintiffs were injured by any aspect of the investigation, let alone establish that private citizen plaintiffs have a particularized and legally protected interest in the operations or outcome of an FBI investigation. Gladstone Realtors v. Vill. Of Bellwood, 441 U.S. 91, 99-100 (1979).

### B. Count Three Must be Dismissed Under Rule 12(b)(6) Because it is Time-Barred

Plaintiffs have failed to state a claim for defamation because the relevant limitations period has expired. Plaintiffs appear to concede this fact, failing to address the statute of limitations argument in any of their three responses in opposition to the motions to dismiss. See Clinton Reply at 12; Local Rule of Civil Procedure 7(b).

Some courts have suggested that a motion to dismiss for failure to satisfy a statute of limitations implicates a court's subject matter jurisdiction, and therefore should be brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure. See 5B ARTHUR MILLER, MARY KAY KANE, & A. BENJAMIN SPENCER, FED. PRAC. & PROC. CIV. § 1350 (3d ed.); see also id. at n. 10. It has long been established in this circuit, however, that a statute of limitations defense that is clear on the face of the complaint is properly brought under Rule 12(b)(6). See Smith-Haynie v. District of Columbia, 155 F.3d 575, 577-78 (D.C. Cir. 1998); Gordon v. Nat'l Youth Work Alliance, 675 F.2d 356, 360 (D.C. Cir. 1982); Hammel v. Marsh USA Inc., 79 F. Supp. 3d 234, 238 (D.D.C. 2015); see also Jones v. Bock, 549 U.S. 199, 214-16 (2007); Capitol Servs. Mgmt. Inc. v. Vista Corp., 933 F.3d 784, 788 (D.C. Cir. 2019). See also 5B ARTHUR MILLER, MARY KAY KANE, & A. BENJAMIN SPENCER, FED. PRAC. & PROC. CIV. § 1357 (3d ed.)

Turning to the substance of the statute of limitations analysis, the Court "must apply the choice-of-law rules of the jurisdiction in which [it] sit[s]" to determine the appropriate sources of procedural and substantive law to govern plaintiffs' state law defamation claim. See

18

Wu v. Stomber, 750 F.3d 944, 949 (D.C. Cir. 2014). District of Columbia choice-of-law rules apply regardless of whether the Court hears the state law claim under its diversity jurisdiction or its supplemental jurisdiction. See Ideal Elec. Sec. Co., Inc. v. Int'l Fid. Ins. Co., 129 F.3d 143, 148 (D.C. Cir. 1997) ("When deciding state-law claims under diversity or supplemental jurisdiction, federal courts apply the choice-of-law rules of the jurisdiction in which they sit."). See also Hartley v. Dombrowski, 744 F. Supp. 2d 328, 336 (D.D.C. 2010); Jin v. Ministry of State Sec., 254 F. Supp. 2d 61, 68 (D.D.C. 2003).

District of Columbia choice-of-law rules provide (1) that the forum state's law applies to all procedural matters, and (2) that the statute of limitations is a procedural matter. See Gaudreau v. Am. Promotional Events, Inc., 511 F. Supp. 2d 152, 157 (D.D.C. 2007); see also Jin v. Ministry of State Sec., 254 F. Supp. 2d at 68; Nix v. Hoke, 139 F. Supp. 2d 125, 132 n. 4 (D.D.C. 2001). Plaintiffs' state law claim therefore must comply with the District of Columbia's statute of limitations for defamation claims.

Under District of Columbia law, an action "may not be brought after the expiration of the period specified [in the statute]," as measured "from the time the right to maintain the action accrues." D.C. Code. § 12-301. The limitations period for libel and slander – like the written and spoken defamation alleged here – is one year. D.C. Code § 12-301(4). Plaintiffs indicate that defendants' allegedly libelous or slanderous statements spanned the months between the June 2016 publication of Crisis of Character and the November 2016 presidential election. See Amended Complaint at 9, 12, 20, 21. Even the most charitable reading of the Amended Complaint does not identify any allegedly defamatory statement occurring any later than "in 2016." See id. at 21. And the District of Columbia follows the single publication rule, under which any defamatory statement "gives rise to but one cause of

19

action for libel, which accrues at the time of the original publication." Jin v. Ministry of State Sec., 254 F. Supp. 2d at 68; see also Mizell v. SunTrust Bank, 26 F. Supp. 3d 80, 86 (D.D.C. 2014). Any defamation claim arising from the defendants' allegations therefore would have accrued no later than December 31, 2016 and expired no later than December 31, 2017. But plaintiffs did not file their first complaint until June 15, 2018. Accordingly, the Court must dismiss Count Three because the applicable limitations period had expired before the initial complaint was filed.

## IV.    CONCLUSION

For the reasons discussed above, the Court will dismiss Counts One and Two for lack of standing under Rule 12(b)(1) of the Federal Rules of Civil Procedure and will dismiss Count Three for failure to state a claim under Rule 12(b)(6). Accordingly, the court will grant the motions to dismiss the Amended Complaint filed by Hillary Rodham Clinton [Dkt. No. 57], John Podesta [Dkt. No. 58], David Brock [Dkt. No. 59], and Peter Strzok [Dkt. No. 67]. A separate order giving effect to this opinion will issue this same day.

_____
PAUL L. FRIEDMAN
United States District Judge

DATE: September 13, 2019